# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **LORI WIGOD, on her own behalf and on behalf of all others similarly situated,** | **Case No. 1:10-cv-02348** |
| **Plaintiff,** | **Hon. Blanche Manning** |
| **v.** | |
| **WELLS FARGO BANK, N.A. d/b/a WELLS FARGO HOME MORTGAGE, f/k/a WACHOVIA MORTGAGE, FSB,** | |
| **Defendant.** | |

## MEMORANDUM OF WELLS FARGO BANK, N.A. IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

Michael J. Hayes
Bar No. 01161725
Jessica A. Baer
Bar No. 6295818
**K&L GATES LLP**
70 W. Madison St., 3100
Chicago, IL 60602

Irene C. Freidel
N.D. Ill. Bar No. 559051
David D. Christensen (*pro hac pending*)
Kristin A. Davis (*pro hac pending*)
**K&L GATES LLP**
State Street Financial Center
One Lincoln Street
Boston, MA  02111

Counsel for Wells Fargo Bank, N.A.

May 12, 2010

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................1

II.    BACKGROUND ..........................................................................................................2

      A.    Summary of the Complaint. ...................................................................... 2

      B.    The U.S. Treasury's Home Affordable Modification Program. .............................3

III.    ARGUMENT ...............................................................................................................6

      A.    HAMP Does Not Provide Plaintiff With A Private Right Of Action To Enforce Its Requirements. ..........................................................................6

      B.    Plaintiff Has Failed To State A Claim For Breach Of Contract. ...........................9

            (a)    The TPP is not an enforceable "offer"..........................................10

            (b)    Plaintiff has not alleged facts showing "consideration."...............13

            (c)    The TPP does not contain "definite and certain terms."................14

            (d)    Plaintiff has not alleged an entitlement to damages. ....................15

      C.    Plaintiff Has Failed To State A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing..........................................................17

      D.    Plaintiff Has Failed To State A Claim For Promissory Estoppel. ........................19

IV.    CONCLUSION ............................................................................................................19

## TABLE OF CASES

**Page**

### Federal Cases

*Aleem v. Bank of America, N.A.,* No. EDCV 09-01812-VAP (RZx),
2010 WL 532330 (C.D. Cal. Feb. 9, 2010) ........................................................8

*Apothekernes Laboratorium for Specialpraeparater v. I.M.C. Chemical Group, Inc.,*
873 F.2d 155 (7th Cir. 1989) .......................................................................10

*Architectural Metal Systems, Inc. v. Consol. Sys.,* 58 F.3d 1227 (7th Cir. 1995) ........10

*Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009) ……………………………………….................6, 9

*Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.,* 493 F.3d 841 (7th Cir. 2007)...............9, 10, 14

*Baxter Healthcare Corp. v. O.R. Concepts, Inc.,* 69 F.3d 785 (7th Cir. 1995) ............18

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) …………………………………….....6

*Beraha v. Baxter Healthcare Corp.,* 956 F.2d 1436 (7th Cir. 1992)...........................18

*Boim v. Quranic Literacy Inst.,* 340 F. Supp. 2d 885 (N.D. Ill. 2004)............................2

*Business System Engineering, Inc. v. International Business Machines Corp.,*
547 F.3d 882 (7th Cir. 2008) .......................................................................14

*Cobb-Alvarez v. Union Pacific Corp.,* 962 F. Supp. 1049 (N.D. Ill. 1997) .................10

*Contempo Design, Inc. v. Chi. Ne. Ill. Dist. Council of Carpenters,* 226 F.3d 535
(7th Cir. 2000) (en banc) ............................................................................13

*Escobedo v. Countrywide Home Loans, Inc.,* No. 09cv1557 BTM(BLM),
2009 WL 4981618 (S.D. Cal. Dec. 15, 2009) ..................................................7

*Frazier v. Harris,* 218 F.R.D. 173 (C.D. Ill. 2003) .................................................10

*Gaitan v. Mortgage Elec. Registration Sys.,* No. EDCV 09-1009 VAP (MANx),
2009 WL 3244729 (C.D. Cal. Oct. 5, 2009) ....................................................7

*Geva v. Leo Burnett Co., Inc.,* 931 F.2d 1220 (7th Cir. 1991) ....................................19

*Gonzales v. First Franklin Loan Servs.,* No. 1:09-CV-00941 AWI-GSA,
2010 WL 144862 (E.D. Cal. Jan. 11, 2010) ....................................................9

*Jennings v. Auto Meter Products, Inc.,* 495 F.3d 466 (7th Cir. 2007) ..........................6

*McCready v. eBay, Inc.,* 453 F.3d 882 (7th Cir. 2006) ...............................................2

*Pantoja v. Countrywide Home Loans, Inc.,* 640 F. Supp. 2d 1177 (N.D. Cal. 2009) .................... 8

*Pommier v. People Bank Marycrest,* 967 F.2d 1115 (7th Cir. 1992) ........................... 17

*Pulliam v. American Express Travel Related Servs. Inc.,* 08 C 6690,
    2009 WL 1586012 (N.D. Ill. June 4, 2009) ........................ 9

*Rao v. BP Products North America, Inc.,* 589 F.3d 389 (7th Cir. 2009) ........................ 6

*Reger Dev., LLC v. National City Bank,* 592 F.3d 759 (7th Cir. 2010) ....................... 18

*Ryan v. State,* No. 91 C 3725, 1999 WL 59982 (N.D. Ill. Feb. 3, 1999) ....................... 2

*Ung v. GMAC Mortgage,* No. EDCV 09-893-VAP (OPx),
    2009 WL 2902434 (C.D. Cal. Sept. 4, 2009) .................... 9

