IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| LORI WIGOD, on her own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A. d/b/a WELLS FARGO HOME MORTGAGE, f/k/a WACHOVIA MORTGAGE, FSB,<br><br>Defendant. | Case No: 1:10-cv-02348<br><br>Honorable Blanche M. Manning |

## THE PARTIES' JOINT INITIAL STATUS REPORT

Plaintiff Lori Wigod ("Plaintiff" or "Wigod"), and Defendant Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant"), pursuant to Fed. R. Civ. P. 16(b) and 26(f) and the Court's Standing Order, submit the following Initial Status Report and state as follows:

**A.  Nature of the Case**

*(1)  Bases for Jurisdiction, Nature of the Claims and Counterclaims:*

The parties agree that the Court has subject matter jurisdiction over this case under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). Wells Fargo also contends that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which Plaintiff disputes.

*Plaintiff's Position*:

Plaintiff Lori Wigod brings this suit on behalf of herself and a class of similarly situated homeowners nationwide, as well as a Subclass of Illinois homeowners, to challenge Wells Fargo's repeated and systematic failure to offer Plaintiff and other borrowers permanent loan modifications under Trial Period Plan Agreements ("TPP Agreements") between Wells Fargo and its qualifying borrowers, including Plaintiff.

1

On February 18, 2009, the Secretary of the Treasury and the Director of the Federal Housing Finance Agency announced the Making Home Affordable program. One aspect of this program is known as the Home Affordable Modification Program, or HAMP. Under HAMP, the federal government incentivizes participating servicers to enter into agreements with struggling homeowners that will make adjustments to existing mortgage obligations in order to make the monthly payments more affordable. As a HAMP servicer, Wells Fargo entered into written TPP Agreements for temporary modifications with Plaintiff and other eligible Wells Fargo borrowers.

These TPP Agreements, which were form contracts, contained an express term requiring Wells Fargo to extend a formal offer for a permanent loan modification upon a borrower's completion of his or her respective trial period and continued compliance with the TPP Agreements' other terms. Plaintiff and the members of the putative class have complied with their contractual obligations under the TPP Agreements by submitting all required documentation, answering all questions truthfully, and by making each of her trial payments.

Despite Plaintiff's full performance, however, as of the date of this writing, Wells Fargo has not offered Plaintiff or the putative class members permanent loan modifications under the TPP Agreement with Plaintiff. Plaintiff alleges that such conduct amounts to (I) breach of contract, (II) breach of the implied covenant of good faith and fair dealing, and (III) promissory estoppel. Plaintiff alleges that as a result of Wells Fargo's practices, she and a class of similarly situated individuals are entitled to damages and other relief. Plaintiff intends to file an Amended Complaint, no later than June 23, 2010, alleging additional claims pursuant to the Parties' stipulation filed June 2, 2010. Plaintiff vigorously disputes Wells Fargo's version of the facts and (mis)interpretation of the law set forth below.

*Defendant's Position:*

Wells Fargo has filed a Motion to Dismiss the Complaint, which is currently pending before the Court. In its Motion, Wells Fargo set forth the reasons that the Complaint should be dismissed, including, as follows: Plaintiff filed this putative class action lawsuit to compel Wells Fargo to permanently modify the terms of her $728,500 mortgage loan, which plaintiff obtained in 2007 to finance her Chicago condominium. The mortgage loan, now in default, is serviced by Wells Fargo. In her Complaint, plaintiff alleges three common law causes of action all of which center around Wells Fargo's decision not to permanently modify plaintiff's mortgage loan under the government's Home Affordable Modification Program ("HAMP") in which Wells Fargo is a voluntary participant. Plaintiff's claims are without merit and should be dismissed; plaintiff, who Wells Fargo determined did not satisfy HAMP's eligibility requirements for a permanent modification, is impermissibly using state law to enforce Wells Fargo's obligations under HAMP. Borrowers do not have a private right of action to enforce HAMP's requirements against participating servicers, including Wells Fargo. Moreover, plaintiff has no legally enforceable property interest or mandatory entitlement to a permanent loan modification. HAMP provides no guarantee that a borrower will receive a permanent modification once they obtain a trial plan; eligibility requirements must be satisfied.

