# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LORI WIGOD, on her own behalf and on the behalf of others similarly-situated, ) ) | |
| Plaintiff, ) ) | No. 10 CV 2348 |
| v. ) ) | Judge Blanche M. Manning |
| WELLS FARGO BANK, N.A. d/b/a ) WELLS FARGO HOME MORTGAGE, f/k/a ) WACHOVIA MORTGAGE, FSB, ) Defendant. ) | |

## MEMORANDUM AND ORDER

In the midst of an unprecedented financial crisis, the U.S. government made nearly $700 billion in funds available to the country's largest financial institutions to stop the crisis from worsening. A key feature of the $700 billion bank bailout was the Home Affordable Modification Program, under which banks, including defendant Wells Fargo, received incentive payments from the government to provide mortgage loan modifications to homeowners, including plaintiff Lori Wigod.

At first, Wigod received a four-month modification, but has now filed suit against Wells Fargo alleging that it denied her a permanent modification in violation of its contractual obligations. Wigod contends that she is also a victim of Wells Fargo's alleged misrepresentations, its "immoral, unscrupulous, unfair, and oppressive" business practices, and its failure to properly hire and supervise its employees. She seeks damages and an order from the court directing Wells Fargo to permanently modify her mortgage loan.

Before the court is Wells Fargo's motion to dismiss Wigod's complaint in its entirety. For the reasons given below, the motion to dismiss is granted.

**BACKGROUND**

For purposes of the motion to dismiss, the court deems the following facts to be true, which are taken from Wigod's first amended complaint, or the various documents attached or referred to in the complaint and central to her claims. *See Marshall-Mosby v. Corporate Receivables, Inc.,* 205 F.3d 323, 326 (7th Cir. 2000).

In September 2007, Wigod obtained mortgage financing from Wells Fargo's predecessor in the amount of $728,500 for a condominium in Chicago. Wigod made payments as due for about the first two years of the mortgage. Although she had not missed a payment, on April 3, 2009, Wigod reached out to Wells Fargo's loss mitigation department and made a written request for a loan modification under the Home Affordable Modification Program, or HAMP.

The HAMP program had been announced on February 18, 2009, and was intended to stave off a tidal wave of foreclosures by restructuring or refinancing the mortgage loans of homeowners already in default, or who were in imminent risk of default, by reducing monthly payments to a sustainable level of not more than 31% of their gross monthly income. All servicers of loans owned, securitized, or guaranteed by Fannie Mae or Freddie Mac were required to participate in HAMP as to those loans. Participation by servicers was voluntary as to loans not owned, securitized, or guaranteed by Fannie Mae or Freddie Mac, such as Wigod's loan.

Wells Fargo's participation in the HAMP program was governed by the Servicer Participation Agreement that it entered into with the Federal National Mortgage Association, or Fannie Mae, in its role as a financial agent of the United States. Under the Servicer Participation Agreement, Wells Fargo was required to evaluate all mortgage loans that had been delinquent for 60 days or more to determine whether they were eligible for modification under HAMP, and

were also required to evaluate the mortgage loans of any of their borrowers who contacted them about a HAMP modification.

Under the terms of HAMP, a borrower is eligible for modification only if: (1) the mortgage involves the borrower's primary residence, (2) the amount owed does not exceed $729,750, (3) the borrower has a financial hardship, (4) the mortgage was originated before 2009, and (5) the monthly mortgage payments exceed 31% of the borrower's monthly income. *See* Supplemental Directive 09-01[1] (attached as Exhibit A to the Declaration of Steven Lezell) at 2-3. In addition, servicers are required to perform various evaluations of borrowers in order to determine whether the borrower is eligible for a permanent modification. Among the tests servicers perform is Net Present Value test, which evaluates a borrower's financial position to determine whether a modification would be profitable. Servicers also use a "waterfall" process to determine whether any combination of capitalizing unpaid interest and escrow fees, waiving late fees, reducing the interest rate to as low as 2%, and/or extending the term of the loan would reduce the borrower's monthly payment to no more than 31% of her monthly income. *See* Response [42-1] at 4 (citing various portions of Supplemental Directive 09-01).

