**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

LORI WIGOD, on her own behalf and on
behalf of all others similarly situated,

               Plaintiff,

               v.

WELLS FARGO BANK, N.A. d/b/a
WELLS FARGO HOME MORTGAGE, f/k/a
WACHOVIA MORTGAGE, FSB,

               Defendant.

Case No: 1:10-cv-02348

Honorable Blanche M. Manning

Honorable Magistrate Judge Maria Valdez

**PLAINTIFF'S STATUS REPORT FOLLOWING
<u>REFERRAL TO MAGISTRATE JUDGE</u>**

      Plaintiff Lori Wigod ("Plaintiff" or "Wigod"), and Defendant Wells Fargo Bank, N.A.

("Wells Fargo" or "Defendant") initially appeared for a status and scheduling conference before

the District Court on May 15, 2012, at which time the Parties advocated their respective views

with regard to discovery scheduling in this case. Plaintiff Wigod also presented her Motion for

Leave to Serve 150 Interrogatories, which the District Court took under advisement. (Dkt. 79.) In

doing so, the District Court further ordered that this case be referred to this Court for "discovery

supervision, ruling on all non-dispositive pretrial motions, as well as settlement discussions at

the appropriate time." (*Id*.) Pursuant to this Court's Order of June 1, 2012 (Dkt. 89), the Plaintiff

submits the following Status Report setting forth Plaintiff's recommendations for proceeding

forward with this case.[1]

---

[1] Wells Fargo has chosen not to participate in the submission of the Joint Status Report for the
reasons set forth in email correspondence dated June 22, 2012, and attached hereto as Exhibit A.
For this reason, Plaintiff files the instant Status Report containing solely Plaintiff's
Recommendation.

***Plaintiff Wigod's Recommendation***

As set forth in the initial status report, Plaintiff believes that the Seventh Circuit's opinion provides comprehensive guidance regarding the breach of contract, estoppel, and fraud claims at issue in this lawsuit and how to move forward. Plaintiff further believes that Judge Ripple's concurring Opinion should guide these proceedings: "Prompt resolution of this matter is not only necessary for the good of the litigants but for the good of the Country." (App. Opinion 75.) To that end, Plaintiff proposes a discovery schedule that allows the process to move forward without unnecessary delays.

      **1.**      **Discovery should proceed all at once on all issues.**

Plaintiff opposes any bifurcation between class and merits issues—to avoid unnecessary hold ups, discovery should go forward with respect to all issues in the case. Bifurcation as advocated by Wells Fargo will only hold up the process as the Parties haggle over whether this or that item is relevant to class certification, the merits, both, or neither (with Wells Fargo likely championing whatever position allows it, at the time, to withhold critical information). This will result in the Parties endlessly seeking to involve the Court to settle their differences. Moreover, in a case such as this, alleging a broad, systematic fraud wherein Wells Fargo knowingly refused to honor thousands of temporary payment plan agreements, there exists significant overlap between class and merits issues.

All of this can be avoided if its made clear to Wells Fargo from the start that it will not be permitted to withhold information under the guise that the material sought is premature and would only be relevant, if at all, at a later stage of the case.

2.    **Plaintiffs' Motion for Leave to Serve 150 Interrogatories, Motion for Leave to Add the Finlinsons, Motion to Compel Rule 30(b)(6) Deposition Testimony and Related Discovery Relief, Wells Fargo's Motion for Protective Order, and Wells Fargo's "Rolling Production".**

Plaintiff believes that for this case to proceed efficiently and effectively, Wells Fargo needs to be directed by this Court that discovery delays will not be tolerated. At this time, Wells Fargo has essentially objected to *every* discovery request that Plaintiffs have propounded—often with assertions that border on the specious. Plaintiff believes that moving this case along requires that this Court grant Plaintiff's several discovery and other motions that are presently pending and denying Wells Fargo's baseless attempt to secure a protective order on Plaintiffs' Requests for Admission.

