## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| LORI WIGOD, DAN FINLINSON and SANDRA FINLINSON, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Case No: 1:10-cv-02348 |
| v. | Honorable Blanche M. Manning |
| WELLS FARGO BANK, N.A. d/b/a WELLS FARGO HOME MORTGAGE, f/k/a WACHOVIA MORTGAGE, FSB, and d/b/a America's Servicing Company, | Honorable Magistrate Maria Valdez |
| Defendants. | |

## ANSWER OF WELLS FARGO BANK, N.A. TO SECOND AMENDED COMPLAINT

Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), by and through its attorneys, hereby answers the Second Amended Complaint ("SAC") brought by plaintiffs Lori Wigod, Dan Finlinson, and Sandra Finlinson (collectively, "plaintiffs"), on behalf of themselves and a purported class of others similarly situated.

Except as expressly admitted or denied hereon below, Wells Fargo is without knowledge or information sufficient to form a belief as to the truth of the allegations of each and every paragraph of the SAC.

1.      Paragraph 1 sets forth plaintiffs' characterizations of this action to which no response is required.  To the extent that a further response may be required, Wells Fargo denies the allegations set forth therein.

2.      Wells Fargo denies the allegations set forth in Paragraph 2.

3.      In response to the first sentence of Paragraph 3, Wells Fargo states that 12 U.S.C. § 5211 speaks for itself as to its content.  Wells Fargo admits the allegations set forth in the second sentence of Paragraph 3.

4.      In response to the first sentence of Paragraph 4, Wells Fargo states that TARP and HAMP speak for themselves as to their content.  In response to the second sentence of Paragraph 4, Wells Fargo admits that it participates in HAMP and that it and other participants receive incentive payments in connection with the modification of mortgage loans for qualified borrowers.  Wells Fargo denies the remaining allegations in Paragraph 4.

5.      In response to the allegations in Paragraph 5, Wells Fargo admits that Michael J. Heid of Wells Fargo Home Mortgage executed an SPA on April 13, 2009, a copy of which is attached as Exhibit B to the SAC.  In further response, Wells Fargo states that the SPA speaks for itself as to its content.

6.      In response to the allegations in Paragraph 6, Wells Fargo admits that it provided plaintiff, as well as other borrowers, with a HAMP Trial Period Plan ("TPP") pursuant to HAMP guidelines then in effect and United States policy.  Wells Fargo denies the remaining allegations set forth in Paragraph 6.

7.      Wells Fargo denies the allegations set forth in Paragraph 7.

8.      Wells Fargo denies the allegations set forth in Paragraph 8.

## JURISDICTION

9.      In response to Paragraph 9, Wells Fargo admits that the Court has subject matter jurisdiction in this matter pursuant to 28 U.S.C. § 1332(d)(2).

10.      In response to Paragraph 10, Wells Fargo admits that venue is proper in this District and that the Court has supplemental jurisdiction over plaintiffs' state law claims, but denies that it has engaged in any unlawful practices alleged in the SAC.

## PARTIES

11.      In response to the allegations in the first two sentences of Paragraph 11, Wells Fargo admits that Ms. Wigod's home mortgage loan is at issue in the case but Wells Fargo is otherwise without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth therein.  Wells Fargo denies the remaining allegations set forth in Paragraph 11.

12.      In response to the allegations in the first sentence of Paragraph 12, Wells Fargo admits that the Finlinsons' home mortgage loan is at issue in the case but Wells Fargo is otherwise without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth therein.  Wells Fargo denies the remaining allegations set forth in Paragraph 12.

13.      In response to Paragraph 13, Wells Fargo admits that it is a national banking association chartered in Sioux Falls, South Dakota, that one of the activities that Wells Fargo engages in is mortgage lending, and that Wells Fargo has offices at 420 Montgomery Street, San Francisco, California 94104.  Wells Fargo further admits Wells Fargo Home Mortgage is an operating division of Wells Fargo and that it has offices in

Des Moines, Iowa. In response to the third sentence of Paragraph 13, Wells Fargo

admits that America's Servicing Company is a Wells Fargo Home Mortgage business

line that services residential mortgage loans.