*Venture Assoc. Corp. v. Zenith Data Systems Corp.,* 987 F.2d 429 (7th Cir. 1993) .................... 2

*Villa v. Wells Fargo Bank, N.A.,* No. 10CV81 DMS (WVG),
    2010 WL 935680 (S.D. Cal. March 15, 2010) .................... 7

*Williams v. Geithner,* Civil No. 09-1959 ADM/JJG,
    2009 WL 3757380 (D. Minn. Nov. 9, 209) ................................. 5, 6

## State Cases

*Delcon Group, Inc. v. Northern Trust Corp.,* 543 N.E.2d 595 (Ill. App. Ct. 1989) ..................... 14

*DiLorenzo v. Valve and Primer Corp.,* 807 N.E.2d 673 (Ill. App. Ct. 2004) .............. 13

*Feldstein v. Guinan,* 499 N.E.2d 535 (Ill. App. Ct. 1986) .............. 15, 16, 17

*Magna Bank of Madison County v. Jameson*, 604 N.E.2d 541 (Ill. Ct. App. 1992) ................. 18

*McErlean v. Union National Bank of Chicago,* 414 N.E.2d 128 (Ill. App. Ct. 1980) ............... 14

*Ross v. May Co.,* 880 N.E.2d 210 (Ill. App. Ct. 2007) ........................... 10, 13

*Van Der Molen v. Washington Mut. Finance, Inc.,* 835 N.E.2d 61 (Ill. App. Ct. 2005) ............... 9

*Voyles v. Sandia Mortgage Corp.,* 751 N.E.2d 1126 (Ill. 2001) .................................. 18

Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), by and through undersigned counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, respectfully submits this memorandum in support of its Motion to Dismiss the Complaint filed by Plaintiff Lori Wigod ("Plaintiff").

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff filed this putative class action lawsuit to force Wells Fargo to permanently modify the terms of her $728,500 mortgage loan, which plaintiff obtained in 2007 to finance her Chicago condominium. The mortgage loan, now in default, is serviced by Wells Fargo. In Count I of the Complaint, plaintiff claims that Wells Fargo breached an alleged contract with plaintiff to permanently modify her mortgage loan under the government's Home Affordable Modification Program ("HAMP") in which Wells Fargo is a voluntary participant. In Count II, Plaintiff claims a breach of the implied covenant of good faith and fair dealing because Wells Fargo allegedly engaged in conduct designed to discourage borrowers from successfully completing the loan modification requirements and to minimize the number of permanent loan modifications extended. In Count III, plaintiff brings a promissory estoppel claim alleging that Wells Fargo misrepresented that it would offer a permanent modification to her if she executed a HAMP Trial Period Plan ("TPP" or "trial plan"), supplied supporting documentation, and made her payments.

The Complaint should be dismissed. It is now well-established that borrowers do not have a private right of action to enforce HAMP's requirements against participating servicers, including Wells Fargo. Moreover, plaintiff has no legally enforceable property interest or mandatory entitlement to a permanent loan modification. Even if plaintiff had a right of action under HAMP, she has failed to allege that she entered into a written agreement with Wells Fargo to permanently modify her loan. As a matter of law, plaintiff cannot establish that her trial plan

was an enforceable contract offer to enter into a permanent modification, that she provided

consideration to Wells Fargo for such modification in light of her pre-existing indebtedness, or

that she suffered damages as a result of any purported breach. Because plaintiff's claims fail to

satisfy the plausibility test set forth in *Twombly* and *Iqbal*, the Complaint should be dismissed.

## II.     BACKGROUND

### A.     <u>Summary of the Complaint.</u>

In September 2007, plaintiff obtained mortgage financing for her Chicago condominium

in the amount of $728,500. Compl. ¶ 35 and Exhibit A to the Declaration of Irene C. Freidel

("Freidel Decl.") (attaching mortgage).[1] Sometime after September 2007, plaintiff defaulted on

her interest-only mortgage loan. On April 3, 2009, she contacted Wells Fargo and requested a

loan modification under HAMP. *Id.* ¶ 36. On May 28, 2009, plaintiff executed a HAMP TPP.

*See id.*, Ex. A. Plaintiff thereafter made four payments under her TPP in the amount of

$1,756.14. *Id.* ¶ 43. After completing her TPP payments, plaintiff did not receive a permanent

loan modification from Wells Fargo. *Id.* ¶ 45. Instead, she was notified by Wells Fargo on

November 13, 2009 that she was not "approved for a mortgage loan modification because [Wells

Fargo] was unable to get [plaintiff] to a modified payment amount that [plaintiff] could afford

---

[1]     Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if
they are referred to in the plaintiff's complaint and are central to her claim. *Venture Assoc. Corp. v.
Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (affirming trial court's refusal to exclude letters
attached to motion to dismiss because documents constituted "core of the parties' contractual
relationship"); *see also McCready v. eBay, Inc.*, 453 F.3d 882, 891-92 (7th Cir. 2006). Plaintiff's
mortgage is submitted for the Court's consideration because it is referenced in the Complaint, it is at the
"core of the parties' contractual relationship," and it is central to plaintiff's claim that Wells Fargo was
required to modify the terms of her loan. Further, plaintiff's mortgage is self-authenticating pursuant to
Fed. R. Evid. 902(9). *See also Boim v. Quranic Literacy Inst.*, 340 F. Supp. 2d 885, 916 (N.D. Ill. 2004);
*Ryan v. State*, No. 91 C 3725, 1999 WL 59982, *3 (N.D. Ill. Feb. 3, 1999); 31 Wright & Gold, *Federal
Practice and Procedure: Evidence*, § 7143 (2000). In addition, plaintiff's mortgage is on file with Cook
County and is publicly-available on-line through the Cook County Recorder of Deeds web-site. *See*
http://www.ccrd.info.