Even if plaintiff had a right of action under HAMP, she has failed to allege that she entered into a written agreement with Wells Fargo to permanently modify her loan. As a matter of law, plaintiff cannot establish that her trial plan, or the trial plans of putative class members, was an enforceable contract offer to enter into a permanent modification, that she provided consideration to Wells Fargo for such modification in light of her pre-existing indebtedness, or that she suffered damages as a result of any purported breach.

(2)  *Relief Sought by Plaintiff, Including Computation of Damages, if Available:*

As set forth in the Complaint, the Plaintiff seeks the following relief on each count:

| | |
|---|---|
| Count I – Breach of Contract | Plaintiff seeks, on behalf of a nationwide class, a declaration that Wells Fargo has breached its TPP Agreement with Plaintiff and the Class by not extending them a permanent loan modification, and resulting damages caused by such breach, as well as costs and reasonable attorneys' fees. |
| Count II – Breach of Covenant of Good Faith and Fair Dealing: | Plaintiff seeks a declaration that Wells Fargo's conduct as alleged in Count II of the Complaint, constitutes a breach of the implied covenant of good faith and fair dealing, and resulting damages caused by such breach, as well as costs and reasonable attorneys' fees. |
| Count III – Promissory Estoppel: | Plaintiff seeks entry of an Order requiring Wells Fargo to extend permanent loan modifications to Plaintiff and other qualified borrowers under a theory of promissory estoppel. |

As alleged, actual damages include: (1) amounts to compensate Plaintiff and the class and subclass members for having been wrongfully denied offers for permanent modification, (2) damages for their lost opportunity to have taken alternative action to save their homes, (3) returned/dishonored check fees, (4) damage to credit scores and profiles, (5) the costs of reproducing documents repeatedly requested by Wells Fargo, (6) transportation fees, and other costs and damages. Experts may be required to compute the value of Plaintiff and the class members wrongfully being extended offers for permanent loan modifications.

Wells Fargo denies that plaintiff or the putative class is entitled to the relief sought.

3.  *Names of Any Parties That Have Not Been Served:*

All Parties have been served and have appeared.

4

4. *Major Legal Issues:*

The main legal issues in this case include:

*Plaintiff's Position:*

    a.    whether Plaintiff's HAMP Trial Period Plan constitutes a valid and enforceable contract entitling Plaintiff to a permanent loan modification, and, if so, whether Wells Fargo's purported failure to extend a permanent loan modification to Plaintiff constitutes a breach of contract entitling Plaintiff and the putative class damages;

    b.    whether Wells Fargo should be estopped from denying Plaintiff a permanent loan modification under a theory of promissory estoppel based upon Wells Fargo's alleged representations to permanently modify Plaintiff's loan; and

    c.    whether Wells Fargo breached the implied covenant of good faith and fair dealing (with respect to the Illinois Sub Class) by, *inter alia*, engaging in the following purported conduct: failing to properly supervise its employees in charge of modifications, routinely demanding and re-demanding information already in Wells Fargo's possession, making inaccurate calculations, and otherwise failing to perform loan servicing functions consistent with its responsibilities.