---

[1] Wigod refers to Supplemental Directive 09-01 in her brief in opposition to the motion to dismiss, and provided a copy to the court. In her brief, she describes it as setting out Wells Fargo's obligations when evaluating borrowers for a HAMP modification, and states that it is referenced in the Servicer Participation Agreement Wells Fargo signed, which is attached to the first amended complaint. In addition, Supplemental Directive 09-01 is published by Fannie Mae and publicly available on its website at https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/sd0901.pdf. Because it is both a public document of which the court can take judicial notice and Wigod incorporated it by reference into the allegations of her complaint, the court is free to take into account the Supplemental Directive when deciding the motion to dismiss.

A HAMP modification is carried out in two stages. First, an eligible borrower who has represented to her lender that she cannot afford the payments required under her mortgage loan receives a Trial Period Plan, or TPP, from her lender. The TPP requires the borrower to make reduced monthly mortgage payments during the trial period (Wigod's trial period was 4 months), while the lender suspends any scheduled foreclosure sale. The borrower also agrees to document her inability to pay under the terms of the mortgage loan if she has not already done so, and to obtain credit counseling if required by the lender.

The second stage consists of the borrower and lender entering into a Modification Agreement, under which the terms of the original mortgage loan are permanently modified. However, no permanent modification will occur if the borrower fails to make a required payment during the trial period, or if the lender determines that the borrower's representations about her financial condition are no longer true.

The parties dispute whether HAMP requires a lender to permanently modify a mortgage if the borrower makes all required payments and their financial representations remain true. Wigod alleges that because she satisfied both of those conditions, Wells Fargo was required to permanently modify her loan, citing in support the following language from the Trial Period Plan:

> If I am in compliance with this Loan Trial Period and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Loan Modification Agreement, as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.

TPP (Exhibit A to the First Amended Complaint [23-1]) at 1. But Wells Fargo contends that it was not required to permanently modify a mortgage loan if it determined during the trial period that the borrower did not meet the requirements under HAMP for a modification, citing in support the following language from the Trial Period Plan:

> I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (I) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.

*Id.* ¶ 2(G).

After receiving Wigod's request for a loan modification under HAMP and financial disclosures she had also forwarded, Wells Fargo notified Wigod in mid-May 2009 that she qualified for a temporary loan modification. On May 28, 2009, Wigod received a Trial Period Plan from Wells Fargo, which she signed and returned "along with any final documents Defendant deemed were necessary to determine her eligibility." Am. Compl. [23-1] ¶ 33.

Beginning in July 2009, Wigod made each of the payments required during the four-month period covered by the Trial Period Plan. Wigod alleges that she also fully complied with all of the other terms of the Trial Period Plan, "such as keeping her information accurate and submitting all necessary paperwork." However, in a letter dated November 13, 2009, Wells Fargo notified Wigod that she was not eligible for a permanent modification of her mortgage loan:

> Unfortunately, after carefully reviewing the information you've provided, we are unable to adjust the terms of your mortgage. You

> have not been approved for a mortgage loan modification because
> we were unable to get you to a modified payment amount that you
> could afford per the investor guidelines on your mortgage.

Letter of November 13, 2009 (attached as Exhibit C to the Amended Complaint [23-1]).

Although the four-month term of her Trial Period Plan ended in October 2009, Wigod has continued making mortgage payments in the reduced amount due under the Trial Period Plan rather than the full amount due under her original mortgage loan. She has also attempted to convince Wells Fargo that its calculations of her eligibility for a HAMP modification were flawed, but those attempts have been unsuccessful. In the meantime, Wells Fargo has sent Wigod monthly notices threatening to foreclose on her home if she does not pay the delinquency between her monthly payment amount due under her original home mortgage, and the reduced amount she has been paying since July 2009.

Wigod has now sued Wells Fargo based upon its decision not to permanently modify her mortgage loan. Specifically, she alleges claims of: (1) breach of the Trial Period Plan (Count I); (2) promissory estoppel, based upon promises Wells Fargo allegedly made in the Trial Period Plan (Count II); (3) breach of the Servicer Participation Agreement (Count III); (4) negligent hiring and supervision (Count IV); (5) fraudulent misrepresentation or concealment (Count V); (6) negligent misrepresentation or concealment (Count VI); and (7) violation of Illinois' Consumer Fraud and Deceptive Business Practices Act (Count VII). Wigod also sues on behalf of a class of similarly situated homeowners across the country. Although Wigod alleges jurisdiction only under the Class Action Fairness Act, *see* 28 U.S.C. § 1332(d)(2), the court notes that she is a citizen of Illinois while Wells Fargo is chartered in South Dakotah and its principal place of business is in California. Because the court therefore has diversity jurisdiction over

Wigod's claims under 28 U.S.C. § 1332(a), it need not delve into the issue of whether it also has jurisdiction under § 1332(d)(2).