a.    Motion for Leave to Serve 150 Interrogatories

Most of the information needed to fairly prosecute this case is in the hands of Wells Fargo. Specifically, Plaintiff needs detailed information regarding the number and identities of homeowners who were processed through Wells Fargo's HAMP operations at particular points in time (given certain changes to HAMP directives that impact the class definitions), dates Wells Fargo implemented changes, and a host of other very specific pieces of information. Accordingly, Plaintiff filed a Motion for Leave to Serve 150 Interrogatories, attaching an initial 120. Judge Manning indicated she would take the Motion under advisement and then referred it to this Court for consideration. (Dkt. 79.) In a case such as this, which is both of national importance and highly complex, interrogatories are the best tool to use to get Wells Fargo to provide meaningful answers to specific questions. As explained in both Plaintiff's Motion for Leave to Propound Interrogatories as well as her Motion to Compel, it is highly doubtful that any Rule 30(b)(6) witness will be adequately prepared to testify on such matters (especially here, where Wells Fargo's counsel has indicated a single witness will be produced to testify on behalf

3

of the entire bank on all 15 topics, and Wells Fargo refuses to allow for more than 7 hours of examination). Also, while documents such as Wells Fargo's monthly or other periodic internal HAMP reporting may contain such information, Wells Fargo refuses to produce such materials and objects to producing a witness to testify regarding their contents. Accordingly, this Court should allow the Plaintiff to propound 150 interrogatories without hesitation. It is worth noting that Wells Fargo has had the proposed interrogatories for almost 2 months and has made absolutely zero effort to answer a single one.

b.     Motion for Leave to Add the Finlinsons

As for Plaintiff's Motion for Leave to Add the Finlinsons, critical to this case is the issue of "pre-verification." When the government first rolled out HAMP, servicers had a choice: (a) they could place borrowers into trial period plans based on verbal representations of income without first determining whether the borrower qualified for the program, subject to later verification through written documents or, (b) they could "pre-verify" the homeowner for the HAMP by reviewing the borrower's financial documents first and determining their eligibility *prior* to starting the TPP Agreement. After June 1, 2010, the program directives changed so as to require that <u>all</u> borrowers be pre-verified (a change Wells Fargo has claimed it made internally starting March 1, 2010). Wigod alleges that she (and the class members she seeks to represent) was pre-verified. Wells Fargo objected to producing discovery from after June 1, 2010 because Wigod was processed in June 2009, claiming her facts were thus too dissimilar from those processed after the directives changed. Although Wigod and her counsel disagreed with this analysis, adding the Finlinsons, who were processed in December 2010, unquestionably resolves Wells Fargo's protests that post-June 1, 2010 (or really March 1, 2010) information is outside the

4

scope of the litigation. As Wells Fargo has officially taken no position with respect to adding the Finlinsons, this Court should grant Plaintiff's leave to add them.

        c.      Motion to Compel Rule 30(b)(6) testimony

Wells Fargo has refused to produce a designee to testify on several topics as set forth in Plaintiffs' Motion to Compel. Moreover, Wells Fargo refuses to produce documents that are absolutely critical prior to conducting the Rule 30(b)(6) examination, including Wells Fargo's internal reporting, its reporting to the government, and a list of the employees it hired to work on HAMP applications. Likewise, Wells Fargo objects to Plaintiff's request to enlarge the examination from 7 to 21 hours, despite the fact the bank only intends on producing a single person to testify regarding each of Plaintiff's 16 topics, and to Plaintiffs' request to allow for 50 witness depositions, notwithstanding the fact that thousands of people have relevant information and almost 12 persons inside the bank were involved in the consideration of Wigod's HAMP application alone. Wells Fargo prefers instead that Plaintiffs max out the number of depositions permitted under the Federal Rules and then come to the Court claiming more information is needed. This will simply result, like Wells Fargo's other suggestions, in more wasted time and unnecessary Court intervention. Accordingly, this Court should grant Plaintiffs' Motion to Compel.