14.     In response to Paragraph 14, Wells Fargo states that Wachovia Mortgage,

FSB merged into Wells Fargo Bank, N.A. and that Wells Fargo has committed to

complying, and is obligated to comply, with HAMP guidelines as to each borrower's

loan, including plaintiff's, regardless of whether the loan modification or TPP was

provided by Wachovia or Wells Fargo. Wells Fargo denies the remaining allegations set

forth in Paragraph 14.

## FACTUAL BACKGROUND

15.     In response to the allegations set forth in Paragraph 15, Wells Fargo states

that the report of the Congressional Oversight Panel speaks for itself as to its content.

Wells Fargo further admits that there has been an increase in residential mortgage

foreclosure activity in this country in the last several years. Wells Fargo is without

knowledge or information sufficient to form a belief as to the truth of the remaining

allegations set forth in Paragraph 15.

16.     Wells Fargo admits the allegations in Paragraph 16 and further states

that the Emergency Economic Stabilization Act of 2008 and the American Recovery and

Reinvestment Act of 2009 speak for themselves as to their content. To the extent that a

further response may be required, Wells Fargo admits that "protect[ing] home values"

and "preserve[ing] homeownership" are among the purposes listed in 12 U.S.C. § 5201.

17.     In response to the allegations set forth in Paragraph 17 of the SAC, Wells Fargo states that 12 U.S.C. §§ 5211 and 5213(3) speak for themselves as to their content. To the extent that a further response may be required, Wells Fargo admits the allegations set forth in Paragraph 17.

18.     In response to the allegations set forth in Paragraph 18 of the SAC, Wells Fargo states that 12 U.S.C. §§ 5219 and 5220 speak for themselves as to their content. To the extent that a further response may be required, Wells Fargo admits that 12 U.S.C. § 5219 provides that "[t]o the extent that the Secretary acquires mortgages, mortgage backed securities, and other assets secured by residential real estate, including multifamily housing, the Secretary shall implement a plan that seeks to maximize assistance for homeowners and use the authority of the Secretary to encourage the servicers of the underlying mortgages, considering net present value to the taxpayer, to take advantage of the HOPE for Homeowners Program under section 1715z–23 of this title or other available programs to minimize foreclosures. In addition, the Secretary may use loan guarantees and credit enhancements to facilitate loan modifications to prevent avoidable foreclosures," and admits that 12 U.S.C. § 5220 contains similar language.

19.     Upon information and belief, Wells Fargo admits the allegation set forth in the first sentence of Paragraph 19. In response to the second and third sentences of Paragraph 19, Wells Fargo states that the guidelines, rules, and regulations that comprise HAMP speak for themselves as to their content. Wells Fargo admits that, as a servicer participating in HAMP, it receives incentive payments under certain conditions

as identified in HAMP program documentation.  Wells Fargo is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in the second and third sentences of Paragraph 19.

20.     In response to Paragraph 20, Wells Fargo admits that, as a mortgage servicer, it processes payments, manages escrow accounts, forwards interest and principal payments to appropriate noteholders or investors, and, among other things, assists customers with loss mitigation activities.  Wells Fargo's legal status and obligations as a servicer are contained in its servicing agreements with investors.  Wells Fargo is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 20.

21.     In response to Paragraph 21, Wells Fargo admits that a servicer must execute an SPA in order to participate in HAMP.

22.     In response to Paragraph 22, Wells Fargo admits that Michael J. Heid of Wells Fargo Home Mortgage executed an SPA on April 13, 2009, a copy of which is attached as Exhibit B to the SAC.  Wells Fargo further states that the SPA speaks for itself as to its content.

23.     In response to Paragraph 23, Wells Fargo states that the SPA speaks for itself as to its content.  To the extent that a further response may be required, Wells Fargo admits that the SPA contains substantially similar language to that quoted in Paragraph 23.