per the investor guidelines on [the] mortgage." *Id.*, Ex. E. To avoid outright foreclosure, Wells

Fargo recommended that plaintiff consider a short sale or a deed in lieu of foreclosure. *Id.*

On April 15, 2010, plaintiff filed this putative class action lawsuit. She seeks

certification pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3) of a nationwide class of

homeowners "who have entered into a TPP Agreement with Wells Fargo for the purposes of

modifying their home mortgages and, despite having complied with all terms of the TPP

Agreement, have not received from Wells Fargo an offer for permanent modification." *Id.* ¶¶ 53,

61. Plaintiff also seeks to represent an Illinois subclass of the same individuals. *Id.*

For relief, plaintiff seeks: (1) a declaration that "the acts and practices of Defendant

complained of herein [] constitute breaches of contract and a breach of the covenant of good faith

and fair dealing, as well a declaration that they are required by the doctrine of promissory

estoppel to offer permanent modification to class members;" (2) a permanent injunction

enjoining Wells Fargo "from continuing to harm Plaintiff" and the putative class; (3) an order

requiring "Defendant to adopt and enforce a policy that requires appropriate training of its

employees and agents regarding their duties under the TPP Agreements;" (4) an order requiring

"specific performance of Defendant's contractual obligations together with other relief required

by contract and law;" and (5) an award of actual and punitive damages, and the costs of the

action, including attorneys fees. *Id.* at 17 (prayer for relief).

**B.     The U.S. Treasury's Home Affordable Modification Program.**

In an effort to help millions of families restructure or refinance their mortgages to avoid

foreclosure, the U.S. Treasury announced a national modification program intended to help 3 to

4 million at-risk homeowners avoid defaulting on their mortgage loans by reducing monthly

payment amounts to "sustainable levels." U.S. Treasury's HAMP Supplemental Directive 09-01

("SD 09-01") at 1, Ex. B to Freidel Decl. On March 4, 2009, the Obama Administration

published detailed program guidelines for HAMP. *Id.* "HAMP creates a defined loan modification process through which borrowers who are in default, at risk of imminent default, or in foreclosure can have their loans modified to a more affordable monthly payment that is intended to be not more than 31% of their gross monthly income." *See* https://www.efanniemae.com/sf/mha/mhamod/.

As of February 28, 2010, Wells Fargo had already moved over one-half million mortgage loans into active trial or permanent modifications. *See* http://www.dsnews.com/articles/wells-fargo-surpasses-half-million-modification-mark-2010-03-15. Notably, in February 2010, Wells Fargo moved more borrowers into permanent HAMP modifications than any other servicer participating in the HAMP program. *See* http://www.housingwire.com/2010/03/12/wells-fargo-leads-hamp-servicers-in-february/.

All servicers of loans that are owned or guaranteed by Fannie Mae or Freddie Mac ("GSE loans") must participate in the HAMP program as to those loans. Participation in HAMP is voluntary for servicers as to non-GSE loans, that is, loans that are not held by government-sponsored entities such as Fannie Mae and Freddie Mac, are held by servicers in their own portfolios, or are serviced by servicers for other portfolios, securitization trusts, or investors. A servicer that chooses to voluntarily participate in HAMP must execute a Servicer Participation Agreement ("SPA") with Fannie Mae in its capacity as Financial Agent for the United States. Wells Fargo executed an SPA on April 13, 2009 and an Amended SPA on March 16, 2010.[2]

---

[2]    Wells Fargo's SPA and Amended SPA are available publicly at the following government website: http://www.financialstability.gov/docs/HAMP/Wells%20Fargo%20Bank%20Servicer%20Participation%20Agreement.pdf. For the Court's convenience, the Amended SPA is also attached as Ex. E to the Freidel Decl., and it is substantially described in the Complaint at paras. 27-31.

Not all mortgage loans are eligible for HAMP, and a participating servicer is not required to modify every HAMP-eligible loan. If borrower eligibility is satisfied, the servicer is obligated *to consider* the borrower for a HAMP modification. However, the servicer retains certain discretion when determining eligibility for a permanent modification. *See*, *e.g.,* SD 09-01 at 5, 17. Using the borrower's income information, a participating servicer will follow a series of steps (known as the "waterfall") in an effort to obtain an affordable monthly payment for the borrower. The waterfall is designed to achieve a monthly mortgage payment that is not more than 31% of a borrower's total pre-tax monthly income. *Id.* at 8-10. First, the servicer will reduce the interest rate to as low as 2%. Next, if necessary, the servicer will extend the loan term to 40 years. *Id.* Finally, if necessary, the servicer will forebear repayment of a portion of the principal until the loan is paid off and will waive interest on the deferred amount. *Id.*

If application of the waterfall does not produce an affordable payment, as occurred here, *see* Compl., Ex. E, the loan does not qualify for a permanent HAMP modification. If application of the waterfall *does* produce an affordable payment, the servicer also subjects the loan to a Net Present Value ("NPV") test. If the NPV test produces a "negative" result (losses from foreclosure are less than losses from modification), the servicer is not obligated to modify the loan. The servicer retains discretion as to the manner in which the NPV test is calculated. *See* SD 09-01 at 5; *see also Williams v. Geithner*, Civil No. 09-1959 ADM/JJG, 2009 WL 3757380, *6 (D. Minn. Nov. 9, 2009).