*Defendant's Position:* In addition to those issues identified above by plaintiff, the following will be central legal issues in this case:

    a.    whether Plaintiff has standing to enforce HAMP requirements or can assert state law claims to enforce Wells Fargo's HAMP obligations;

    b.    whether Plaintiff is a third-party beneficiary of Wells Fargo's Servicer Participation Agreement with the U.S. Treasury under HAMP;

5. *Major Factual Issues:*

The major factual issues, based upon Plaintiff's allegations and claims set forth in the Complaint, in this case concern whether:

    a.    Wells Fargo extended offers for permanent loan modifications under the HAMP Trial Payment Plans to Plaintiff and putative class members and whether such borrowers fully complied with their requirements under the HAMP Trial Payment Plans

    b.    Plaintiff's and putative class members' loans were eligible for permanent modification under HAMP;

    c.    Wells Fargo intended to extend offers for permanent loan modifications to Plaintiff and the Class members;

5

    d.    Wells Fargo repeatedly requested that its borrowers produce documentation already in Wells Fargo's possession, thereby delaying the process for determining whether to modify a given loan pursuant to HAMP;

    e.    Wells Fargo knowingly and deliberately failed to supervise employees in overseeing the HAMP loan modification process and/or offered incentives to those employees who interfered with, delayed, and/or ultimately disrupted the modification process in a deliberate attempt to limit the total number of modifications extended to borrowers;

    f.    Wells Fargo induced Plaintiff and putative class members to pursue modification process(es) in an attempt to extract as much money as possible from Plaintiff and the putative class members before Wells Fargo took steps to foreclose on their homes; and

    g.    Plaintiff and putative class members reasonably relied on the representations made by Wells Fargo relating to the purported offer of a permanent loan modification under HAMP, and whether Plaintiff and class members suffered damage as a result of their alleged reliance;

*(6)*    *Citations to Key Authorities*

*Plaintiff's Position*:

The key authorities involved in this case include Illinois law with respect to contract formation and modification, the implied covenant of good faith and fair dealing, promissory estoppel, and other alleged causes of action. Key authorities also include the HAMP Guidelines and directives, servicer agreements, directives issued by Fannie Mae and Freddy Mac, and other applicable directives and guidelines. Plaintiff reserves the right to supplement this section as further authorities become known or available.

*Defendant's Position:*

Wells Fargo incorporates by reference the legal authority presented in its Motion to Dismiss. In addition to the applicable Illinois law with respect to plaintiff's breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel claims, the U.S. Treasury's HAMP directives, HAMP directives or guidelines issued by any other authorized agency or entity, and the applicable Servicer Participation Agreements, Wells Fargo

6

will rely upon federal case law interpreting HAMP and borrowers' ability to privately enforce HAMP.

**B.      Rule 16. Pretrial Conferences; Scheduling; Management**

*(1)     Amendment of Pleadings & Joinder of Parties:*

Wells Fargo has filed a motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). Rather than brief the motion to dismiss, Plaintiff has elected to amend the complaint as of right to add certain claims against Wells Fargo. At this time, Plaintiff does not anticipate adding any additional parties. Pursuant to the Parties' Stipulation, Plaintiff has until June 23, 2010, to file her amended complaint, but this should not be construed as a deadline to amend pleadings or join additional parties. Plaintiff proposes setting a deadline for amending the pleadings following a ruling on Plaintiff's anticipated motion for class certification. Defendant, however, does not consent to any such amendment and further does not waive its right to challenge any motion for leave to file an amended complaint after the Court's ruling, if any, on class certification. Plaintiff does not waive the ability to conform the pleadings to the proofs adduced as may be permitted by the Court.

*(2)     Motions: All prior and pending motions, their current status, and any anticipated motions:*

As noted above, Wells Fargo has filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). Plaintiff intends on moving for class certification in accordance with the schedule outlined in paragraph 5 below and may also file a motion for preliminary injunction, should the need to do so arise during the litigation. Should any claims remain after the Court adjudicates Wells Fargo's Rule 12(b)(6) motion to dismiss, Wells Fargo anticipates moving for summary judgment on any remaining claims.

*(3)     Evidence Preservation: Steps taken to preserve evidence relevant to the issues reasonably evident in this action:*

*Plaintiff's Position:* Plaintiff's counsel has sent a preservation notice to Defendant. Despite Plaintiff's request in the preservation notice for confirmation that Defendant has taken appropriate steps to preserve all relevant documents and Electronically Stored or Generated Information, Defendant has not confirmed such preservation at this time.