Wells Fargo has filed a motion to dismiss each of Wigod's claims. For the reasons stated, the motion to dismiss is granted.

## ANALYSIS

### I. Standard of Review

A complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a complaint must contain "enough facts to state a claim to relief that is plausible on its face" and also must state sufficient facts to raise a plaintiff's right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 547 (2007). In *Iqbal,* the Supreme Court stated that a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009).

The court is neither bound by the plaintiff's legal characterization of the facts, nor required to ignore facts set forth in the complaint that undermine the plaintiff's claims. *Scott v. O'Grady,* 975 F. 2d 366, 368 (7th Cir. 1992). However, "in examining the facts and matching them up with the stated legal claims, we give 'the plaintiff the benefit of imagination, so long as the hypotheses are consistent with the complaint.'" *Bissessur v. Ind. Univ. Board of Trustees,* 581 F. 3d 599, 603 (7th Cir. 2009).

## II. Breach of Contract (Count I) and Promissory Estoppel (Count II)

In these counts, Wigod alleges that Wells Fargo promised to permanently modify the terms of her original mortgage loan, as long as she met all of the requirements set out in the Trial Period Plan. In Count I, she alleges that the Trial Period Plan was a contract, and that Wells Fargo breached the contract by failing to permanently modify her mortgage loan even though she had fully complied with the terms of the Trial Period Plan. Alternatively, she alleges that Wells Fargo failed to honor its promise to permanently modify Wigod's mortgage loan, a promise on which she relied to her detriment.

Wells Fargo argues that the allegations in Counts I and II are nothing more than claims that Wells Fargo failed to comply with the terms of HAMP, under which Wigod alleges she was entitled to a permanent modification. The vast majority of courts that have considered the issue have agreed that HAMP provides no private right of action. *See, e.g., Vida v. OneWest Bank, F.S.B.*, No. 10-987, 2010 WL 5148473, **3-4 (D. Or. Dec. 13, 2010) (collecting cases). Wigod contends that the lack of any private right of action under HAMP is irrelevant because her claims are grounded not in HAMP, but rather Wells Fargo's promises in the Trial Period Plan. The plaintiff in *Vida* made a similar attempt to distinguish her claims for breach of contract based upon statements in the Trial Period Plan from a claim under HAMP itself. The district court concluded that even though the plaintiff had couched her claim as one for breach of the Trial Period Plan, "the facts and allegations as pleaded in this case are premised chiefly on the terms and procedures set forth via HAMP and are not sufficiently independent to state a separate state law cause of action for breach of contract." *Id.* at *5.

As with the plaintiff in *Vida*, Wigod has alleged claims that rely "primarily on representations made in uniform HAMP documents," including the statement in the Trial Period Plan that as long as she complied with the requirements of that Plan, "'then the Lender will provide me with a Home Affordable Modification Agreement . . . that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.'" *Id.* (quoting plaintiff's Trial Period Plan). Because "the alleged offer to modify came about and was made wholly under the rubric of HAMP, as were [the plaintiff]'s alleged actions in acceptance of the offer, *i.e.*, submitting the required documentation, and the alleged consideration, *i.e.* remitting reduced loan payments, [the plaintiff] fails to state a cause of action independent of HAMP, for which there is no private right of action." *Id.*

Consequently, the motion to dismiss Wigod's claims of breach of contract (Count I) is granted and the claim is dismissed with prejudice. The court also grants the motion to dismiss with prejudice Wigod's claim of promissory estoppel (Count II) which, like her claim of breach of contract, is premised primarily on representations made in uniform HAMP documents.

### III. Breach of Servicer Participation Agreement (Count III)

In Count III, Wigod alleges that Wells Fargo breached the terms of the Servicer Participation Agreement that it entered into with Fannie Mae, and that she has standing to sue as an intended beneficiary. Because one of the parties to the Servicer Participation Agreement is Fannie Mae as an agent of the United States, the agreement is governed by federal common law. *Speleos v. BAC Home Loans Servicing, L.P.*, No. 10-11503, 2010 WL 5174510, *3 (D. Mass. Dec. 14, 2010). Under federal law, federal courts apply the Restatement (Second) of Contracts to determine whether a third-party is an intended beneficiary to a government contract. *Id.* Under

§ 313 of the Restatement, a third-party is an intended beneficiary only if (a) the contract explicitly gives the third party the right to enforce the contract, or (b) the third party was intended to benefit from the contract *and* third-party claims are consistent with the terms of the contract. *See* RESTATEMENT (SECOND) OF CONTRACTS § 313.