        d.      Wells Fargo's Motion for a Protective Order

In addition to demanding that discovery proceed in a piecemeal fashion—limited solely to the named Plaintiffs' individual claims and whatever Wells Fargo determines, in its sole discretion, is relevant to class certification—objecting to answering Plaintiff's interrogatories, and refusing to produce critical documents or a prepared corporate designee to testify on relevant topics, Wells Fargo has also filed a Motion for Protective Order seeking to limit Plaintiff to a

scant 50 Requests for Admission. As with Wells Fargo's other tactics, this Court should reject the protective order as it will only increase the delay of the prosecution of this case.

                e.        Well Fargo's "Rolling" Production

On June 21, 2012, Wells Fargo served upon Plaintiff's counsel 116 pages of its "Objections and Responses" to Plaintiff's First Set of Requests for Production of Documents consisting almost entirely of various objections. In addition, Wells Fargo has indicated it will be producing documents "as they become available on a rolling basis." This type of production does not lend itself to bifurcated discovery phases, as it permits the defendant (who has all of the information) to withhold relevant documents. This is a massive lawsuit and, even before a class is certified, implicates thousands of people. If Wells Fargo is to be permitted to engage in a "rolling production" the Court must set firm deadlines as to when Wells Fargo must represent that its production is full and complete and that no other relevant information exists. Otherwise Wells Fargo's approach promises delays, needless failures to disclose relevant information, and, ultimately, a trial by surprise (when the bank suddenly discovers new information it previously represented didn't exist.)

        **3.**        ***Electronic discovery***

Plaintiff anticipates that several areas of discovery will implicate eDiscovery concerns. Wells Fargo used software programs to receive modification documents from customers. Wells Fargo representatives also used software programs to determine whether customers qualified for HAMP, to communicate internally within the bank, and to communicate with customers. All documents must be produced in a reasonably useable form together with all native data, including emails. The Parties have an electronic discovery meet and confer scheduled for June 25, 2012.

4.      *Modifying the Limits Imposed by the Federal Rules*

Given the size and complexity of this lawsuit, Plaintiff requests that the limits on discovery be modified as set forth in her Motion for Leave to Propound 150 Interrogatories, Motion to Compel, and in her Opposition to Wells Fargo's Motion for a Protective Order.

5.      *Plaintiff's Proposed Schedule*

Plaintiff recommends the following schedule:

| | |
|---|---|
| Written Discovery period on all issues | May 21, 2012 – August 1, 2013 |
| Examination of Wells Fargo's Witnesses | Starting August 1, 2012 – October 30, 2012 |
| Expert discovery | November 1, 2012 to January 15, 2013 |
| Plaintiff's Motion for Class Certification Due | February 15, 2013 |
| Wells Fargo's Opposition to Class Certification Due | March 15, 2013 |
| Plaintiff's Reply in Support of Class Certification Due | April 5, 2013 |

Plaintiff recommends that the Court enter a revised scheduling order setting the matter for a hearing on dispositive motions and for trial following a decision on Class Certification.

Dated: June 22, 2012                          Respectfully submitted,

                                              LORI WIGOD


                                      By:     /s/ Irina Slavina

                                              EDELSON MCGUIRE, LLC
                                              350 N. LaSalle Ave, Suite 1300
                                              Chicago, Illinois 60654
                                              Tel: (312) 589-6370
                                              Fax: (312) 589-6378
                                              islavina@edelson.com

7

## <u>CERTIFICATE OF SERVICE</u>

I, Irina Slavina, an attorney, certify that on June 22, 2012, I served the above and foregoing, ***Plaintiff's Status Report***, by causing true and accurate copies of such paper to be filed with the Court and transmitted to the persons shown below via the Court's CM/ECF electronic filing system.

Irene C. Freidel (irene.freidel@klgates.com)
David D. Christensen (david.christensen@klgates.com)
Kristin A. Davis (kristin.davis@klgates.com)
K&L Gates LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111

Michael J. Hayes (michael.hayes@klgates.com)
Jessica A. Baer (jessica.baer@klgates.com)
K&L Gates LLP
70 W. Madison St., 3100
Chicago, IL 60602

/s/  Irina Slavina

8