24.     In response to Paragraph 24, Wells Fargo states that the SPA speaks for itself as to its content.

25.     In response to Paragraph 25, Wells Fargo states that the guidelines, rules, and regulations that comprise HAMP speak for themselves as to their content.

26.     In response to the allegations set forth in Paragraph 26, Wells Fargo admits that HAMP modifications generally proceed in two stages and that, prior to June 1, 2010, servicers were permitted, and encouraged as a matter of public policy, to place borrowers on TPPs prior to making a decision as to whether they qualified for a permanent HAMP modification.  In further answering, Wells Fargo states that plaintiffs' TPPs, attached as Group Exhibit A to the SAC, and the guidelines, rules, and regulations that comprise HAMP speak for themselves as to their requirements.

27.     Wells Fargo denies the allegations set forth in the first, second, and third sentences of Paragraph 27.  In response to footnote 2, Wells Fargo states that Supplemental Directive 09-07 speaks for itself as to its content.

28.     Wells Fargo denies the allegations set forth in Paragraph 28.

## FACTS RELATING TO NAMED PLAINTIFFS

29.     In response to the allegations set forth in Paragraph 29, Wells Fargo states that, on or about September 4, 2007, plaintiff Wigod obtained a mortgage loan from American Mortgage Network, Inc., d/b/a AmNet Mortgage, secured by real property located in Chicago, Illinois.  Wells Fargo states that Wachovia Mortgage, FSB merged into Wells Fargo Bank, N.A.  Wells Fargo denies the remaining allegations set forth in Paragraph 29.

30.     In response to the first sentence of Paragraph 30, Wells Fargo admits that plaintiff Wigod communicated with Wells Fargo regarding obtaining a HAMP loan

modification in April 2009. Wells Fargo denies the remaining allegations set forth in Paragraph 30.

31.     In response to Paragraph 31, Wells Fargo admits that in May 2009 it communicated to plaintiff Wigod that she was eligible for a HAMP TPP and sent her documents related to the TPP for her execution. To the extent that a further response may be required, Wells Fargo is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 31.

32.     In response to Paragraph 32, Wells Fargo admits that plaintiff Wigod returned an executed copy of a Home Affordable Modification Program Trial Loan Period to Wells Fargo, with a signature date of May 28, 2009. Wells Fargo denies the remaining allegations set forth in Paragraph 32.

33.     In response to Paragraph 33, Wells Fargo states that plaintiff Wigod's TPP, attached as Group Exhibit A to the SAC, speaks for itself as to its content. To the extent that a further response may be required, Wells Fargo admits the allegations set forth in Paragraph 33 to the extent that plaintiff Wigod's TPP, attached as Group Exhibit A to the SAC, contains the language quoted therein.

34.     In response to Paragraph 34, Wells Fargo states that plaintiff Wigod's TPP, attached as Group Exhibit A to the SAC, speaks for itself as to its content. To the extent that a further response may be required, Wells Fargo admits the allegations set forth in Paragraph 34 to the extent that plaintiff Wigod's TPP, attached as Group Exhibit A to the SAC, contains substantially similar language to that quoted in Paragraph 34.

35.     Wells Fargo denies the allegations set forth in Paragraph 35.

36.     In response to Paragraph 36, Wells Fargo admits that it executed a copy of plaintiff Wigod's TPP, which bears the signature of a Wachovia Mortgage, FSB representative from June 4, 2009, and returned a copy to plaintiff Wigod.  Wells Fargo denies the remaining allegations set forth in Paragraph 36.

37.     In response to Paragraph 37, Wells Fargo states that the letter and TPP, attached as Exhibit C and Group Exhibit A to the SAC, speak for themselves as to their content.  Wells Fargo admits that, on or about June 4, 2009, it sent plaintiff Wigod a letter regarding her HAMP application as well as a signed copy of her TPP.  Wells Fargo denies that either the referenced letter or TPP signified that plaintiff Wigod was determined qualified for a permanent HAMP modification.