## III.    ARGUMENT[3]

### A.    HAMP Does Not Provide Plaintiff With A Private Right Of Action To Enforce Its Requirements.

While pled as garden-variety common law claims, the counts of the Complaint are all premised on Wells Fargo's allegedly unlawful decision not to provide plaintiff with a permanent HAMP modification.  As stated above, however, not all borrowers are eligible for a permanent HAMP modification, and HAMP does not require or mandate that every borrower receive a modification.  As one district court has already held, neither the Emergency Economic Stabilization Act, 12 U.S.C. § 5201 (2008) ("EESA"), which created HAMP, nor HAMP's guidelines intended "to create a property interest in loan modifications for mortgages in default." *Williams*, 2009 WL 3757380, *6.  The statute does not contain language mandating loan modifications, but instead states that "loans may be modified 'where appropriate' – a phrase that … evinces a Congressional intent to afford discretion in the decision whether to modify loans in certain circumstances." *Id*.

In this case, plaintiff's claims flow from Wells Fargo's perceived failure to meet its obligations under HAMP – including under its SPA which incorporates HAMP guidelines – by

---

[3]    While it is axiomatic that the Court accepts as true all well-pled facts alleged in the complaint, plaintiff must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Jennings v. Auto Meter Products, Inc.*, 495 F.3d 466, 472 (7th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)).  When reviewing a motion to dismiss, the Court must ask "whether the plaintiff has provided allegations that 'raise a right to relief above the speculative level' and 'state a claim to relief that is plausible on its face.'" *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 398 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-53 (2009) and *Twombly*, 550 U.S. at 570).  As the Supreme Court stated in *Iqbal*, "Rule 8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions…. [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. [*Twombly* at 556].  Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense…. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]-that the pleader is entitled to relief.  Fed. Rule Civ. Proc. 8(a)(2).'"  129 S. Ct. at 1950 (internal citations and quotations omitted).

not providing plaintiff with a permanent loan modification after she made four payments under a trial modification. (Under HAMP, a servicer may place an eligible borrower on a three-month trial modification after which the servicer will permanently modify the borrower's loan if required conditions are met. *See* SD 09-01 at 17-18.) Plaintiff, however, does not have standing to enforce Wells Fargo's obligations under HAMP (or the SPA),[4] and neither HAMP nor the SPA provides plaintiff with the right to privately enforce its terms to obtain a permanent HAMP modification.

First, nowhere does the SPA or HAMP contemplate private party enforcement actions under either HAMP or state law. The only limited private right of action created under EESA, is through the Administrative Procedures Act. *See* 12 U.S.C. § 5229. But that provision only provides for challenges to actions taken by the Secretary of the Treasury. The statute does not create a private right of action against servicers participating in the HAMP program. *See Gaitan v. Mortgage Elec. Registration Sys.*, No. EDCV 09-1009 VAP (MANx), 2009 WL 3244729, *7 (C.D. Cal. Oct. 5, 2009) (HAMP does not provide a private cause of action).

Second, the U.S. Treasury has designated Freddie Mac as its compliance agent under HAMP. SD 09-01 at 25. To ensure that loan servicers comply with HAMP requirements, the SPA provides Freddie Mac with extensive oversight and remedial powers. Freddie Mac, in turn, conducts both on-site and remote assessments to determine a servicer's compliance with various HAMP requirements from reviewing borrower eligibility to execution of the NPV/waterfall processes. *See id.*. HAMP expressly requires that for *each loan* the servicer must report loan level data including reasons why loans evaluated for modifications were not modified. HAMP

---

[4]       Plaintiff is not an intended third-party beneficiary of the SPA. *See Escobedo v. Countrywide Home Loans, Inc.*, No. 09cv1557 BTM(BLM), 2009 WL 4981618, *3 (S.D. Cal. Dec. 15, 2009) ("[q]ualified borrowers are incidental beneficiaries of the Agreement and do not have enforceable rights under the contract"); *Villa v. Wells Fargo Bank, N.A.*, No. 10CV81 DMS (WVG), 2010 WL 935680, *3 (S.D. Cal. March 15, 2010) (same).

Supplemental Directive 09-06 ("SD 09-06"), Ex. C to the Freidel Decl. Further, pursuant to SD 09-06, any loan that does not result in a permanent HAMP modification after completion of a trial period triggers additional reporting requirements by the servicer. *Id.* at 4.

Third, the SPA also states that disputes between the parties, here Wells Fargo and the U.S. Treasury, regarding HAMP requirements will be resolved in accordance with federal law and through alternative dispute mechanisms. The SPA states that "the parties agree to take all reasonable steps to resolve disputes internally before commencing legal proceedings." *See* Ex. D to Freidel Decl. at 9. Consistent with this theme, SD 09-01 also provides for an issue/resolution appeal process for servicer assessments. SD 09-01 at 26.[5]

Finally, a servicer's voluntary participation in HAMP – which is strongly encouraged by the U.S. Treasury – would be severely *discouraged* if the servicer were exposed to multiple private causes of action and damages for failing to comply with HAMP requirements. *See, e.g., Brown v. First Tenn. Nat'l Ass'n*, C.A. No. 1:09-CV-0679-BBM (N.D. Ga. Nov. 20, 2009) (slip op. at 13-14, 28-29, attached to Freidel Decl. as Ex. E) (finding no private right of action to enforce VA guidelines where Congress provided administrative remedies to the government to enforce program requirements and program was intended to encourage lender participation).