*Defendant's Position:* Wells Fargo has taken reasonable measures, pursuant to the Federal Rules of Civil Procedure and Evidence, to preserve all relevant information, including electronically-stored information.

(4)  *Timing of Disclosures Under Rule 26(a) and 26(e)(1):*

The Parties propose serving the initial disclosures pursuant to Fed. R. Civ. P. 26 no later than July 15, 2010. The Parties propose to modify the deadline for disclosures pursuant to Fed. R. Civ. P. 26(e)(1) in accordance with the schedule outlined in paragraph 5 below.

(5)  *Discovery: Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, and a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f):*

*Plaintiff's Position*:

Discovery has not yet been taken by either party. The scope of discovery in this matter will cover all material and evidence relating to Wells Fargo's standards and practices in refusing to extend permanent loan modifications to qualifying borrowers under its TPP Agreements with such borrows, as well as Wells Fargo's sending of notices and processing of appeals.

Wells Fargo has expressed in this case that the first phase of discovery, prior to the Court's ruling on class certification, should not include discovery of information bearing on putative class members, other than the named plaintiff. Plaintiff does not object to the concept of bifurcation of discovery in this case between class issues and those that pertain to the merits but objects to Wells Fargo's proposed limitation as to the discovery of information bearing on and relevant to putative class members, including their identity. Plaintiff contends that formal

8

class discovery should commence immediately and that such discovery should not be stayed during the pendency of Wells Fargo's Motion to Dismiss as it may be applied to Plaintiff's Amended Complaint. Plaintiff proposes the Parties be given a period of approximately 9 months to complete all class discovery, including all written and oral discovery. Following class discovery, all briefing on the issue of class certification should be completed and submitted to the Court within 140 days following the close of class discovery. A reasonable cut-off for merits discovery is 160 days following the Court's decision on class certification. Dispositive motions should be filed no later than 60 days following the close of merits discovery. A pretrial conference should be held no earlier than 30 days prior to trial.

Thus, assuming the Court's docket allows for a decision Wells Fargo's Motion to Dismiss by the end of August 2010, the Plaintiff tentatively proposes the following date: Class

| | |
|---|---|
| Discovery: | September 1, 2010 – May 2, 2011 |
| Designation of class experts: | March 1, 2011 |
| Briefing on Class Certification: | Completed by August 12, 2011 |
| Designation of merits experts: | January 2, 2012 |
| Merits discovery cut-off: | April 2, 2012 |
| Deadline for filing dispositive motions: | May 2, 2012 |
| Pretrial conference: | June 2012 |

*** *Disclosure or Discovery of Electronically Stored Information* ***

Certain evidence is likely to be located and available in electronic format. Using the Court of Appeals for the Seventh Circuit's Pilot Program (October 1, 2009) as a guide, Plaintiff proposes the Parties, along with their respective technology experts, should be required to meet and discuss: (1) the identification of relevant and discoverable ESI; (2) the scope of discoverable ESI to be preserved by the parties; (3) the formats for preservation and production of ESI; (4) the

potential for conducting discovery in phases or stages as a method for reducing costs and burden; (5) the procedures for handling inadvertent production of privileged information and other privilege waiver issues under Rule 502 of the Federal Rules of Evidence; (6) any other relevant ESI issues involved in the case. The Parties should attempt to craft an appropriate stipulation governing the production of electronic evidence for the Court's approval prior to the initiation of Class discovery.

*Defendant's Position*:

Wells Fargo's position is that discovery should be stayed until resolution of its pending Motion to Dismiss, or any motion to dismiss any amended complaint filed by Plaintiff. Further, Wells Fargo believes that, for reasons of judicial economy and efficiency, discovery be conducted in two phases. Phase I discovery should be directed to the issue of class certification and the merits of the named plaintiff's individual claims so that the Court may determine as soon as practicable whether this action meets the standards under Rule 23 of the Federal Rules of Civil Procedure for class action treatment.