Wigod has cited several portions of the Servicer Participation Agreement to show that the Agreement was intended to benefit borrowers like her. However, she has failed to acknowledge the significance of ¶ 11 (E):

> The Agreement shall inure to the benefit of and be binding upon the parties to the Agreement and their permitted successors-in-interest.

Servicer Participation Agreement (attached as Exhibit B to the Amended Complaint [23-1]) ¶ 11(E). A similarly-worded clause appeared in the Servicer Participation Agreement at issue in *Speleos*:

> These rights and remedies are for our benefit and that of our successors and assigns.

*Speleos*, 2010 WL 5174510 at *5. In *Speleos*, the court concluded that such language is inconsistent with allowing third-party claims to enforce the Servicer Participation Agreement and, therefore, held that the borrower was not an intended beneficiary. The decision reached in *Speleos* that a borrower is not an intended beneficiary of a Servicer Participation Agreement is consistent with the decisions reached by most of the courts that have addressed the issue. *See, e.g., id.* at *3 (collecting cases).

As with the Servicer Participation Agreement in *Speleos*, the language in Wells Fargo's Servicer Participation Agreement is inconsistent with allowing third-party claims and, therefore,

Wigod is not an intended beneficiary under that Agreement. Accordingly, she lacks standing to bring a claim alleging breach of the Agreement, and Count III is dismissed with prejudice.

**IV.     Negligent Hiring and Supervision  (Count IV)**

In Count IV, Wigod alleges that Wells Fargo hired temporary employees who were not qualified to determine a borrower's eligibility for a HAMP modification, and failed to safeguard Wigod against the unfitness of its employees. As a result, Wigod alleges, Wells Fargo's employees improperly determined that borrowers like Wigod were not eligible for a HAMP modification.

As was the case with Wigod's breach of contract and promissory estoppel claims, Wigod is alleging that Wells Fargo failed to adhere to the terms and procedures set forth under HAMP in that it failed to permanently modify her mortgage loan even though, she contends, she met the requirements. Her claim of negligent hiring and supervision is therefore premised on Wells Fargo's obligations as a HAMP servicer, a claim for which HAMP provides her with no private right of action to enforce. *See Vida*, 2010 WL 5148473, at *5 ("the facts and allegations as pleaded in this case are premised chiefly on the terms and procedures set forth via HAMP and are not sufficiently independent to state" separate state law claims).

Because Wigod's claim of negligent hiring and supervision are really claims that Wells Fargo failed to adhere to the terms and procedures of HAMP, Count IV is dismissed with prejudice.

## V. Fraudulent Misrepresentation and/or Concealment (Count V)
## Negligent Misrepresentation and/or Concealment (Count VI)

In Counts V and VI, Wigod alleges that she suffered damages after reasonably relying on misrepresentations made by Wells Fargo. Specifically, she identifies the misrepresentation as the statement in the Trial Period Plan that Wells Fargo would permanently modify the terms of her mortgage loan as long as she is "in compliance with this Loan Trial Period and [her] representations in Section 1 continue to be true in all material respects." Trial Period Plan [attached as Exhibit A to the First Amended Complaint [23-1]) at 1. Additionally, she alleges damages based upon Wells Fargo's failure to disclose that (a) it would consider her in default if she made the reduced payments required under the Trial Payment Plan rather than the full payments required under her original mortgage loan, and (b) Wells Fargo would "fail to adhere to applicable HAMP guidelines and directives" by denying her a permanent modification even though she qualified for one under HAMP guidelines.