38.     In response to Paragraph 38, Wells Fargo states that the documents attached as Exhibit D to the SAC speak for themselves as to their content.  To the extent that a further response may be required, Wells Fargo admits that plaintiff Wigod made, and Wells Fargo accepted pursuant to plaintiff Wigod's TPP, a number of payments to Wells Fargo in 2009 in the amount of $1,756.14.

39.     Wells Fargo denies the allegations set forth in Paragraph 39.

40.     In response to the allegations set forth in Paragraph 40, Wells Fargo admits that it has not provided plaintiff Wigod with a permanent modification of her mortgage loan because it determined that she was not qualified for such a modification under applicable guidelines.  Wells Fargo denies the remaining allegations set forth in Paragraph 40.

41.     In response to the allegations set forth in Paragraph 41, Wells Fargo states that the letter, attached as Exhibit E to the SAC, speaks for itself as to its content.  To the extent that a further response may be required, Wells Fargo admits it sent plaintiff Wigod a letter dated October 7, 2009 that set forth her outstanding balance (as of October 3, 2009) on her mortgage loan, including certain late charges that were added to her account consistent with the terms of her note.  Wells Fargo denies the remaining allegations set forth in Paragraph 41.

42.     In response to the allegations set forth in Paragraph 42, Wells Fargo states that the letter, attached as Exhibit F to the SAC, speaks for itself as to its content.  To the extent that a further response may be required, Wells Fargo admits that it sent plaintiff Wigod a letter dated November 13, 2009 regarding its decision that she did not qualify for a loan modification.

43.     In response to the allegations set forth in Paragraph 43, Wells Fargo states that the November 15, 2009 letter from Wells Fargo speaks for itself as to its content.  To the extent that a further response may be required, Wells Fargo admits that it accepted plaintiff Wigod's trial payments and, further, that the letter notified plaintiff that her loan was in default.  Wells Fargo denies the remaining allegations set forth in Paragraph 43.

44.     Wells Fargo denies the allegations set forth in Paragraph 44.

45.     In response to Paragraph 45, Wells Fargo states that any notices sent to plaintiff Wigod speak for themselves as to their content.  In further response, Wells Fargo admits that, to date, it has not provided plaintiff Wigod with a permanent

modification of her mortgage loan, that her loan is in default, and that her mortgage

and note permit acceleration of the note and foreclosure in the event of such default.

46.     In response to Paragraph 46, Wells Fargo states that the HAMP guidelines

and directives speak for themselves as to their content.  To the extent that a further

response may be required required, Wells Fargo admits that for non-GSE loans, prior to

June 1, 2010, HAMP Supplemental Directive 09-01 gave servicers the option of placing a

borrower into a trial period plan based on verbal financial information obtained from

the borrower, subject to later verification during the trial period, and that on or after

June 1, 2010, servicers could only offer a borrower a trial period plan based on verified

income documentation in accordance with HAMP guidelines.

47.     Wells Fargo denies the allegations in the first sentence in Paragraph 47.  In

response to the second sentence in Paragraph 47, Wells Fargo admits that, beginning in

or around March 2010, it offered only verified trial modification plans.

48.     Wells Fargo admits that on or around March 2, 2006, plaintiff Sandra

Finlinson obtained a mortgage loan secured by property located in Martinsville, Indiana

in the amount of $400,000 from Accredited Home Lenders, Inc.  Wells Fargo denies the

remaining allegations set forth in Paragraph 48.

49.     In response to the allegations set forth in the first sentence of Paragraph

49, Wells Fargo admits that the Finlinson loan was delinquent in 2009 and 2010, but

Wells Fargo is without knowledge or information sufficient to form a belief as to the

truth of the remaining allegations therein.  In response to the remaining allegations set

forth in Paragraph 49, Wells Fargo admits that in 2010 the Finlinsons applied for and

submitted documentation in connection with a HAMP modification. Wells Fargo denies the remaining allegations set forth in Paragraph 49.