For these and other reasons, numerous courts have already held that there is no private right of action under HAMP for claims by borrowers against participating servicers, and state laws cannot be used to create private rights of action where none exist under federal law. *See Aleem v. Bank of America, N.A.*, No. EDCV 09-01812-VAP (RZx), 2010 WL 532330, *3-4 (C.D. Cal. Feb. 9, 2010) ("[t]he UCL cannot create a private right of action where none exists under the federal statute"); *Pantoja v. Countrywide Home Loans, Inc.,* 640 F. Supp. 2d 1177,

---

[5] To assist borrowers in connection with the denial of loan modification requests, the U.S. Government set up the Homeowners Hope Hotline. *See* http://makinghomeaffordable.gov/.

1187 (N.D. Cal. 2009); *Ung v. GMAC Mortgage,* No. EDCV 09-893-VAP (OPx), 2009 WL

2902434, *9-11 (C.D. Cal. Sept. 4, 2009) (dismissing TARP-based claims pled as the basis for

state law claims); *Gonzales v. First Franklin Loan Servs.,* No. 1:09-CV-00941 AWI-GSA, 2010

WL 144862, *18 (E.D. Cal. Jan. 11, 2010) (no private right of action under TARP or EESA).

## B. Plaintiff Has Failed To State A Claim For Breach Of Contract.

Plaintiff alleges that Wells Fargo became contractually obligated to permanently modify

her mortgage loan after it provided plaintiff with a TPP pursuant to which plaintiff made four

payments. Assuming for the sake of argument that plaintiff could enforce HAMP through

Illinois common law (contrary to the foregoing), plaintiff's breach of contract claim still should

be dismissed as a matter of law. Plaintiff has not alleged facts that would establish the existence

of a valid contract, namely offer and acceptance, consideration, definite and certain terms, and

damages. because the Complaint does not allege facts under *Twombly* and *Iqbal* that entitles

plaintiff to pursue her claims through discovery. *See, e.g., Iqbal*, 129 S. Ct. at 1950.

"Under Illinois law, a valid modification of a contract must satisfy all the criteria

essential for a valid original contract, including offer, acceptance, and consideration." *Van Der

Molen v. Washington Mut. Fin., Inc.*, 835 N.E.2d 61, 69 (Ill. App. Ct. 2005) (affirming dismissal

of breach of contract claim). To establish the existence of a valid and enforceable contractual

obligation, plaintiff must allege facts showing (1) offer and acceptance; (2) consideration; (3)

definite and certain terms; (4) performance by the plaintiff of all required conditions; (5) breach;

and (6) damages. *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 849 (7th Cir.

2007) (affirming entry of summary judgment in favor of defendant); *see also Pulliam v. Am.

Express Travel Related Servs. Inc.*, 08 C 6690, 2009 WL 1586012, *5 (N.D. Ill. June 4, 2009)

(dismissing breach of contract claim). As the Seventh Circuit has stated, "[t]he question of the

existence of a contract is a matter of law for determination by the court…. No contract exists

under Illinois law, and, indeed, under principles of general law, if the agreement lacks definite

and certain terms; nor is a contact formed by an offer that itself lacks definite and certain

material terms and does not require such terms to be supplied by an acceptance." *Ass'n Benefit*

*Servs.,* 493 F.3d at 849-50 (internal quotations and citations omitted).

Further, no contract can be modified in *ex parte* fashion by one of the contracting parties

without the knowledge and consent of the remaining party to the agreement. *Ross v. May*

*Co.*, 880 N.E.2d 210, 215 (Ill. App. Ct. 2007). Here, plaintiff has not – and cannot – allege facts,

which taken as true, would establish the formation of a valid contract for a loan modification

based on her TPP.

### (a)  The TPP is not an enforceable "offer"

Plaintiff erroneously asserts that the TPP that she executed with Wells Fargo, which

became effective on July 1, 2009 (Compl., Ex. A), was a "valid contract" that apparently

required Wells Fargo to offer plaintiff a permanent modification. Compl. ¶¶ 65, 70-71. Plaintiff

alleges that she accepted the offer by making her trial plan payments. *Id.* ¶ 68. The test for an

offer is whether it induces a reasonable belief in the recipient that she can, by accepting, bind the

sender. *See Cobb-Alvarez v. Union Pac. Corp.*, 962 F. Supp. 1049, 1054 (N.D. Ill. 1997) (citing

*Architectural Metal Sys., Inc. v. Consol. Sys.*, 58 F.3d 1227, 1229 (7th Cir. 1995); *see also*

*Frazier v. Harris*, 218 F.R.D. 173, 174-75 (C.D. Ill. 2003) (citing *Architectural Metal Systems*,

58 F.3d at 1229). A party's suggestion is *not* an offer if it contains "suitable language

conditioning the formation of a contract on some further step ... such as approval by corporate

headquarters." *Cobb-Alvarez*, 962 F. Supp. at 1054 (dismissing claim because plaintiffs could

not have reasonably thought defendants were bound by their acceptance where the alleged offer

required further assent from defendants); *see also A/S Apothekernes Laboratorium for*

*Specialpraeparater v. I.M.C. Chem. Group, Inc.*, 873 F.2d 155, 157 (7th Cir. 1989) (no contract

formed where alleged offer was conditional on approval by board of directors); R*estatement (Second) of Contracts* § 26.

Here, plaintiff's TPP cannot be reasonably viewed as an "offer" the acceptance of which could bind Wells Fargo to permanently modify plaintiff's mortgage loan. Contrary to plaintiff's suggestion, nowhere do applicable HAMP guidelines (that were in effect when plaintiff obtained her TPP) mandate that any borrower who obtains a TPP is guaranteed a permanent modification. Indeed, the guidelines implicitly *reject* that conclusion. At the time plaintiff received the TPP, HAMP guidelines expressly permitted a servicer to place a borrower on a trial plan *before* the servicer obtained all of the borrower's documentation and was able to determine eligibility for a permanent modification. SD 09-01 at 5, 17 ("[s]ervicers are not required to verify financial information prior to the effective date of the trial period"). HAMP guidelines also contemplate that the servicer would evaluate (or reevaluate) the borrower's NPV during the trial plan to determine if the NPV is positive (and thus eligible for modification) or negative (and thus not appropriate for modification). HAMP Supplemental Directive 10-01 ("SD 10-01") at 10, Ex. F to Freidel Decl; *see also* HAMP FAQs (April 2, 2010), Q2314 at 27-28, Ex. G to Freidel Decl.