Because Wells Fargo's pending motion to dismiss (and its anticipated motion to dismiss plaintiff's soon-to-be filed amended complaint) will potentially dispose of all of the claims in this action, Wells Fargo proposes that the Court establish a schedule for Phase I discovery and briefing on plaintiff's motion for class certification after it has resolved any Rule 12(b)(6) motion to dismiss. Wells Fargo proposes a Phase I discovery period of 9 months, if necessary, beginning with the disposition of any Rule 12(b)(6) motion to dismiss, to be followed by a class certification briefing schedule that commences 1 month after the close of Phase I discovery.

Following resolution of the class certification issue, and depending upon the Court's disposition of plaintiff's motion for class certification, Wells Fargo proposes that the Court convene a further case management conference to address further scheduling in the case, including, without limitation, scheduling of Phase II discovery, if any.

Wells Fargo further proposes that it meet and confer with plaintiff regarding her proposal as to the disclosure and discovery of electronically-stored information.

**C.     Trial Status**

*(1)     Whether or Not a Jury Has Been Requested:*

Plaintiff has requested a trial by jury of all claims that may be so tried.

*(2)     Probably Length of Trial:*

Plaintiff anticipates a jury trial. The Parties agree that given the stage of the proceedings, it is difficult to estimate the time needed for trial, the Parties will need to modify the anticipated length of trial as additional information and facts become available.

**D.     Consent to Proceed Before a Magistrate Judge**

The parties do not unanimously consent to proceed before a Magistrate Judge for all purposes.

**E.     Settlement Status**

*(1)     Whether or Not Discussions Have Been Held and the Status of Those Discussions:*

To date, the parties have not engaged in settlement discussions of any sort. Wells Fargo believes that any discussion of a class-wide settlement is premature given its Rule 12(b)(6) motion to dismiss which could dispose of all of plaintiff's claims. Plaintiff's obviously dispute that Wells Fargo's motion could result in the disposal of any such claims.

*(2)     Whether or Not the Parties Wish a Settlement Conference With Judge Manning or a Magistrate Judge:*

11

While Plaintiff is open to an early settlement conference, Wells Fargo does not believe that an early settlement conference regarding settlement on a class-wide basis will be productive. Wells Fargo is willing to engage in an early settlement conference as to the named plaintiff's claims only.

Dated: June 9, 2010  Respectfully submitted,

**LORI WIGOD**

By: /s/ Irina Slavina
    Irina Slavina
    EDELSON MCGUIRE, LLC
    350 N. LaSalle Ave, Suite 1300
    Chicago, Illinois 60654
    Tel: (312) 589-6370
    Fax: (312) 589-6378
    islavina@edelson.com

Dated: June 9, 2010  Respectfully submitted,

**WELLS FARGO BANK, N.A.**

By: /s/ Irene C. Freidel
    Irene C. Freidel
    K&L Gates LLP
    State Street Financial Center
    One Lincoln Street
    Boston, MA 02111
    Tel: (617) 261-3100
    Fax: (617) 261-3175
    irene.freidel@klgates.com

## **CERTIFICATE OF SERVICE**

I, Irina Slavina, an attorney, certify that on June 9, 2010, I served the above and foregoing, ***The Parties' Joint Initial Status Report***, by causing true and accurate copies of such paper to be filed with the Court and transmitted to the persons shown below via the Court's CM/ECF electronic filing system, on this the 9th day of June, 2010.

Irene C. Freidel (irene.freidel@klgates.com)
David D. Christensen (david.christensen@klgates.com)
Kristin A. Davis (kristin.davis@klgates.com)
K&L Gates LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111

Michael J. Hayes (michael.hayes@klgates.com)
Jessica A. Baer (jessica.baer@klgates.com)
K&L Gates LLP
70 W. Madison St., 3100
Chicago, IL 60602

/s/ Irina Slavina