### A. Fraudulent Misrepresentation
### Negligent Misrepresentation

To succeed on her claim of fraudulent misrepresentation, Wigod must be able to establish each of the following: (1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) justifiable reliance on the truth of the statement; and (5) damage resulting from such reliance. *See Weidner v. Karlin*, 932 N.E.2d 602, 605 (Ill. App. Ct. 2010). The elements of a claim of negligent misrepresentation are similar, except that (1) the defendant need not have known the statement was false, but rather was merely negligent or careless in failing to ascertain the truth, and (2) the defendant must have owed the plaintiff a duty to provide accurate information. *See Kopley Group V., L.P. v. Sheridan*

*Edgewater Properties, Ltd.*, 876 N.E.2d 218, 228 (Ill. App. Ct. 2007). Both claims require justifiable reliance, which is normally a question a question of fact, but "can be determined as a matter of law when no trier of fact could find that it was reasonable to rely on the alleged statements or when only one conclusion can be drawn." *Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 574 (7th Cir. 2001).

Wigod alleges that she reasonably relied on the opening paragraph in the Trial Period Plan that Wells Fargo would permanently modify the terms of her mortgage loan as long as she made the four payments required under the Plan and that her representations of her financial condition remained true—it makes no mention of any other requirements. However, elsewhere in the Trial Period Plan, Wigod was advised that she must meet *all* of HAMP's requirements for modification:

> the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (I) *I meet* all *of the conditions required for modification* . . . I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.

Trial Period Plan (attached as Exhibit A to First Amended Complaint [23-1]) ¶ 2(G) (emphasis added).

The quoted paragraph is at odds with the opening statement that to obtain a permanent modification, she merely needed to make the four reduced payments required under the Trial Period Plan and supply accurate financial information. Given those inherently contradictory statements, Wigod could not reasonably have relied on just the opening statement because it would have required her to ignore the remainder of the contract which required her to meet *all* of

HAMP's requirements. Indeed, the uniform Trial Period Plan has been interpreted as "explicitly not [being] an enforceable offer for loan modification." *Vida*, 2010 WL 5148473, at *6. Accordingly, in light of the language of the Trial Period Plan as a whole, any reliance Wigod placed on just the opening sentence was not reasonable and, therefore, as a matter of law, she cannot establish the elements of either a fraudulent or negligent misrepresentation. *See Cozzi Iron*, 250 F.3d at 574 (reliance is unreasonable as a matter of law "when no trier of fact could find that it was reasonable to rely on the alleged statements").

      **B.**     **Fraudulent Concealment**
              **Negligent Concealment**

Wigod also alleges that Wells Fargo either fraudulently or negligently concealed from her (1) "that by her entering into and complying with the [Trial Period Plan] Agreement, Defendant would consider and report her as being in default on her mortgage," and (2) that Wells Fargo "would fail to adhere to applicable HAMP guidelines and directives and would, in contravention of those directives, re-evaluate the Plaintiff's eligibility using different standards and calculations than those required under the directives." First Amended Complaint [23-1] ¶¶ 109, 114, 120. To establish a fraudulent or negligent misrepresentation based upon an omission or concealment, in addition to the elements of a fraudulent or negligent misrepresentation, a plaintiff must show that the defendant owed a duty to supply the omitted or concealed information. *See Weidner v. Karlin*, 932 N.E.2d 602, 605 (Ill. App. Ct. 2010) ("it is necessary to show the existence of a special or fiduciary relationship, which would raise a duty to speak") (internal quotation marks and citation omitted).

Wells Fargo seeks dismissal of Wigod's claims of alleged concealment based upon the absence of any fiduciary or other duty to speak. Specifically, Wells Fargo points out that under Illinois law, a "mortgagor-mortgagee relationship does not create a fiduciary relationship as a matter of law." *Graham v. Midland Mortgage Co.*, 406 F. Supp. 2d 948, 953 (N.D. Ill. 2005) (internal quotation marks and citation omitted). Wigod responds that Wells Fargo owed her a duty not merely as a mortgagor, but rather because of its "position of influence and superiority over plaintiff" due to its role as "a HAMP servicer." Response [42-1] at 28. However, as was the case with Wigod's breach of contract, promissory estoppel, and negligent hiring and supervision claims, her concealment claims are premised on Wells Fargo's obligations as a HAMP servicer and, therefore, HAMP provides her with no private right of action to enforce those claims. *See Vida*, 2010 WL 5148473, at *5 ("the facts and allegations as pleaded in this case are premised chiefly on the terms and procedures set forth via HAMP and are not sufficiently independent to state" separate state law claims).

Accordingly, the motion to dismiss Wigod's claims of fraudulent and negligent misrepresentation and concealment (Counts V and VI) are dismissed with prejudice.