50.     Wells Fargo admits that it communicated with the Finlinsons regarding the status of their HAMP application at various points in 2010, but Wells Fargo denies the remaining allegations set forth in Paragraph 50.

51.     Wells Fargo admits that it communicated with the Finlinsons regarding the status of their HAMP application at various points in 2010, but Wells Fargo denies the remaining allegations set forth in Paragraph 51.

52.     Wells Fargo admits that it communicated with the Finlinsons regarding the status of their HAMP application, including the need for the Finlinsons to submit additional documentation, at various points in 2010, but Wells Fargo denies the remaining allegations set forth in Paragraph 52.

53.     Wells Fargo admits that it approved Sandra Finlinson for a HAMP trial modification in or around December 1, 2010 and that it sent her a letter dated December 2, 2010 informing her of the approval and setting forth certain terms of the trial modification, the contents of which letter speak for themselves. Wells Fargo denies the remaining allegations set forth in Paragraph 53.

54.     In response to the allegations set forth in the first sentence of Paragraph 54, Wells Fargo admits that Sandra Finlinson made the three trial period plan payments as set forth in the December 2, 2010 letter. Wells Fargo denies the allegations set forth in the second sentence of Paragraph 54.

55.     In response to the allegations set forth in the first sentence of Paragraph 55, Wells Fargo admits that it has not permanently modified the Finlinson loan under HAMP, but denies the remaining allegations set forth therein.  In response to the allegations set forth in the second sentence of Paragraph 55, Wells Fargo admits that in May 2010 it sent Sandra Finlinson a letter denying her HAMP application due to liens on her property, the contents of which letter speak for themselves.  In response to the allegations set forth in the third sentence of Paragraph 55, Wells Fargo admits that the Finlinsons disclosed an IRS lien in the amount of $62,000 on the Request for Modification and Affidavit submitted in July 2010.   Wells Fargo denies the allegations set forth in the fourth sentence of Paragraph 55.

56.     In response to the allegations set forth in Paragraph 56, Wells Fargo admits that it sent a letter dated May 3, 2012 to Sandra Finlinson indicating that her loan was in default with a total delinquency of $89,516.18 as of May 3, 2012, including $3,898.44 for a "Late Charge Balance" and $410.00 for "Other Fees."  Wells Fargo denies the remaining allegations set forth in Paragraph 56.

## CLASS ALLEGATIONS

57.     Wells Fargo incorporates by reference its above responses in full.

58.     Paragraph 58 consists of plaintiffs' characterization of this action to which no response is required.  To the extent that a further response may be required, Wells Fargo denies that the putative class meets the requirements for certification under Fed. R. Civ. P. 23.

59.     Paragraph 59 consists of plaintiffs' nationwide class definition to which no response is required.  To the extent that a further response may be required, Wells Fargo denies that the putative class meets the requirements for certification under Fed. R. Civ. P. 23.

60.     Paragraph 60 consists of plaintiffs' nationwide class definition to which no response is required.  To the extent that a further response may be required, Wells Fargo denies that the putative class meets the requirements for certification under Fed. R. Civ. P. 23.

61.     Paragraph 61 consists of plaintiffs' Illinois subclass definition to which no response is required.  To the extent that a further response may be required, Wells Fargo denies that the putative class meets the requirements for certification under Fed. R. Civ. P. 23.

62.     Paragraph 62 consists of plaintiffs' Indiana subclass definition to which no response is required.  To the extent that a further response may be required, Wells Fargo denies that the putative class meets the requirements for certification under Fed. R. Civ. P. 23.

63.     Paragraph 63 consists of plaintiffs' class and subclass definition to which no response is required.  To the extent that a further response may be required, Wells Fargo denies that the putative class meets the requirements for certification under Fed. R. Civ. P. 23.

64.     Paragraph 64 consists of plaintiffs' characterization of this action to which no response is required.  To the extent that a further response may be required, Wells

Fargo denies that the putative classes meet the requirements for certification under Fed.