HAMP guidelines further state that if the borrower successfully completed the trial plan and should have been converted to a permanent modification, "the servicer must promptly *make a determination* as to whether the borrower is eligible for a permanent HAMP modification …" *See* HAMP FAQs, 2009-2010 Conversion Campaign, Q1222-01 at 3, Ex. H to Freidel Decl. (emphasis added). The guidelines provide the servicer with a 60-day grace period to provide a permanent modification *if* the servicer discovers that an error was made and the borrower should have been placed in a permanent modification. *Id.* at 2-3. Clearly, the guidelines do not presume that every trial modification would necessarily result in a permanent loan modification.

The language of the TPP confirms that permanent modification of plaintiff's loan was conditioned on the receipt and review by Wells Fargo of additional documentation and the satisfaction of all necessary conditions to render plaintiff eligible for a permanent modification. When signing the TPP, plaintiff acknowledged: "I am providing or already have provided documentation for all income that I receive …."  Compl., Ex. A at 1(D).  In addition, plaintiff stated that she understood and acknowledged that "the [TPP] is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed." *Id.* at 2(G).  Finally, when signing the TPP, plaintiff agreed that: "all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents.  The Lender and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents." *Id.* at 4(D).

Here, as reflected by Exhibit E to the Complaint and as authorized by HAMP guidelines, Wells Fargo made a determination, during or after the completion of plaintiff's trial modification, that plaintiff was *not* eligible for a permanent HAMP modification because Wells Fargo could not modify plaintiff's loan to reach a payment amount that she could afford in accordance with the "waterfall" described above.  This determination is consistent with and made permissible by applicable HAMP guidelines, and plaintiff does not allege to the contrary.

Finally, Wells Fargo used TPP documents in the form and substance provided and required by the Treasury under the HAMP program.  *See, e.g.,* SD 09-01.  Because the HAMP program does not contemplate private enforcement of its requirements (*supra*), and the program

would be defeated if servicers were subject to thousands of individual lawsuits on any basis, let alone on the forms provided by the Treasury, boilerplate language in the Treasury's form TPP should *not* be read – as plaintiff advocates (*see, e.g.,* Compl. ¶ 67) – to (1) bind Wells Fargo to permanently modify plaintiff's loan, and (2) subject Wells Fargo to private causes of action for failing to do so when it determines that the borrower is not eligible for a permanent modification. For all of these reasons, and as a matter of law, plaintiff's TPP is neither a valid contract nor an offer for a permanent loan modification.

### (b) Plaintiff has not alleged facts showing "consideration."

Plaintiff has not alleged – and cannot allege – that she provided valid consideration for a permanent modification. "The essential element of consideration is a bargained-for exchange of promises or performances …." *Ross,* 880 N.E.2d at 215 (Ill. App. Ct. 2007). Here, there was no "bargained-for exchange of promises." Plaintiff was already obligated to make monthly interest payments on a loan of $728,500 at an initial rate of 6.75% under the original terms of her mortgage, which is secured by her property. *See* Ex. A to Freidel Decl. Under plaintiff's trial modification, Wells Fargo agreed to accept reduced monthly principal and interest payments of $1,756.14 based on plaintiff's representations to Wells Fargo of financial hardship. Compl. ¶ 43. The monthly payment amounts under plaintiff's trial plan were substantially less than the monthly amount owed under plaintiff's original secured obligation to Wells Fargo.

The partial payment by plaintiff to Wells Fargo of an amount undisputedly due and secured by plaintiff's property cannot -- as a matter of law -- be considered "bargained-for" consideration or the result of a reciprocal agreement. As the Appellate Court stated in *DiLorenzo v. Valve and Primer Corp.,* 807 N.E.2d 673, 679 (Ill. App. Ct. 2004), "where a party does what it is already legally obligated to do, there is not consideration." The Seventh Circuit similarly stated in *Contempo Design, Inc. v. Chi. and Ne. Ill. Dist. Council of Carpenters*, 226 F.3d 535,

550 (7th Cir. 2000) (en banc), "the pre-existing duty rules states that promising to perform a duty

that already is owed under an existing contract is not consideration …." *See also Restatement*

*(Second) of Contracts* § 73 and Comment a. Accordingly, where a party has a pre-existing duty

to perform under the terms of an original contract – as plaintiff does here – a modification of that

contract with no additional consideration does not result in the formation of a new, enforceable

contract. *Id.*

### (c) The TPP does not contain "definite and certain terms."

"The definite and certain terms requirement serves several important purposes, chief

among them to ensure that the parties in fact have reached an agreement and to provide courts

with a basis for enforcing the obligations that the parties sought to impose upon one another."