## VI.   Illinois Consumer Fraud Act  (Count VII)

Finally, Wigod alleges violations of Illinois' Consumer Fraud and Deceptive Business Practices Act based upon the same statements or omissions at issue in its claims of fraudulent and negligent misrepresentations and omissions, namely:  (1) Wells Fargo's purported promise that Wigod would obtain a permanent modification as long as she made the reduced payments required under the Trial Period Plan and her financial disclosures remained accurate; (2) Wells Fargo's alleged failure to disclose that it would consider her in default on her original mortgage if

she paid no more than the reduced payments required under the Trial Period Plan; and (3) Wells Fargo's alleged failure to disclose that it would not follow HAMP guidelines when evaluating her eligibility for a permanent modification.

The Consumer Fraud and Deceptive Business Practices Act prohibits unfair methods of competition and unfair or deceptive acts or practices, including the use of any "deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission." 815 Ill. Comp. Stat. § 505/2. To prevail on a claim under the Act, Wigod must establish the following: (1) an unfair or deceptive act by the defendant; (2) the defendant's intention that the plaintiff rely on the unfair or deceptive act; (3) the unfair or deceptive act occurred in the course of trade or commerce; and (4) the unfair or deceptive act proximately caused the plaintiff's damages. *See Siegel v. Shell Oil Co.*, 612 F.3d 932, 934-35 (7th Cir. 2010) (applying Illinois law).

Wells Fargo argues that Wigod's complaint fails to plausibly suggest that she would be able to establish two of the required elements. First, it contends that Wigod's complaint does not plausibly suggest that she could establish an intent to deceive. The court agrees. Wigod argues that Wells Fargo lured her into pursuing a permanent modification all the while knowing that it would never offer those borrowers a permanent modification. But it also alleges that Wells Fargo's participation in HAMP was voluntary. If Wells Fargo was intent on denying permanent modifications to borrowers such as Wigod, it would make no sense for Wells Fargo to voluntarily participate in a program aimed at providing modifications. In other words, if Wells Fargo did not want to permanently modify its borrowers' mortgages, it would not have chosen to

voluntarily participate in the government's modification program. Wigod contends that Wells Fargo's motivation was to "extract as much money as possible from borrowers Defendant identified as being at risk for default prior to foreclosure," but by sending Wigod a Temporary Payment Plan, Wells Fargo agreed to accept *less* from her each month for four months than she was previously obligated to pay. Thus, Wigod's allegations do not plausibly suggest an intent to deceive.

Second, Wells Fargo contends that Wigod's allegations do not plausibly suggest that she has suffered any injury. Wigod alleges that she was injured because she poured all her financial resources into making the four payments required under the Trial Payment Plan, and therefore was unable to "pursue other avenues for saving her home and credit." Am. Compl. [23-1] ¶ 125. However, the fact that Wells Fargo agreed not to foreclose on her home if she made substantially reduced payments for four months, as opposed to the full payment she was otherwise obligated to pay, would have left her with more financial resources to pursue other options, rather than fewer resources. Additionally, to establish damages under the Consumer Fraud Act, Wigod must be able to show that Wells Fargo's alleged "deception deprive[d] the plaintiff of the benefit of her bargain by causing her to pay more than the actual value of the property." *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) (internal quotation marks and citation omitted). Given Wigod's allegation that Wells Fargo agreed not to foreclose on her home even if she paid less than she owed, her complaint does not plausibly suggest that she suffered any actual pecuniary loss as a result of Wells Fargo's alleged deception. *Id.* (to establish claim under Consumer Fraud Act, plaintiff must have suffered an "actual pecuniary loss").

Accordingly, Wigod has not plausibly suggested an intent to deceive or an injury proximately caused by the alleged deception, and therefore Wells Fargo's motion to dismiss her claim under Illinois' Consumer Fraud and Deceptive Practices Act is granted. Because she cannot allege an intent to deceive or damages that would be consistent with her allegations that Wells Fargo agreed to a trial period of accepting monthly payments that were less than Wigod owed, the consumer fraud claim in Count VII is dismissed with prejudice.

## CONCLUSION

For the reasons stated, the court grants Wells Fargo's motion to dismiss and dismisses Wigod's claims with prejudice. The clerk is directed to enter a Rule 58 judgment and terminate this case from the court's docket.

ENTER:

DATE: January 25, 2011      _____
                            Judge Blanche M. Manning
                            United States District Judge