R. Civ. P. 23.

65.     Wells Fargo denies the allegations set forth in Paragraph 65.

66.     In response to the allegations set forth in Paragraph 66, Wells Fargo

admits, upon information and belief, that the amount in controversy exceeds $5 million.

67.     Wells Fargo denies the allegations set forth in Paragraph 67, including

subparagraphs (a) though (n).

68.     Wells Fargo denies the allegations set forth in Paragraph 68.

69.     Wells Fargo denies the allegations set forth in Paragraph 69.

70.     Wells Fargo denies the allegations set forth in Paragraph 70.

71.     Wells Fargo denies the allegations set forth in Paragraph 71.

72.     Wells Fargo denies the allegations set forth in Paragraph 72.

### COUNT I
### Breach of Contract
(on behalf of Wigod and the "Pre-June 1, 2010 Class" and the Finlinsons and the "Post-June 1, 2010 Class")

73.     Wells Fargo incorporates by reference its above responses in full.

74.     Paragraph 74 sets forth plaintiffs' characterization of this action to which

no response is required.  To the extent that a further response may be required, Wells

Fargo denies that the putative class meets the requirements for certification under Fed.

R. Civ. P. 23.

75.     Wells Fargo denies the allegations set forth in Paragraph 75.

76.     Wells Fargo denies the allegations set forth in Paragraph 76.

77.     Wells Fargo denies the allegations set forth in Paragraph 77.

78.     Wells Fargo denies the allegations set forth in Paragraph 78.

79.     Wells Fargo denies the allegations set forth in Paragraph 79.

80.     Wells Fargo denies the allegations set forth in Paragraph 80.

81.     Wells Fargo denies the allegations set forth in Paragraph 81.

82.     In response to the allegations relating to Wigod set forth in Paragraph 82, Wells Fargo states that the TPP, attached as Group Exhibit A to the SAC, speaks for itself as to its content.  In response to the allegations relating to the Finlinsons set forth in Paragraph 82, Wells Fargo states that the TPP, attached as Group Exhibit A to the SAC, speaks for itself as to its content.

83.     In response to the allegations relating to Wigod set forth in Paragraph 83, Wells Fargo states that the TPP, attached as Group Exhibit A to the SAC, speaks for itself as to its content.  In response to the allegations relating to the Finlinson TPP set forth in Paragraph 83, Wells Fargo states that the TPP, attached as Group Exhibit A to the SAC, speaks for itself as to its content.

84.     Wells Fargo denies the allegations set forth in Paragraph 84.

85.     Wells Fargo denies the allegations set forth in Paragraph 85.

86.     Wells Fargo denies the allegations set forth in Paragraph 86.

87.     Paragraph 87 sets forth a legal conclusion to which no response is required.  To the extent that a further response may be required, Wells Fargo denies the allegations set forth therein.

88.     Wells Fargo denies the allegations set forth in Paragraph 88, including

subparagraphs (a) through (g).

89.     Wells Fargo denies the allegations set forth in Paragraph 89.

90.     Wells Fargo denies the allegations set forth in Paragraph 90.

91.     Wells Fargo denies the allegations set forth in Paragraph 91.

92.     Wells Fargo denies the allegations set forth in Paragraph 92.

93.     Wells Fargo denies the allegations set forth in Paragraph 93.

94.     Wells Fargo denies the allegations set forth in Paragraph 94.

## COUNT II
### Promissory Estoppel, In the Alternative to Count I
(on behalf of Wigod and the "Pre-June 1, 2010 Class" and the Finlinsons and the "Post-June 1, 2010 Class")

95.     Wells Fargo incorporates by reference its above responses in full.

96.     Paragraph 96 sets forth plaintiffs' characterization of this action to which

no response is required.