*Ass'n Benefit Servs.*, 493 F.3d at 850; *see also Bus. Sys. Eng'g, Inc. v. Int'l Bus. Mach.*

*Corp.*, 547 F.3d 882, 888 (7th Cir. 2008) (an offer must be so definite as to its material terms or

require such definite terms in the acceptance that the promises and performances to be rendered

by each party are reasonably certain). Among the essential terms in a contract to lend money are

the applicable rate of interest, duration of the loan, and mode of repayment. *McErlean v. Union*

*Nat'l Bank of Chi.*, 414 N.E.2d 128, 132 (Ill. App. Ct. 1980). Indeed, in *McErlean*, the court

stated that the absence from the complaint of material terms for an alleged mortgage loan,

including the duration of the loan, applicable interest rate, the basis upon which interest would be

determined, the date of the maturity of the loan, and whether the loan would be repaid in

installments, "impel[s] the conclusion that [the plaintiff] has failed to allege an enforceable

contract." *Id.; see also Delcon Group, Inc. v. N. Trust Corp.*, 543 N.E.2d 595, 600 (Ill. App. Ct.

1989) ("one of the essential elements to the formation of a contract is a manifestation of

agreement or mutual assent by the parties to its terms, and the failure of the parties to agree upon

or even discuss an essential term of a contact may indicate that the mutual assent required to make or modify a contract is lacking"). The Court should reach the same conclusion here.

Plaintiff's trial plan does not contain *any* of the definite and certain terms that reflect an agreement by the parties for a permanent loan modification and which agreement could be enforced by the Court. Indeed, the agreement contains *none* of the terms of a permanent modification. It does not state the principal amount of the modified loan, the term of the modified loan, the monthly payment amount, the applicable interest rate, or the amount of escrow payments owed, if any. All of these terms may be modified under HAMP, *see* SD 09-01, yet they are all left out of the TPP. This is so because the TPP is not a permanent modification – nor an offer for a permanent modification that could be accepted by plaintiff – as confirmed by the statement in Paragraph 4(D) that "all the terms and provisions of the Loan Documents remain in full force and effect." The TPP is silent with respect to "what the parties agreed to" as to any permanent modification and, as such, it cannot be enforced by this Court.

### (d) Plaintiff has not alleged an entitlement to damages.

Plaintiff cannot establish injury, let alone actual damages. "An adequate complaint based upon breach of contract must allege the existence of damages as a consequence of the breach." *Feldstein v. Guinan*, 499 N.E.2d 535, 537 (Ill. App. Ct. 1986). "In Illinois, the purpose of damages is to place the non-breaching party in the position he would have been in had the contract been performed, but not to place him in a better position or provide him with a windfall recovery…. Speculative damages or damages not the proximate result of the breach will not be allowed." *Id.* at 613 (citations omitted). Here, plaintiff has alleged no basis for the Court to award monetary damages.

First, plaintiff has identified no monetary harm that she suffered by virtue of not having received a permanent modification upon completion of her TPP – because there was none.

Plaintiff was obligated to repay a principal balance of $728,500 based on the terms of her original note and mortgage, and she was in default. Once plaintiff was on the HAMP trial plan, Wells Fargo determined that, under HAMP guidelines, it could not permanently modify her loan with monthly payments that plaintiff could afford in light of the amount of the loan relative to plaintiff's financial circumstances. *See* Compl., Ex. E. Even if Wells Fargo's decision (following HAMP guidelines) could be considered a breach of contract, plaintiff has not identified any financial loss that she suffered (and for which she should be compensated by Wells Fargo) from the date that she completed her TPP payments to the filing of the Complaint in this action.[6] *See, e.g.*, *Feldstein*, 499 N.E.2d at 537-38.

Second, HAMP guidance suggests a 60-day grace period for servicers to provide a modification if they determine that a modification was denied in error. *See* HAMP FAQs, 2009-2010 Conversion Campaign, Q1222-01 at 3. Here, Wells Fargo determined that plaintiff was ineligible for a permanent modification because application of the "waterfall" did not result in an affordable payment. If this Court finds that Wells Fargo's application of HAMP guidelines to plaintiff's financial data was in error, the Bank should still have a grace period in which to provide a permanent modification (which would place plaintiff in the same position as if she received the modification upon completion of her initial TPP payments).

Third, plaintiff claims she was harmed by Wells Fargo because she "forewent pursuing other remedies that she might otherwise have pursued to save her home, such as restructuring her debt under the bankruptcy code, or pursuing other strategies to deal with [her] default, such as

---

[6]      Plaintiff suggests that Wells Fargo has failed to credit to her account the four monthly TPP payments she made. *See* Compl. ¶ 46. In support of the allegation, plaintiff references Exhibit D to the Complaint. Exhibit D, however, does not show that plaintiff's payments were not credited to her account. Plaintiff obtained an interest-only loan, and the principal balance of her loan remains at the original amount of $728,500.

selling her home." Compl. ¶ 73. There is no support, however, for the Court to find that

plaintiff's alleged lost opportunities for mitigating her financial burden is a cognizable basis for a

claim of damages. *See, e.g.*, *Feldstein*, 499 N.E.2d at 537-38. Moreover, even if damages for

these alleged speculative injuries were recoverable (and could be assessed a present value),

plaintiff has not alleged a basis for the Court to find causation, that is, she has identified no

avenue of relief that she claims to have been forced to forgo due to any action by Wells Fargo.

Indeed, she does not allege that Wells Fargo prevented plaintiff from seeking bankruptcy relief,

from selling her home, or from pursuing any alternative and more preferable solutions to address

her debt obligations. For all these reasons, Count I should be dismissed.

### C.  Plaintiff Has Failed To State A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing.

In Count II, plaintiff alleges that Wells Fargo breached the implied covenant of good

faith and fair dealing "in a deliberate attempt to discourage borrowers from successfully

completing the loan modification requirements and to minimize the total number of permanent

loan modifications ultimately extended." Complaint ¶ 80. Plaintiff's claim should be dismissed

because plaintiff has failed to allege the existence of a contract, and, even if she had, the

covenant does not stand as an independent action, and it cannot be brought against a lender

seeking payment in a demand note.