97.     Wells Fargo denies the allegations set forth in Paragraph 97.

98.     Wells Fargo denies the allegations set forth in Paragraph 98.

99.     Wells Fargo denies the allegations set forth in Paragraph 99.

100.    Wells Fargo denies the allegations set forth in Paragraph 100.

101.    Wells Fargo denies the allegations set forth in Paragraph 101.

102.    Wells Fargo denies the allegations set forth in Paragraph 102.

103.    Wells Fargo denies the allegations set forth in Paragraph 103.

104.    Wells Fargo denies the allegations set forth in Paragraph 104.

## COUNT III
### Fraudulent Misrepresentation
(on behalf of Wigod and the "Pre-June 1, 2010 Class" and the Finlinsons and the "Post-June 1, 2010 Class")

105.    Wells Fargo incorporates by reference its above responses in full.

106.    Wells Fargo denies the allegations set forth in Paragraph 106.

107.    In response to the allegations set forth in Paragraph 107, Wells Fargo

states that the Finlinson TPP speaks for itself as to its content.  In further answering,

Wells Fargo denies that Wells Fargo made any misrepresentations to Sandra Finlinson.

108.    Wells Fargo denies the allegations set forth in Paragraph 108.

109.    Wells Fargo denies the allegations set forth in Paragraph 109.

110.    Wells Fargo denies the allegations set forth in Paragraph 110.

111.    Wells Fargo denies the allegations set forth in Paragraph 111.

112.    Wells Fargo denies the allegations set forth in Paragraph 112.

113.    Wells Fargo denies the allegations set forth in Paragraph 113.

## COUNT IV
### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act") 815 ILCS 505/1 *et seq.*
(on behalf of Plaintiff Wigod and the Illinois Subclass)

114.     Wells Fargo incorporates by reference its above responses in full.

115.    Wells Fargo denies the allegations set forth in Paragraph 115.

116.    Wells Fargo denies the allegations set forth in Paragraph 116.

117.    Wells Fargo denies the allegations set forth in Paragraph 117, including

subparagraphs (a) through (i).

118.    Wells Fargo denies the allegations set forth in Paragraph 118.

119.     Wells Fargo denies the allegations set forth in Paragraph 119.

## COUNT V
### Violation of the Indiana Deceptive Consumer Sales Act ("Consumer Sales Act")
### Ind. Code § 24-5-0.5-1 *et seq.*
### (on behalf of the Finlinsons and the Indiana Subclass)

120.     Wells Fargo incorporates by reference its above responses in full.

121.     Wells Fargo denies the allegations set forth in Paragraph 121.

122.     Wells Fargo denies the allegations set forth in Paragraph 122.

123.     Wells Fargo denies the allegations set forth in Paragraph 123.

124.     Wells Fargo denies the allegations set forth in Paragraph 124.

125.     Wells Fargo denies the allegations set forth in Paragraph 125.

126.     Wells Fargo denies the allegations set forth in Paragraph 126.

127.     Wells Fargo denies the allegations set forth in Paragraph 127.

128.     Wells Fargo denies the allegations set forth in Paragraph 128.

## PRAYER FOR RELIEF

Wells Fargo denies that plaintiffs are entitled to the requested relief, including subparagraphs (A) through (I).

## AFFIRMATIVE DEFENSES

### First Defense

Plaintiffs' claims are barred, in whole or in part, because they have not suffered any damages or ascertainable loss.

### Second Defense

Plaintiffs' claims are barred by plaintiffs' binding, voluntary agreement to the terms and conditions of their Mortgages and Notes.

### Third Defense

Plaintiffs' claims are barred by the voluntary payment doctrine.

### Fourth Defense

Plaintiffs' claims are barred by the applicable Statute of Frauds and/or the parol evidence rule.

### Fifth Defense

Plaintiffs' claims are barred by their failure to mitigate damages.

### Sixth Defense

Wells Fargo has, at all times relevant to this action, complied with all applicable rules, requirements, laws, and regulations, including as set forth in its Amended Servicer Participation Agreement and the program guidelines that comprise the Home Affordable Modification Program ("HAMP"), with respect to plaintiffs' mortgage loan.

### Seventh Defense

Count One is barred due to lack of consideration.