First, "[b]efore there can be an implied covenant [of good faith], there first must be a

contract between the parties that the covenant can be implied from." *Pommier v. People Bank

Marycrest*, 967 F.2d 1115, 1120-21 (7th Cir. 1992) (affirming dismissal). As discussed above,

plaintiff has failed to allege the existence of a contract and, on this basis alone, she cannot pursue

an implied covenant claim. *Id.* Moreover, the conduct that forms the basis of plaintiff's implied

covenant claims concern pre-contractual conduct. *See* Compl., ¶¶ 79 (alleging that Wells Fargo

"unreasonably delay[ed] *the extension of offers* for permanent modifications to borrowers who perform fully and faithfully under their TPP Agreements"), 80 (alleging that Wells Fargo made a "deliberate attempt to discourage borrowers from *successfully completing the loan modifications requirements*" (emphasis added). Because the implied covenant of good faith and fair dealing only applies once an actual contract has been formed, plaintiff's implied covenant claim must fail. *See Magna Bank of Madison County v. Jameson*, 604 N.E.2d 541, 544 (Ill. App. Ct. 1992) (affirming dismissal of implied covenant claim where party did not allege that conduct occurred after formation of the contract).

Even if plaintiff could alleged the existence of a valid contract, however, the implied covenant claim would still have to be dismissed because the Illinois Supreme Court has held that breach of the covenant of good faith and fair dealing is not an independent cause of action under Illinois law except "in the narrow context of cases involving an insurer's obligation to settle with a third party who has sued the policyholder." *Voyles v. Sandia Mortgage Corp.*, 751 N.E.2d 1126, 1131 (Ill. 2001) (affirming dismissal of good faith and fair dealing claim); *see also Baxter Healthcare Corp. v. O.R. Concepts, Inc.*, 69 F.3d 785, 792 (7th Cir. 1995) (affirming dismissal because while the duty of good faith and fair dealing merely "guides the construction of the explicit terms in the agreement, Plaintiff attempted to use the duty to imply additional obligations that were not bargained for") (quoting *Beraha*, 956 F.2d 1436, 1443 (7th Cir. 1992)).

Finally, to the extent that Wells Fargo's effort to negotiate a loan modification with plaintiff can be construed as an effort by Wells Fargo to demand payment on the loan, Illinois law generally holds that while "a covenant of fair dealing and good faith is implied into every contract absent express disavowal, … the duty to act in good faith does not apply to lenders seeking payment on demand notes." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th

Cir. 2010) (affirming dismissal) (internal quotations and citations omitted).  For each of these reasons, Count II should be dismissed.

**D.**     **Plaintiff Has Failed To State A Claim For Promissory Estoppel.**

Plaintiff has failed to allege a valid claim for promissory estoppel.  A plaintiff may invoke the doctrine of promissory estoppel only where: (1) there is a promise unambiguous in terms; (2) there is reliance thereon by the promisee; (3) the reliance is expected and foreseeable by the promisor; and (4) the promisee in fact relies upon the promise to his injury.  *Geva v. Leo Burnett Co., Inc.*, 931 F.2d 1220, 1223 (7th Cir. 1991) (citing *Restatement (Second) of Contracts* § 90(1) (1981)).  The promisee's reliance must be reasonable and justifiable.  *Id.*

As discussed above, no promise existed that was unambiguous in its terms.  *See supra* at 10-17.  The TPP did not contain any terms governing the alleged permanent loan modification.  The TPP governed the trial period only and Wells Fargo could not have expected plaintiff to rely on it as a permanent modification of the loan, *see, e.g.,* Compl., Ex. A at 2(G), 4(D), particularly where the TPP states that the original loan documents remain in full force and effect.  Moreover, as stated above, HAMP guidelines clearly contemplated that a TPP was not a guarantee that a permanent loan modification would be offered.  Nor can plaintiff allege that she suffered damages as a result of Wells Fargo's decision, under HAMP, that there was no modified payment that plaintiff could afford.  *See* Compl., Ex. E.  Accordingly, Count III should be dismissed.

**IV.     CONCLUSION**

For each of the foregoing reasons, defendant Wells Fargo Bank, N.A. respectfully requests that the Court dismiss the Complaint with prejudice and award such other relief as the Court deems just and necessary.

19

Dated: May 12, 2010

Respectfully submitted,

*/s/ Jessica A. Baer*
Michael J. Hayes (Bar No. 01161725)
michael.hayes@klgates.com
Jessica A. Baer (Bar No. 6295818)
jessica.baer@klgates.com
**K&L GATES LLP**
70 W. Madison St., 3100
Chicago, IL 60602
312.372.1121 (phone)
312.827.8000 (fax)

Irene C. Freidel (N.D. Ill. Bar No. 559051)
irene.freidel@klgates.com
David D. Christensen (*pro hac pending*)
david.christensen@klgates.com
Kristin A. Davis (*pro hac pending*)
kristin.davis@klgates.com
**K&L GATES LLP**
State Street Financial Center
One Lincoln Street
Boston, MA 02111
617.951.9154 (phone)
617.261.3175 (fax)

*Counsel for Defendant*
Wells Fargo Bank, N.A.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 12, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel or parties of record on the attached service list.

*/s/ Jessica A. Baer*
Jessica A. Baer

## SERVICE LIST

### Case No. 1:10-cv-02348

Irina Slavina
islavina@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
**Edelson McGuire, LLC**
350 North LaSalle Street, Suite 1300
Chicago, IL 60654

*Counsel for Plaintiff Lori Wigod*