### Eighth Defense

Any alleged violation by Wells Fargo was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

### Ninth Defense

Plaintiffs' claims are barred by application of the doctrine of unclean hands because plaintiff has failed to pay her mortgage and is therefore not entitled to injunctive relief including specific performance or injunction of foreclosure.

### Tenth Defense

Plaintiffs' claims are barred because any damages incurred by plaintiff were a direct and proximate result of acts, omissions, negligence, or other culpable conduct of plaintiff or third parties not within the knowledge or control of Wells Fargo, for which acts or omissions Wells Fargo is not responsible.

### Eleventh Defense

Plaintiffs' claims are barred, in whole or in part, because any alleged acts or failures to act on the part of Wells Fargo were excused by the actions of plaintiff.

### Twelfth Defense

Plaintiffs' claims are barred by the doctrine of first in material breach.

### Thirteenth Defense

Plaintiffs' claims are preempted by federal law to the extent that they would require Wells Fargo to provide plaintiffs with permanent loan modifications that do not comply, or are inconsistent, with HAMP guidelines and directives.

### Fourteenth Defense

The Finlinsons' claims are barred by the Indiana Lenders Liability Act, Ind. Code § 26-2-9-4, because the Finlinsons fail to allege that the credit agreement at issue (1) is in a single writing; (2) sets forth all material terms and conditions of the credit agreement,

including the loan amount, rate of interest, duration, and security; and (3) is signed by the creditor and the debtor.

## Fifteenth Defense

The Finlinsons do not have a private right of action under the Indiana Deceptive Consumer Sales Act because the transaction at issue is "in real property," Ind. Code § 25-5-.05-4.

## Sixteenth Defense

Wells Fargo hereby gives notice that it intends to rely upon such other and further defenses as may become available during discovery proceedings in this case and hereby reserves its right to amend the Answer and assert such defenses.

**WHEREFORE**, defendant Wells Fargo Bank, N.A. respectfully requests that the Court:

i.      Enter judgment in Wells Fargo's favor on all counts of the Second

Amended Complaint;

ii.     Dismiss the Second Amended Complaint with prejudice;

iii.    Award Wells Fargo its costs and expenses, including attorneys' fees,

incurred in this action; and

iv.     Grant such other relief as the Court deems just and proper.

                                        WELLS FARGO BANK, N.A.

                                        By its attorneys,

                                        /s/ Irene C. Freidel
July 25, 2012                           Irene C. Freidel (N.D. Ill. Bar No.
                                        559051)
                                        David D. Christensen (*pro hac vice*)
                                        **K&L GATES** LLP
                                        State Street Financial Center
                                        One Lincoln Street
                                        Boston, MA 02111
                                        Telephone:  (617) 261-3100
                                        Facsimile:  (617) 261-3175
                                        irene.freidel@klgates.com
                                        david.christensen@klgates.com

                                        Michael J. Hayes (Bar No. 01161725)
                                        Jessica A. Baer (Bar No. 6295818)
                                        **K&L GATES** LLP
                                        70 W. Madison St., 3100
                                        Chicago, IL 60602
                                        Telephone: 312.372.1121
                                        Facsimile: 312.827.8000
                                        michael.hayes@klgates.com
                                        jessica.baer@klgates.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 25, 2012, I will electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system, which will then send a notice

of electronic filing to all counsel or parties of record on the attached service list.

*/s/ Irene C. Freidel*
Irene C. Freidel

## SERVICE LIST

### Case No. 1:10-cv-02348

Rafey S. Balabanian
rbalabanian@edelson.com
**Edelson McGuire, LLC**
350 North LaSalle Street, Suite 1300
Chicago, IL 60654

*Counsel for Plaintiffs*

Steven Lezell Woodrow
swoodrow@edelson.com
**Edelson McGuire, LLC**
350 North LaSalle Street, Suite 1300
Chicago, IL 60654

*Counsel for Plaintiffs*

Irina Slavina
islavina@edelson.com
**Edelson McGuire, LLC**
350 North LaSalle Street, Suite 1300
Chicago, IL 60654

*Counsel for Plaintiffs*