# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LORI WIGOD, on behalf of herself and all others similarly situated, | Case No: 1:10-cv-2348 |
| Plaintiff, | |
| v. | Hon. Elaine E. Bucklo |
| WELLS FARGO BANK, N.A. d/b/a WELLS FARGO HOME MORTGAGE, f/k/a WACHOVIA MORTGAGE, FSB, | |
| Defendant. | |

**DECLARATION OF ATTORNEY STEVEN WOODROW IN SUPPORT OF
MOTION FOR APPROVAL OF CLASS MEMBER INCENTIVE
AWARD AND REASONABLE ATTORNEYS' FEES**

In accordance with 28 U.S.C. § 1746, I hereby declare and state as follows:

1.      I am a citizen of the State of Colorado, am licensed to practice law in both the State of Illinois and the State of Colorado, and am over the age of eighteen. I make this declaration based upon personal knowledge unless otherwise indicated. If called upon to testify as to the matters stated herein, I could and would competently do so.

2.      I make this declaration in support of Plaintiff Wigod's Motion for Approval of Class Member Incentive Award and Reasonable Attorneys' Fees.

3.      I am a partner at the law firm of Edelson PC, which has been retained to represent the named Plaintiff in this matter, Lori Wigod. I, along with other members of my firm, have been appointed Class Counsel in this case.

**The Litigation and Settlement**

4.　　My firm litigated this highly-contentious case for nearly four-and-a-half years and, over that time, engaged in substantial motion practice and discovery, a successful appeal to the Seventh Circuit—obtaining an unprecedented and landmark decision establishing the rights and obligations of HAMP borrowers and servicers—three formal mediations, and, finally, the negotiation, drafting, and implementation of a comprehensive settlement agreement.

5.　　In the time since the federal government first introduced HAMP, thousands of formal (and informal) complaints, claims, and counterclaims have been lodged by homeowners, State Attorneys General, the Treasury Department, and others claiming that loan servicers have violated HAMP guidelines by engaging in fraudulent and abusive practices related to the HAMP including dragging out the process, frequently losing (or claiming to have lost) paperwork, improperly denying modifications, and ignoring their contractual obligations associated with trial plans and permanent modification agreements. As alleged in the case, due to servicer errors (i.e., mistakes and other errors by Wells Fargo and the other HAMP servicers), many borrowers lost their homes, paid more than they were required to, and spent months, if not longer, in a state of limbo—not knowing whether they would be able to save their homes or if the bank was actually going to follow the rules and provide them with loan modifications. Moreover, borrowers who've managed to avoid foreclosure have faced bankruptcy, have had to rely on more expensive financing alternatives like credit cards and other high-risk and unsecured forms of credit, and, in certain instances, have seen their credit ruined. Other HAMP borrowers missed out on receiving HAMP incentives, including principal reduction payments and the ability to modify secondary liens like home equity lines of credit, that they would've received had their HAMP servicers acted in accordance with the HAMP rules as embodied in their HAMP documents.

6.      In reversing the lower court's dismissal of Wigod's claims, the Seventh Circuit became the first federal circuit court of appeals to recognize borrower rights under HAMP. Since its issuance, according to Westlaw the *Wigod* decision has been examined, relied on, or cited more than 900 times, including more than 300 citations by courts across the nation upholding borrower HAMP rights. As a result of the decision, a greater number of borrowers have been able to achieve permanent modifications, and thus avoid foreclosure, from banks after successfully completing their trial plans, and litigants have had greater success receiving loan modifications. Thus, this litigation has significantly advanced the very public interest at the heart of the HAMP program.

7.      Apart from the appeal, in terms of motion practice, attorneys at my firm drafted, filed, and responded to over twenty substantive briefs, including, among others:

(1)     Sept. 2, 2010: Response in Opposition to Motion to Dismiss and Woodrow Decl. in Support (Dkts. 42-43);

(2)     Apr. 27, 2012: Motion for Leave to Serve Additional Interrogatories (Dkt. 74);

(3)     May 29, 2012: Motion to Strike Wells Fargo's Affirmative Defenses (Dkt. 81);

(4)     May 29, 2012: Motion For Leave to File Second Amended Complaint (Dkt 83) and the Second Amended Complaint (Dkt. 117);

(5)     May 29, 2012: Motion for Class Certification or Deferred Ruling (Dkt. 87);

(6)     June 13, 2012: Motion to Compel Rule 30(b)(6) Deposition (Dkt. 101);

(7)     June 21, 2012: Opposition to Motion for a Protective Order (Dkt. 105);

(8)     July 13, 2012: Response to Motion regarding Limited Bifurcation of Discovery (Dkt. 127) and the Expert Report of D. Frankenfeld in Support (Dkt. 129);

(9)     Aug. 15, 2012: Motion to Strike Affirmative Defenses (Dkt. 133);

(10)    Aug. 24, 2012: Motion to Compel Response to Document Requests (Dkt. 140);

(11)    Sept. 10, 2012: Motion to Overrule Defendant's Claims of Privilege (Dkt. 152);

(12)    Sept. 11, 2012: Reply in Support of Motion to Strike Affirmative Defenses (Dkt. 156);

(13)    Sept. 24, 2012: Reply in Support of Motion to Overrule Defendant's Claims of Privilege (Dkt. 159);

(14)    Sept. 28, 2012: Motion to Compel Further Answers to Interrogatories (Dkt. 161);

(15)    Oct. 8, 2012: Reply in Support of Motion to Compel Response to Document Requests (Dkt. 175);

(16)    Nov. 12, 2012: Reply in Support of Motion to Compel Further Answers to Interrogatories (Dkt. 191);

(17)    Nov. 29, 2012: Objections to and Motion to Modify Magistrate Judge Order (Dkt. 201);

(18)    Jan 9, 2013: Reply in Support of Objections to and Motion to Modify Magistrate Judge Order (Dkt. 219);

(19)    Feb. 20, 2013: Motion to Compel Disclosure of Documents and Enlarge Depositions (Dkt. 224);

(20)    May 1, 2013: Motion to Compel (Dkt. 236); and

(21)    The motion for preliminary approval of the class settlement reached in this matter (Dkt. 262) and the instant motion for a class member incentive award and attorneys' fees.

8.    In terms of discovery, the parties engaged in both class and merits discovery, and attorneys at my firm spent many hours propounding and responding to discovery requests, including propounding subpoenas to the Internal Revenue Service, the Office of the Comptroller of the Currency, Fannie Mae, Freddie Mac, and Promontory Financial, reviewing tens of thousands of

4

electronic documents spanning over 200,000 electronic pages[1], conducting three depositions—including depositions of the key personnel at Wachovia and other party depositions—with at least ten other depositions also noticed, consulting with Plaintiff's retained expert and interviewing additional proposed experts for trial purposes, conferring over two dozen times with defense counsel (often for over an hour), exchanging hundreds of emails and dozens of discovery letters, and engaging in discovery-related motion practice, including briefing and arguing several motions to compel and related motions.

9.     Beginning in March/April 2013, the Parties began discussing the potential for settlement. In terms of the Parties' concrete settlement efforts (i.e., in addition to the many arm's-length communications between counsel for Plaintiff and Wells Fargo exchanged by phone, email, and through in-person meetings), attorneys at Edelson PC drafted two formal mediation statements and appeared for three separate in-person mediation sessions.

10.    The Parties' first formal mediation took place on July 18, 2013 with third-party neutral the Honorable Morton J. Denlow (Ret.) of JAMS in Chicago, Illinois. The Parties drafted and exchanged mediation briefs prior to the mediation. This first mediation session allowed the Parties to candidly discuss the relative strengths and weaknesses of their respective positions and potential settlement frameworks. The first session additionally allowed the Parties to discuss issues related to the fluidity of residential mortgages and changes in borrower circumstances, Wells' efforts to modify Wachovia loans, and other issues. At the conclusion of the first session, and although a Settlement

---

[1] Reviewing these documents was especially complex given their highly-technical nature. HAMP underwent a multitude of changes—including the use of stated and verified trial period plans (Wachovia only used verified TPPs)—and edits to the HAMP directives and guidelines resulting in corresponding changes to Wells' HAMP policies over time. Wells developed, and we were required to learn, essentially a language specific to HAMP and its loan modification operations. The documents further included thousands of pages of emails, reports, internal and government audits, borrower loan files, process flow documents, policies and procedures, and documents establishing the protocol for the technical transfer of loans from Wachovia to Wells Fargo.

was not reached, the Parties agreed that Wells would gather specific data points with respect to each of the Settlement Class Member's loans. Following that initial session, and over the course of the next few months, Wells Fargo gathered the necessary data regarding the composition of the proposed Settlement Class, and the Parties continued their discussions.

11.     The Parties' next in-person mediation took place on October 31, 2013 at the law offices of Edelson PC in Chicago. This session required extensive preparation in light of the data provided by Wells Fargo regarding the agreed-upon data points. With the help of Judge Denlow, the Parties continued to explore and negotiate their settlement positions, with different offers and frameworks being proposed and evaluated by each side. At the end of a full day, the Parties did not reach a settlement agreement but made significant progress towards resolving the matter and agreed to continue their discussions in the hopes of reaching an agreement in principal with respect to the relief to be made available to the Class.

12.     In the weeks following the second mediation session the Parties exchanged several letters with respect to various proposed settlement terms. Throughout the settlement process, the Parties also participated in dozens of telephonic conferences, often with Judge Denlow's involvement. Eventually, in Mach 2014, the Parties reached an agreement in principal with respect to the relief to be made available with respect to the three Class groups. Only after that was accomplished did the Parties negotiate attorneys' fees and a Class member incentive award to Wigod.

13.     On March 25, 2014, counsel for the Parties met for a third mediation session with Judge Denlow at JAMS' offices in Chicago. The Parties spent a full day negotiating the issues of a Class Representative incentive award and reasonable attorneys' fees. Despite their best efforts, the Parties were unable to reach an agreement with respect to these outstanding issues.

14.      Following the third mediation session, Plaintiff made clear that she was prepared to proceed with the litigation. At the same time, counsel for the Parties continued to negotiate the remaining issues. Plaintiff's expressed preference was to have the fees decided by the Court or through binding arbitration. Wells Fargo, however, wanted the certainty of an agreed-upon amount.

15.      As a result of those continued efforts, the Parties approached Judge Denlow regarding their impasse. After acting as a go-between for the Parties, Judge Denlow ultimately made a mediator's proposal with respect to attorneys' fees and expenses, which both Parties thereafter accepted. Following their agreement with respect to all terms, the Parties worked to finalize the drafting of all settlement papers including the Settlement Agreement, the notices, the claim forms, other special notices, and all other settlement-related documents.

16.      Plaintiff Wigod thereafter moved for preliminary approval, which this Court granted on June 27, 2014. (Dkt. 269.) In the time since the Settlement was preliminarily approved, the Parties have successfully implemented the Court-approved Notice Plan through the Settlement Administrator, Epiq Systems ("Epiq"), including direct notice—mailed to every Class Member— along with the execution of a comprehensive Settlement Website. The Settlement Administrator continues to receive claims from Class Members on a weekly basis—submitted online through the Settlement Website and by mail—and fields phone calls and e-mails from Class Members as well. To date, Epiq has received approximately 191 phone calls from Class Members, and the Settlement Website has had 9,334 page views (and over 15,116 hits). Also, the claims rate as of the time this motion for an incentive award and attorneys' fees is being filed is 31.49%, as 263 out of a total 835 Class Members have filed claims.

17.     My firm likewise set up phone lines to handle direct incoming calls from Class Members, and has fielded calls from Class Members asking specific questions about the settlement or requesting assistance in filing a claim (e.g., asking for a mailed copy of the claim form, asking how to file a claim). On top of this, our firm established a task force comprised of three attorneys and three law clerks whose specific job was to call every member of the Settlement Class and discuss both the nature of the litigation and Settlement and the filing of the Class Members' claim forms. Every Class Member was called at least once, and most were called on several occasions. It is a testament to the extent and success of this effort that the claims rate, even with three weeks remaining prior to the expiration of the Claims Deadline, is already an impressive 31.49%.

18.     Further, with the October 3, 2014 deadline to comment upon or request exclusion from the Settlement approximately two weeks away, not a single Class Member has objected and only one has requested to be excluded.

**Class Counsel's Experience and Work in this Litigation**

19.     Class Counsel have a proven record of effectively and successfully prosecuting complex nationwide consumer class actions, experience that we brought to the prosecution of this case.

20.     My firm has extensive experience in prosecuting class actions and other complex litigation of similar nature, scope, and complexity, and regularly engages in major complex consumer banking class action lawsuits—including cases of first impression related to first and second mortgage loans—and have been appointed class counsel in these efforts. *See, e.g., Schulken v. Washington Mut. Bank*, No. 09-cv-02708, 2012 WL 28099, at *12 (N.D. Cal. Jan. 5, 2012) ("Moreover, the Court has reviewed the declaration of Steven Woodrow and the accompanying firm resume and finds that the firm has demonstrated experience in handling

8

complex consumer class actions in the applicable area of law."); *JPMorgan Chase Bank, N.A. Home Equity Line of Credit Litig.*, No. 10-cv-3647, Dkt 125 (N.D. Ill. Dec. 10, 2012) (Edelson attorneys appointed interim co-lead counsel and settlement class counsel in MDL litigation); *In re Citibank HELOC Reduction Litig.*, No. 09-cv-0350, Dkt. 96 (N.D. Cal. May 18, 2010) (same in consolidated Citibank HELOC litigation). (*See also* Firm Resume of Edelson PC, a copy of which is attached as Exhibit A.)

21.     At the time of filing this case, I was aware that my firm would spend thousands of hours of attorney time in contested litigation involving highly complex issues of first impression including calculations and rules described in ever-changing HAMP directives, against one of the world's premier law firms. HAMP had only been established a year before the case was filed and as of that time nearly every HAMP case had been dismissed. We were acutely aware that we had no guarantee of success.

22.     I have reviewed my firm's retainer agreement with Ms. Wigod. The retainer contains a contingency fee arrangement whereby we would receive up to one-third of the settlement fund plus the costs of the suit and a multiplier of at least three with respect to any lodestar. I believe that my firm assumed a significant risk of non-payment in initiating and prosecuting this case given the novelty of legal issues involved and the vigorous defense that Defendant and its highly skilled counsel put forth. In performing the work required in this case, the lawyers involved had to forgo several others opportunities.

23.     In setting the rates for counsel and law clerks, I know that these rates correlate to their respective experience and are at or below the average rates of attorneys with similar backgrounds and experience practicing in the Chicago legal market for complex class action litigation. The rates listed in the chart below are the same rates we use for hourly clients, which

make up a portion of our firm's revenues. For instance, we are currently representing a company in a complex commercial dispute with Groupon, Inc. and that client's retainer includes the same hourly rates sought here. Additionally, federal courts have approved our current hourly billing rates in other class action litigation against banks and other defendants. *See, e.g., In re JPMorgan Chase Bank Home Equity Line of Credit Litig.,* Master Docket Case No. 10-cv-3647 (N.D. Ill. March 8, 2013) (approving requested fees based in part upon lodestar); *Theis v. AVG Technologies USA, Inc*., No. 12-cv-10920, Dkt. 116 (D. Mass. May 6, 2014) (finding Edelson PC's current hourly rates reasonable by granting their full lodestar request); *Gross v. Symantec Corp.*, No. 3:12-cv-00154, Dkt. 88 (N.D. Cal. March 21, 2014) (finding Edelson PC's current "hourly rates are reasonable and have previously been approved by other courts throughout the country" in awarding fees based on the lodestar method); *Robles v. Lucky Brand Dungarees, Inc. et al*, No. 3:10-cv-04846, Dkt. 105 (N.D. Cal. May 10, 2013) (finding Edelson PC's then-current hourly rates reasonable in a lodestar "cross-check" analysis); (*see also* Exhibit A).

24.    My firm's billable rates and a general outline of the hours of the primary attorneys and law clerks who worked on this matter are incorporated in the chart below. In my opinion, the expenditure of time by the attorneys and law clerks that worked on this case was reasonable and necessary. Our firm's practice generally, which we followed in this case, is to use a collaborative effort in reviewing discovery as well as the drafting of all major court filings, exhibits, and other important documents. That said, although several lawyers were involved in the litigation of this matter, each made a conscious effort to minimize the duplication of work and adjusted for time deemed to be unnecessary or duplicative. In fact, attorneys who did not bill at least ten hours on the case have been omitted. As such, a handful of attorneys who contributed to the litigation have had their time discounted from the lodestar calculation. By taking this case on a contingency

basis and not being paid by the hour, we had an incentive to conduct our efforts efficiently. So too, being responsible for advancing all expenses, we had an incentive not to expend funds unnecessarily.

25.     It is the firm policy of Edelson PC that attorneys and student law clerks/summer associates are responsible for keeping track of their billable time by *at least* the tenth of the hour through billing management software program known as "FreshBooks," and an older billing management software program known as "Big Time" that was in use when the case was initiated. I have reviewed the reports generated by this software, which are presently 159 pages in length using approximately eight-point font and may be produced for inspection upon request.

26.     Based on reports identified in Paragraph 25, over the past four-and-a-half years, members of my firm have spent over 6,975.76 hours representing the Plaintiffs and the certified Class without compensation.

27.     Based on reports identified in Paragraph 25, my firm's baseline lodestar equals **$3,314,018.00** and represents the total work we undertook since the inception of this case, and will continue to undertake, and is accurately presented in the following chart:

| Attorney Name | Years Experience | Rate | Hours | Lodestar |
|---|---|---|---|---|
| Steven Woodrow (Partner) | 9 | $570 | 3,417.60 | 1,948,032.00 |
| Rafey Balabanian (Partner) | 9 | $570 | 416.7 | 237,519.00 |
| Jay Edelson (Managing Partner) | 18 | $685 | 236.4 | 161,934.00 |
| Megan Lindsey (Associate) | 3 | $350 | 1,360.51 | 476,178.50 |
| Alicia Hwang (Associate) | 2 | $335 | 78.85 | 26,414.75 |
| Courtney Booth (Associate) | 1 | $295 | 22.45 | 6,622.75 |
| David Mindell (Associate) | 2 | $335 | 18.8 | 6,298.00 |

| | | | | |
|---|---|---|---|---|
| Amir Missaghi (Associate) | 1 | $295 | 188.55 | 55,622.25 |
| Law Clerks | Clerks | $215 | 244.2 | 52,503.00 |
| | | | | |
| **Formerly with firm** | | | | |
| Jack Yamin (Associate) | 1 | $295 | 54.4 | 16,048.00 |
| Irina Slavina (Associate) | 3 | $345 | 905.6 | 312,432.00 |
| Kirt Gallatin (Associate) | 1 | $295 | 15.1 | 4,454.50 |
| Steven Teppler (Former Partner) | 32 | $600 | 16.6 | 9,960.00 |
| **BASE LODESTAR** | | | 6,975.76 | $3,314,018.75 |

28.     Based on my personal experience with this case and a review of our electronic case files, the tasks the above-listed attorneys were required to perform in order to achieve the beneficial results of the Settlement include:

- extensive pre-suit investigation of Plaintiff's claims and the claims of the Class, including dissecting and studying the initial HAMP directives and changes;

- successfully prosecuting a risky and uncertain appeal to the Seventh Circuit Court of Appeals and obtaining a landmark decision;

- briefing dozens of substantive motions, including those discussed *supra*, ¶ 7;

- engaging in substantial discovery practice, including those efforts discussed *supra*, ¶ 8;

- interviewing prospective expert witness for various stages of the case and working with our retained expert, who prepared expert reports in support of our Response to Wells Fargo's Motion regarding Limited Bifurcation of Discovery (Dkt. 127), Plaintiff's first mediation statement, and Plaintiff's motion for attorneys' fees;

12

- preparing for and attending twenty appearances before the Court;

- drafting two mediation statements, and appearing for three mediations, as discussed *supra*, ¶¶ 9-14; and

- extensive arm's-length settlement negotiations that culminated in a comprehensive settlement agreement, drafting the Settlement agreement, including the class notices and several declarations, and executing the agreed notice plan with the Settlement Administrator, as discussed *supra*, ¶¶ 9-18.

29.     The hours set forth above admittedly include work done with respect to the Finlinsons' claims, which were added to the case in 2012 following the appeal. Based upon my analysis of the case and work performed, much of the work done with regard to the Finlinsons is interrelated to Wigod's claims. Class Counsel therefore believe it is reasonable to discount the lodestar by 10% to account for hours spent litigating the Finlinsons' class claims, resulting in an adjusted base lodestar of $2,982,616.88.

30.     Based on our experience, Class Counsel anticipate that substantial additional attorneys' time will be required to be performed through final approval and administration of the settlement, should it be approved by the Court. Attorneys at my firm still must draft a final approval motion, prepare for and attend the final fairness hearing, contend with any potential objectors, and handle various issues related to claims administration. This is particularly so in this case, where the Settlement requires that Class Members in Groups 1 and 2 who apply for loan modifications must submit documents and then evaluate Wells Fargo's decisions on their modification applications, including any denial or issues with the terms of the offer. Attorneys' time will therefore be expended assisting borrowers with gathering their documents, transmitting them to Wells Fargo, and analyzing Wells Fargo's decisions. Given the right of Class Members

to appeal Wells Fargo's decisions, even greater amounts of time will be required to assist Class Members with that aspect of the process as well. We project at least an additional $250,000 of such time.

31.     In addition, our law firm, Edelson PC, has incurred $60,976.68 in reimbursable expenses, which include the costs of travel, meals, lodging, postage/ FedEx, courier service, copying fees for courtesy copies, mediation fees, *pro hac vice* fees, filing fees, subpoena fees, and expert witness fees. A report detailing these expenses, which do not include Mr. Frankenfeld's most recent invoice (approximately $5,000) or the costs of travel associated with the final fairness hearing ($1,000), was generated from our Freshbooks program and older Big Time program that was still in use when the case was initiated. A copy of these reports is attached as Exhibit B, and receipts can be compiled and produced if required. I have reviewed the expenses, and any items I deemed unnecessary or duplicative were investigated and, where unnecessarily included, removed.

**Plaintiff Wigod's Involvement**

32.     As a final matter, it is my opinion that the Class benefitted significantly from Plaintiff Wigod's involvement as the Class Representative. Were it not for her individual effort, the substantial benefit to the Class afforded under this Settlement Agreement could not have been achieved. It is Class Counsel's view that the incentive award to Plaintiff as the Class Representative in this case, a loan modification, is entirely reasonable.

33.     In particular, without any expectation that she might recover such an award, or anything at all, Plaintiff Wigod devoted her own time and effort to pursuing claims on behalf of the Class and exhibited a willingness to participate in and undertake the responsibilities and risks attendant with bringing such an action—including taking time off of work and away from family.

Indeed, before even filing the lawsuit, Wigod learned—through persistent phone calls to Wells Fargo over the course of several months—that Wells had reevaluated her eligibility HAMP eligibility and had made several errors in the process.

34.    Also, by coming forward to assert her rights under a government benefit program concerning her home, Ms. Wigod was required to divulge sensitive information about her personal finances and financial situation. The difficulty of doing so was compounded by the fact that she works in the banking industry.

35.    Even with these risks, intrusions, and inconveniences, at all times, Ms. Wigod willingly assisted Class Counsel with the investigation of her claims and provided our firm with valuable information regarding her experience with Wells Fargo.

36.    Ms. Wigod consulted with us throughout the case—including over the phone, by email, and in person—and reviewed numerous pages of documents, including filings, discovery requests, transcripts, and Settlement papers.

37.    Ms. Wigod's dedication to the Class is demonstrated perhaps most acutely by her decision-making when Wells attempted to extend her a lucrative loan modification. Had Wigod simply accepted, it could have resulted in her being rendered unable to represent borrowers who still hadn't received any loan modification from Wells, a fact that the Court recognized was possible at a hearing in February 2013. Rather than accept the offer and enrich herself personally, Wigod remained steadfast and convinced Wells Fargo to come to the negotiating table and agree to a Settlement that provided the opportunity to extend loan modification offers to all eligible Class Members.

38.    Simply put, Ms. Wigod's active participation in the litigation was instrumental in ensuring that the Class ultimately obtained the substantial benefits represented by the Parties'

Settlement Agreement. In short, Wigod has demonstrated her willingness to place the needs of the Class ahead of her own and the Class Members have plainly benefitted from her efforts.

*           *           *

I declare under penalty of perjury that the foregoing is true and correct. Executed this 22nd day of September 2014 at Denver, Colorado.

Steven L. Woodrow

16

# Exhibit A

# EDELSON PC FIRM RESUME

EDELSON PC is a plaintiff's class action and commercial litigation firm with attorneys in Illinois, Colorado, and California.

Our attorneys have been recognized as leaders in these fields by state and federal legislatures, national and international media groups, the courts, and our peers. Our reputation for leadership in class action litigation has led state and federal courts to appoint us lead counsel in many high-profile class actions, including privacy suits against comScore, Netflix, Time, Microsoft, and Facebook; numerous Telephone Consumer Protection Act ("TCPA") cases against companies such as Google, Twentieth Century Fox, and Simon & Schuster; class actions against Citibank, Wells Fargo, and JP Morgan Chase related to reductions in home equity lines of credit; fraudulent marketing cases against software companies such as Symantec; mobile content class actions against all major cellular telephone carriers; the Thomas the Tank Engine lead paint class actions; and the tainted pet food litigation. We have testified before the United States Senate on class action issues and have repeatedly been asked to work on federal and state legislation involving cellular telephony, privacy, and other issues. Our attorneys have appeared on dozens of national and international television and radio programs to discuss our cases and class action and consumer protection issues more generally. Our attorneys speak regularly at seminars on consumer protection and class action issues, lecture on class actions at law schools, and are asked to serve as testifying experts in cases involving class action and consumer issues.

## PLAINTIFFS' CLASS AND MASS ACTION PRACTICE GROUP

EDELSON PC is a leader in plaintiffs' class and mass action litigation, with a particular emphasis on consumer technology class actions, and has been called a "class action 'super firm.'" (Decalogue Society of Lawyers, Spring 2010.) As recognized by federal courts nationwide, our firm has an "extensive histor[y] of experience in complex class action litigation, and [is a] well-respected law firm[] in the plaintiffs' class action bar." *In re Pet Food Prod. Liab. Litig.*, MDL Dkt. No. 1850, No. 07-2867 (NLH) (D.N.J. Nov. 18, 2008). A leading arbitrator concurred, finding that Edelson was "extraordinarily experienced" in "consumer protection class actions generally," including "technology consumer protection class action[s]."

In appointing our firm interim co-lead in one of the most high profile cases in the country, a federal court pointed to our ability to be "vigorous advocates, constructive problem-solvers, and civil with their adversaries." *In Re JPMorgan Chase Home Equity Line of Credit Litig.*, No. 10 C 3647 (N.D. Ill, July 16, 2010). After hard fought litigation, that case settled, resulting in the reinstatement of between $3.2 billion and $4.7 billion in home credit lines.

We have been specifically recognized as "pioneers in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue." *In re Facebook Privacy Litig.*, No. C 10-02389, Dkt. 69 at 5 (N.D. Cal. Dec. 10, 2010) (order appointing the firm interim co-lead of privacy class action); *see also In re Netflix Privacy Litig.*, No. 11-cv-00379, Dkt. 59 at 5 (N.D. Cal. Aug. 12, 2011) (appointing us the sole lead counsel due, in part, to our "significant and particularly specialized expertise in electronic privacy litigation and class actions[.]").

Similarly, as recognized by a recent federal court, our firm has "pioneered the application of the TCPA to text-messaging technology, litigating some of the largest consumer class actions in the country on this issue." *Ellison v Steve Madden, Ltd.*, No. 11-cv-5935 PSG, Dkt. 73 at 9 (C.D. Cal. May 7, 2013).

We have several sub-specialties within our plaintiffs' class action practice:

## PRIVACY/DATA LOSS

### *Data Loss/Unauthorized Disclosure of Data*

We have litigated numerous class actions involving issues of first impression against Facebook, Apple, Netflix, Sony, Redbox, Pandora, Sears, Storm 8, Google, T-Mobile, Microsoft, and others involving failures to protect customers' private information, security breaches, and unauthorized sharing of personal information with third parties. Representative settlements and ongoing cases include:

- *Dunstan v. comScore, Inc.*, No. 11-cv-5807 (N.D. Ill.): Lead counsel in certified class action accusing internet analytics company of improper data collection practices. The court has preliminarily approved a $14 million settlement.

- *Resnick v. Avmed*, No. 10-cv-24513 (S.D. Fla.): Lead counsel in data breach case filed against health insurance company. Obtained landmark appellate decision endorsing common law unjust enrichment theory, irrespective of whether identity theft occurred. Case also resulted in the first class action settlement in the country to provide data breach victims with monetary payments irrespective of identity theft.

- *In re Netflix Privacy Litigation*, No. 11-cv-00379 (N.D. Cal.): Sole lead counsel in suit alleging that defendant violated the Video Privacy Protection Act by illegally retaining customer viewing information. Case resulted in a $9 million dollar *cy pres* settlement that has been finally approved (pending appeal).

- *Halaburda v. Bauer Publishing Co.*, No. 12-cv-12831 (E.D. Mich.); *Grenke v. Hearst Communications, Inc.*, No. 12-cv-14221 (E.D. Mich.); *Fox v. Time, Inc.*, No. 12-cv-14390 (E.D. Mich.): Consolidated actions brought under Michigan's Video Rental Privacy Act, alleging unlawful disclosure of subscribers' personal information. In a ground-breaking decision, the court denied three motions to dismiss finding that the magazine publishers were covered by the act and that the illegal sale of personal information triggers an automatic $5,000 award to each aggrieved consumer.

- *Standiford v. Palm*, No. 09-cv-05719-LHK (N.D. Cal.): Sole lead counsel in data loss class action, resulting in $640,000 settlement.

- *In re Zynga Privacy Litigation*, No. 10-cv-04680 (N.D. Cal.): Appointed co-lead counsel in suit against gaming application designer for the alleged unlawful disclosure of its users' personally identifiable information to advertisers and other third parties.

- *In re Facebook Privacy Litigation*, No. 10-cv-02389 (N.D. Cal.): Appointed co-lead counsel in suit alleging that Facebook unlawfully shared its users' sensitive personally identifiable information with Facebook's advertising partners.

- *In re Sidekick Litigation*, No. C 09-04854-JW (N.D. Cal.): Co-lead counsel in cloud computing data loss case against T-Mobile and Microsoft. Settlement provided the class with potential settlement benefits valued at over $12 million.

- *Desantis v. Sears*, No. 08 CH 00448 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in injunctive settlement alleging national retailer allowed purchase information to be publicly available through the internet.

### *Telephone Consumer Protection Act*

Edelson has been at the forefront of TCPA litigation for over six years, having secured the groundbreaking *Satterfield* ruling in the Ninth Circuit applying the TCPA to text messages. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009). In addition to numerous settlements totaling over $100 million in relief to consumers, we have over two dozen putative TCPA class actions pending against companies including Santander Consumer USA, Inc., Walgreen Co., Path, Inc., Nuance Communications, Inc., Stonebridge Life Insurance, Inc., GEICO, DirectBuy, Inc., and RCI, Inc. Representative settlements and ongoing cases include:

- *Rojas v CEC*, No. 10-cv-05260 (N.D. Ill.): Lead counsel in text spam class action that settled for $19,999,400.

- *In re Jiffy Lube Int'l Text Spam Litigation*, No. 11-md-2261, 2012 WL 762888 (S.D. Cal.): Co-lead counsel in $35 million text spam settlement.

- *Ellison v Steve Madden, Ltd.*, No. cv 11-5935 PSG (C.D. Cal.): Lead counsel in $10 million text spam settlement.

- *Kramer v. B2Mobile*, No. 0-cv-02722-CW (N.D. Cal.): Lead counsel in $12.2 million text spam settlement.

- *Pimental v. Google, Inc.*, No. 11-cv-02585 (N.D. Cal.): Lead counsel in class action alleging that defendant co-opted group text messaging lists to send unsolicited text messages. $6 million settlement provides class members with an unprecedented $500 recovery.

- *Robles v. Lucky Brand Dungarees, Inc.*, No. 10-cv-04846 (N.D. Cal.): Lead counsel in $10 million text spam settlement.

- *Miller v. Red Bull*, No. 12-CV-04961 (N.D. Ill.): Lead counsel in $6 million text spam settlement.

- *Woodman v. ADP Dealer Services*, No. 2013 CH 10169 (Cook County, IL): Lead counsel in $7.5 million text spam settlement.

- *Lockett v. Mogreet, Inc.*, No 2013 CH 21352 (Cook County, IL): Lead counsel in $16 million text spam settlement.

- *Lozano v. 20th Century Fox*, No. 09-cv-05344 (N.D. Ill.): Lead counsel in class action alleging that defendants violated federal law by sending unsolicited text messages to cellular telephones of consumers. Case settled for $16 million.

- *Satterfield v. Simon & Schuster*, No. C 06 2893 CW (N.D. Cal.): Co-lead counsel in in $10 million text spam settlement.

- *Weinstein v. Airit2me, Inc.*, No. 06 C 0484 (N.D. Ill): Co-lead counsel in $7 million text spam settlement.

## CONSUMER TECHNOLOGY

### *Fraudulent Software*

In addition to the settlements listed below, EDELSON PC has consumer fraud cases pending in courts nationwide against companies such as McAfee, Inc., Avanquest North America Inc., PC Cleaner, AVG, iolo Technologies, LLC, among others. Representative settlements include:

- *Drymon v. Cyberdefender*, No. 11 CH 16779 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $9.75 million.

- *Gross v. Symantec Corp.*, No. 12-cv-00154-CRB (N.D. Cal.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $11 million.

- *LaGarde v. Support.com, Inc.*, No. 12-cv-00609-JSC (N.D. Cal.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $8.59 million.

- *Ledet v. Ascentive LLC*, No. 11-CV-294-PBT (E.D. Pa.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $9.6 million.

- *Webb v. Cleverbridge, Inc.*, No. 1:11-cv-04141 (N.D. Ill.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $5.5 million.

### *Video Games*

EDELSON PC has litigated cases video-game related cases against Activision Blizzard Inc., Electronic Arts, Inc., Google, and Zenimax Media, Inc., and has active litigation pending, including:

- *Locke v. Sega of America*, No. 13-cv-01962-MEJ (N.D. Cal.): Pending putative class action alleging that Sega of America and Gearbox Software released video game trailer that falsely represented the actual content of the game.

## MORTGAGE & BANKING

EDELSON PC has been at the forefront of class action litigation arising in the aftermath of the federal bailouts of the banks. Our suits include claims that certain banks unlawfully suspended home credit lines based on pre-textual reasons, and that certain banks have failed to honor loan modification programs. We achieved the first federal appellate decision in the country recognizing the right of borrowers to enforce HAMP trial plans under state law. The court noted that "[p]rompt resolution of this matter is necessary not only for the good of the litigants but for the good of the Country." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 586 (7th Cir. 2012) (Ripple, J., concurring). Our settlements have restored billions of dollars in home credit lines to people throughout the country. Representative cases and settlements include:

- *In re JP Morgan Chase Bank Home Equity Line of Credit Litigation*, No. 10-cv-3647 (N.D. Ill.): Court appointed interim co-lead counsel in nationwide putative class action alleging illegal suspensions of home credit lines. Settlement restored between $3.2 billion and $4.7 billion in credit to the class.

- *Hamilton v. Wells Fargo Bank, N.A.*, No. 09-cv-04152-CW (N.D. Cal.): Lead counsel in class actions challenging Wells Fargo's suspensions of home equity lines of credit. Nationwide settlement restores access to over

$1 billion in credit and provides industry leading service enhancements and injunctive relief.

- *In re Citibank HELOC Reduction Litigation*, No. 09-cv-0350-MMC (N.D. Cal.): Lead counsel in class actions challenging Citibank's suspensions of home equity lines of credit. The settlement restored up to $653,920,000 worth of credit to affected borrowers.

- *Wigod v. Wells Fargo*, No. 10-cv-2348 (N.D. Ill.): In ongoing putative class action, obtained first appellate decision in the country recognizing the right of private litigants to sue to enforce HAMP trial plans.

## GENERAL CONSUMER PROTECTION CLASS ACTIONS

We have successfully prosecuted countless class actions against computer software companies, technology companies, health clubs, dating agencies, phone companies, debt collectors, and other businesses on behalf of consumers. In addition to the settlements listed below, EDELSON PC have litigated consumer fraud cases in courts nationwide against companies such as Motorola Mobility, Stonebridge Benefit Services, J.C. Penney, Sempris LLC, and Plimus, LLC. Representative settlements include:

### Mobile Content

We have prosecuted over 100 cases involving mobile content, settling numerous nationwide class actions, including against industry leader AT&T Mobility, collectively worth over a hundred million dollars.

- *McFerren v. AT&T Mobility, LLC*, No. 08-CV-151322 (Fulton Cnty. Super. Ct., Ga.): Lead counsel class action settlement involving 16 related cases against largest wireless service provider in the nation. "No cap" settlement provided virtually full refunds to a nationwide class of consumers who alleged that unauthorized charges for mobile content were placed on their cell phone bills.

- *Paluzzi v. Cellco Partnership*, No. 07 CH 37213 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in class action settlement involving 27 related cases alleging unauthorized mobile content charges. Case settled for $36 million.

- *Gray v. Mobile Messenger Americas, Inc.*, No. 08-CV-61089 (S.D. Fla.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills. Case settled for $12 million.

- *Parone v. m-Qube, Inc.*, No. 08 CH 15834 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in class action settlement involving over 2 dozen cases alleging

the imposition of unauthorized mobile content charges. Case settled for $12.254 million.

- *Williams v. Motricity, Inc.*, No. 09 CH 19089 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in class action settlement involving 24 cases alleging the imposition of unauthorized mobile content charges. Case settled for $9 million.

- *VanDyke v. Media Breakaway, LLC*, No. 08 CV 22131 (S.D. Fla.): Lead counsel in class action settlement alleging unauthorized mobile content charges. Case settled for $7.6 million.

- *Gresham v. Cellco Partnership*, No. BC 387729 (L.A. Super. Ct., Cal.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills. Settlement provided class members with full refunds.

- *Abrams v. Facebook, Inc.*, No. 07-05378 (N.D. Cal.): Lead counsel in injunctive settlement concerning the transmission of allegedly unauthorized mobile content.

### Deceptive Marketing

- *Van Tassell v. UMG*, No. 1:10-cv-2675 (N.D. Ill.): Lead counsel in negative option marketing class action. Case settled for $2.85 million.

- *McK Sales Inc. v. Discover Bank*, No. 10-cv-02964 (N.D. Ill.): Lead counsel in class action alleging deceptive marketing aimed at small businesses. Case settled for $6 million.

- *Farrell v. OpenTable*, No 11-cv-01785-si (N.D. Cal.): Lead counsel in gift certificate expiration case. Settlement netted class over $3 million in benefits.

- *Ducharme v. Lexington Law*, No. 10-cv-2763-crb (N.D. Cal): Lead counsel in CROA class action. Settlement resulted in over $6 million of benefits to the class.

- *Pulcini v. Bally Total Fitness Corp.*, No. 05 CH 10649 (Cir. Ct. Cook Cnty., Ill.): Co-lead counsel in four class action lawsuits brought against two health clubs and three debt collection companies. A global settlement provided the class with over $40 million in benefits, including cash payments, debt relief, and free health club services.

- *Kozubik v. Capital Fitness, Inc.*, 04 CH 627 (Cir. Ct. Cook Cnty., Ill.): Co-lead counsel in state-wide suit against a leading health club chain, which settled in 2004, providing the over 150,000 class members with between

$11 million and $14 million in benefits, consisting of cash refunds, full debt relief, and months of free health club membership.

- *Kim v. Riscuity*, No. 06 C 01585 (N.D. Ill.): Co-lead counsel in suit against a debt collection company accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with full debt relief and return of all money collected.

- *Jones v. TrueLogic Financial Corp.*, No. 05 C 5937 (N.D. Ill.): Co-lead counsel in suit against two debt collectors accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with approximately $2 million in debt relief.

- *Fertelmeyster v. Match.com*, No. 02 CH 11534 (Cir. Ct. Cook Cnty., Ill.): Co-lead counsel in a state-wide class action suit brought under Illinois consumer protection statutes. The settlement provided the class with a collective award with a face value in excess of $3 million.

- *Cioe v. Yahoo!, Inc.*, No. 02 CH 21458 (Cir. Ct. Cook Cnty., Ill.): Co-lead counsel in a state-wide class action suit brought under state consumer protection statutes. The settlement provided the class with a collective award with a face value between $1.6 million and $4.8 million.

- *Zurakov v. Register.com,* No. 01-600703 (N.Y. Sup. Ct., N.Y. Cnty.): Co-lead counsel in a class action brought on behalf of an international class of over one million members against Register.com for its allegedly deceptive practices in advertising on "coming soon" pages of newly registered Internet domain names. Settlement required Register.com to fully disclose its practices and provided the class with relief valued in excess of $17 million.

## PRODUCTS LIABILITY CLASS ACTIONS

We have been appointed lead counsel in state and federal products liability class settlements, including a $30 million settlement resolving the "Thomas the Tank Engine" lead paint recall cases and a $32 million settlement involving the largest pet food recall in the history of the United States and Canada. Representative settlements include:

- *Barrett v. RC2 Corp.*, No. 07 CH 20924 (Cir. Ct. Cook Cnty., Ill.): Co-lead counsel in lead paint recall case involving Thomas the Tank toy trains. Settlement is valued at over $30 million and provided class with full cash refunds and reimbursement of certain costs related to blood testing.

- *In re Pet Food Products Liability Litigation*, No. 07-2867 (D.N.J.): Part of mediation team in class action involving largest pet food recall in United

States history. Settlement provided $24 million common fund and $8 million in charge backs.

## INSURANCE CLASS ACTIONS

We have prosecuted and settled multi-million dollar suits against J.C. Penney Life Insurance for allegedly illegally denying life insurance benefits under an unenforceable policy exclusion and against a Wisconsin insurance company for terminating the health insurance policies of groups of self-insureds. Representative settlements include:

- *Holloway v. J.C. Penney*, No. 97 C 4555, (N.D. Ill.): One of the primary attorneys in a multi-state class action suit alleging that the defendant illegally denied life insurance benefits to the class. The case settled in or around December of 2000, resulting in a multi-million dollar cash award to the class.

- *Ramlow v. Family Health Plan* (Wisc. Cir. Ct., WI): Co-lead counsel in a class action suit challenging defendant's termination of health insurance to groups of self-insureds. The plaintiff won a temporary injunction, which was sustained on appeal, prohibiting such termination and eventually settled the case ensuring that each class member would remain insured.

## MASS/CLASS TORT CASES

Our attorneys were part of a team of lawyers representing a group of public housing residents in a suit based upon contamination related injuries, a group of employees exposed to second-hand smoke on a riverboat casino, and a class of individuals suing a hospital and national association of blood banks for failure to warn of risks related to blood transfusions. Representative settlements include:

- *Aaron v. Chicago Housing Authority*, No. 99 L 11738, (Cir. Ct. Cook Cnty., Ill.): Part of team representing a group of public housing residents bringing suit over contamination-related injuries. Case settled on a mass basis for over $10 million.

- *Januszewski v. Horseshoe Hammond*, No. 2:00CV352JM (N.D. Ind.): Part of team of attorneys in mass suit alleging that defendant riverboat casino caused injuries to its employees arising from exposure to second-hand smoke.

The firm's cases regularly receive attention from local, national, and international media. Our cases and attorneys have been reported in the Chicago Tribune, USA Today, the Wall Street Journal, the New York Times, the LA Times, by the Reuters and UPI news services, and BBC International. Our attorneys have appeared on numerous national television and radio programs, including ABC World News, CNN, Fox News, NPR, and CBS Radio, as well as television and

radio programs outside of the United States. We have also been called upon to give congressional testimony and other assistance in hearings involving our cases.

## GENERAL COMMERCIAL LITIGATION

Our attorneys have handled a wide range of general commercial litigation matters, from partnership and business-to-business disputes, to litigation involving corporate takeovers. We have handled cases involving tens of thousands of dollars to "bet the company" cases involving up to hundreds of millions of dollars. Our attorneys have collectively tried hundreds of cases, as well as scores of arbitrations and mediations.

## OUR ATTORNEYS

**JAY EDELSON** is the founder and Managing Partner of EDELSON PC. He has been recognized as a leader in class actions, technology law, corporate compliance issues, and consumer advocacy by his peers, the media, state and federal legislators, academia, and courts throughout the country.

Jay has been appointed lead counsel in numerous state, federal, and international class actions, resulting in hundreds of millions of dollars for his clients. He is regularly asked to weigh in on federal and state legislation involving his cases. He testified to the U.S. Senate about the largest pet food recall in the country's history and is advising state and federal politicians on consumer issues relating to the recent federal bailouts, as well as technology issues, such as those involving mobile marketing. Jay also counsels companies on legal compliance and legislative issues in addition to handling all types of complex commercial litigation.

Jay has litigated class actions that have established precedent concerning the ownership rights of domain name registrants, the applicability of consumer protection statutes to Internet businesses, and the interpretation of numerous other state and federal statutes including the Telephone Consumer Protection Act and the Video Privacy Protection Act. As lead counsel, he has also secured settlement in cases of first impression involving Facebook, Microsoft, AT&T, and countless others, collectively worth hundreds of millions of dollars.

In addition to technology based litigation, Jay has been involved in a number of high-profile "mass tort" class actions and product recall cases, including cases against Menu Foods for selling contaminated pet food, a $30 million class action settlement involving the Thomas the Tank Engine toy train recall, and suits involving damages arising from second-hand smoke.

In 2009, Jay was named one of the top 40 Illinois attorneys under 40 by the Chicago Daily Law Bulletin. In giving Jay that award, he was heralded for his history of bringing and winning landmark cases and for his "reputation for integrity" in the "rough and tumble class action arena." In the same award, he was called "one of the best in the country" when it "comes to legal strategy and execution." Also in 2009, Jay was included in the American Bar Association's "24 hours of Legal Rebels" program, where he was dubbed one of "the most creative minds in the legal profession" for his views of associate training and firm management. In 2010, he was presented with the Annual Humanitarian Award in recognition of his "personal integrity,

professional achievements, and charitable contributions" by the Hope Presbyterian Church. Starting in 2011, he has been selected as an Illinois Super Lawyer and, separately, as a top Illinois class action lawyer by Benchmark Plaintiff.

Jay is frequently asked to participate in legal seminars and discussions regarding the cases he is prosecuting, including serving as panelist on national symposium on tort reform and, separately, serving as a panelist on litigating high-profile cases. He has also appeared on dozens of television and radio programs to discuss his cases. He has taught classes on class action law at Northwestern Law School and The John Marshall Law School, and has co-chaired a 2-day national symposium on class action issues. He has been an adjunct professor, teaching a seminar on class action litigation at Chicago-Kent College of Law since 2010.

Jay is a graduate of Brandeis University and the University of Michigan Law School.

**RYAN D. ANDREWS** is a Partner at EDELSON PC, and the Chair of the Telecommunications Practice Group. Ryan has been appointed class counsel in numerous state and federal class actions nationwide that have resulted in nearly $100 million dollars in refunds to consumers, including *Satterfield v. Simon & Schuster, Inc*., No. C 06 2893 CW (N.D. Cal.); *Gray v. Mobile Messenger Americas, Inc*., No. 08-CV-61089 (S.D. Fla.); *Lofton v. Bank of America Corp*., No. 07-5892 (N.D. Cal.); *Paluzzi v. Cellco Partnership*, No. 07 CH 37213 (Cir. Ct. Cook Cnty., Ill.), *Parone v. m-Qube, Inc*. No. 08 CH 15834 (Cook County, Ill.); and *Kramer v. Autobytel*, Inc., No. 10-cv-2722 (N.D. Cal. 2010).

In addition, Ryan has achieved groundbreaking court decisions protecting consumers through the application of the Telephone Consumer Protection Act to emerging text-messaging technology. Representative reported decisions include: *Lozano v. Twentieth Century Fox*, 702 F. Supp. 2d 999 (N.D. Ill. 2010); *Satterfield v. Simon & Schuster, Inc*. 569 F.3d 946 (9th Cir. 2009); *Kramer v. Autobytel, Inc*., 759 F. Supp. 2d 1165 (N.D. Cal. 2010); *In re Jiffy Lube Int'l Text Spam Litig*, No. 11-md-2261, 2012 WL 762888 (S.D. Cal. March 9, 2012).

Ryan received his J.D. with High Honors from the Chicago-Kent College of Law and was named Order of the Coif. Recently, Ryan has returned to Chicago-Kent as an Adjunct Professor of Law, teaching a third-year seminar on Class Actions. While in law school, Ryan was a Notes & Comments Editor for The Chicago-Kent Law Review, as well as a teaching assistant for both Property Law and Legal Writing courses. Ryan externed for the Honorable Joan B. Gottschall in the United States District Court for the Northern District of Illinois.

A native of the Detroit area, Ryan graduated from the University of Michigan, earning his B.A., with distinction, in Political Science and Communications.

Ryan is licensed to practice in Illinois state courts, the United States District Court for the Northern District of Illinois, the U.S. Court of Appeals for the Seventh Circuit, and the U.S. Court of Appeals for the Ninth Circuit.

**RAFEY S. BALABANIAN** is a Partner and the Chair of the Corporate Governance and Business Litigation Practice Group. Rafey's practice focuses upon a wide range of complex consumer class action litigation, as well as general business litigation.

On the plaintiff's side, Rafey has been appointed lead counsel in numerous class actions, including landmark settlements involving the telecom industry worth hundreds of millions of dollars. Rafey has been appointed Class Counsel in nationwide class action settlements against the major wireless carriers, aggregators, and providers of "mobile content," including *Van Dyke v. Media Breakaway, LLC*, No. 08-cv-22131 (S.D. Fla.); *Parone v. m-Qube, Inc.*, No. 08 CH 15834 (Cir. Ct. Cook County, Ill.); *Williams v. Motricity, Inc.*, et al., No. 09 CH 19089 (Cir. Ct. Cook County, Ill.); and *Walker v. OpenMarket, Inc., et al.*, No. 08 CH 40592 (Cir. Ct. Cook County, Ill.).

On the business side, Rafey has counseled clients ranging from "emerging technology" companies, real estate developers, hotels, insurance companies, lenders, shareholders and attorneys. He has successful litigated numerous multi-million dollar cases, including several "bet the company" cases.

Rafey has first chaired jury and bench trials, mediations, and national and international arbitrations.

Rafey received his J.D. from the DePaul University College of Law in 2005. While in law school, he received a certificate in international and comparative law. Rafey received his B.A. in History, with distinction, from the University of Colorado – Boulder in 2002.

**CHRISTOPHER L. DORE** is a Partner at Edelson and a member of the Technology and Fraudulent Marketing Group. Chris focuses his practice on emerging consumer technology issues, with his cases relating to online fraud, deceptive marketing, consumer privacy, negative option membership enrollment, and unsolicited text messaging. Chris is also a member of the firm's Incubation and Startup Development Group wherein he consults with emergent businesses.

Chris has been appointed class counsel in multiple class actions, including one of the largest text-spam settlements under the Telephone Consumer Protection Act, ground breaking issues in the mobile phone industry and fraudulent marketing, as well as consumer privacy. *See Pimental v. Google, Inc.*, No. 11-cv-02585 (N.D.Cal.); *Turner v. Storm8, LLC*, No. 09-cv-05234 (N.D. Cal.); *Standiford v Palm, Inc.*, No. 09-cv-05719-LHK (N.D. Cal.); and *Espinal v Burger King Corporation*, No. 09-cv-20982 (S.D. Fla.). In addition, Chris has achieved groundbreaking court decisions protecting consumer rights. Representative reported decisions include: *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855 (N.D. Cal. 2011); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010); and *Van Tassell v. United Marketing Group, LLC*, 795 F. Supp. 2d 770 (N.D. Ill. 2011). In total, his suits have resulted in hundreds of millions of dollars to consumers.

Prior to joining Edelson, Chris worked for two large defense firms in the areas of employment and products liability. Chris graduated *magna cum laude* from The John Marshall Law School, where he served as the Executive Lead Articles for the Law Review, as well as a team member

for the D.M. Harish International Moot Court Competition in Mumbai, India. Chris has since returned to his alma mater to lecture on current issues in class action litigation and negations.

Before entering law school, Chris received his Masters degree in Legal Sociology, graduating magna cum laude from the International Institute for the Sociology of Law, located in Onati, Spain. Chris received his B.A. in Legal Sociology from the University of California, Santa Barbara.

**BENJAMIN H. RICHMAN** is a Partner at EDELSON PC and is a member of the firm's Corporate Governance and Business Litigation Practice Group. He handles plaintiff's-side consumer class actions, focusing mainly on technology-related cases, represents corporate defendants in class actions, and handles general commercial litigation matters.

On the plaintiff's side, Ben has brought industry-changing lawsuits involving the marketing practices of the mobile industry, print and online direct advertisers, and Internet companies. He has successfully prosecuted cases involving privacy claims and the negligent storage of consumer data. His suits have also uncovered complex fraudulent methodologies of Web 2.0 companies, including the use of automated bots to distort the value of consumer goods and services. In total, his suits have resulted in hundreds of millions of dollars to consumers.

On the defense side, Ben has represented large institutional lenders in the defense of employment class actions. He also routinely represents technology companies in a wide variety of both class action defense and general commercial litigation matters.

Ben received his J.D. from The John Marshall Law School, where he was an Executive Editor of the Law Review and earned a Certificate in Trial Advocacy. While in law school, Ben served as a judicial extern to the Honorable John W. Darrah of the United States District Court for the Northern District of Illinois, in addition to acting as a teaching assistant for Prof. Rogelio Lasso in several torts courses. Ben has since returned to the classroom as a guest-lecturer on issues related to class actions, complex litigation and negotiation. He also lectures incoming law students on the core first year curriculums. Before entering law school, Ben graduated from Colorado State University with a B.S. in Psychology.

Ben is the director of EDELSON PC's Summer Associate Program.

**ARI J. SCHARG** is a Partner at EDELSON PC. He handles technology-related class actions, focusing mainly on cases involving the unlawful geo-locational tracking of consumers through their mobile devices, the illegal collection, storage, and disclosure of personal information, fraudulent software products, data breaches, and text message spam. His settlements have resulted in tens of millions of dollars to consumers, as well as industry-changing injunctive relief. Ari has been appointed class counsel by state and federal courts in several nationwide class action settlements, including *Webb v. Cleverbridge*, No. 11-cv-4141 (N.D. Ill.); *Ledet v. Ascentive*, No. 11-cv-294 (E.D. Penn.); and *Drymon v. CyberDefender*, No. 11 CH 16779 (Cir. Ct. Cook Cnty., Ill.); and was appointed sole-lead class counsel in *Loewy v. Live Nation*, No. 11-cv-4872 (N.D. Ill.), where the court praised his work as "impressive" and noted that he

"understand[s] what it means to be on a team that's working toward justice." Ari was selected as an Illinois Rising Star (2013) by Super Lawyers.

Prior to joining the firm, Ari worked as a litigation associate at a large Chicago firm, where he represented a wide range of clients including Fortune 500 companies and local municipalities. His work included representing the Cook County Sheriff's Office in several civil rights cases and he was part of the litigation team that forced Craigslist to remove its "Adult Services" section from its website.

Ari is very active in community groups and legal industry associations. He is a member of the Board of Directors of the Chicago Legal Clinic, an organization that provides legal services to low-income families in the Chicago area. Ari acts as Outreach Chair of the Young Adult Division of American Committee for the Shaare Zedek Medical Center in Jerusalem, and is actively involved with the Anti-Defamation League. He is also a member of the Standard Club Associates Committee.

Ari received his B.A. in Sociology from the University of Michigan – Ann Arbor and graduated magna cum laude from The John Marshall Law School where he served as a Staff Editor for The John Marshall Law Review and competed nationally in trial competitions. During law school, he also served as a judicial extern to The Honorable Bruce W. Black of the U.S. Bankruptcy Court for the Northern District of Illinois.

**STEVEN LEZELL WOODROW** is a Partner and Chair of the firm's Banking and Financial Services Practice Group. Steven focuses his practice on complex national class actions against some of the Country's largest financial institutions. Representative matters include cases against national banks and mortgage servicers for improper loan modification practices, unlawful home equity line of credit ("HELOC") account suspensions and reductions, and claims regarding the misapplication of payments.

Steven delivered the winning oral argument in *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012), the first federal appellate court decision to allow borrowers to challenge bank failures to follow the federal Home Affordable Modification Program ("HAMP") under state law.

Courts have also appointed Steven as class counsel in nationwide class action settlements against cellphone companies, aggregators, and mobile content providers related to unauthorized charges for ringtones and other mobile content, including *Paluzzi v. Cellco Partnership*, No. 08-cv-00405 (N.D. Ill.); *Williams v. Motricity, Inc.*, No. 09 CH 19809 (Cir. Ct. Cook Cnty., Ill.); and *Walker v. OpenMarket Inc.*, No. 08 CH 40592 (Cir. Ct. Cook Cnty., Ill.).

Steven has also served as an Adjunct Professor of Law at Chicago-Kent College of Law where he co-taught a seminar on class actions. Prior to joining the firm, he worked as a litigator at a Chicago boutique where he tried and arbitrated a range of consumer protection and real estate matters.

Steven received his J.D. High Honors, Order of the Coif, from Chicago-Kent College of Law in 2005. During law school, Mr. Woodrow served as a Notes and Comments Editor for The Chicago-Kent Law Review, competed on Moot Court, and served as President of the Student Bar Association. He additionally spent a semester as a judicial extern for the Honorable Ann C. Williams on the United States Court of Appeals for the Seventh Circuit. Steven received the ALI-ABA Scholarship and Leadership Award for best representing the combination of leadership and scholarship in his graduating class as well as the Lowell H. Jacobson Memorial Scholarship, which is awarded competitively each year to a student from one of the law schools in the Seventh Circuit to recognize personal commitment and achievement.

Steven is admitted to practice in Colorado (2011) and Illinois (2005).

Steven received his B.A. in Political Science with Distinction from the University of Michigan—Ann Arbor in 2002.

**COURTNEY BOOTH** is an Associate at EDELSON PC. Courtney focuses her practice on consumer class actions.

Courtney received her J.D., *magna cum laude*, from The John Marshall Law School. While in law school, she was a staff editor of The John Marshall Law Review, a teaching assistant for Legal Writing and Civil Procedure, and a member of the Moot Court Honor Society. Courtney represented John Marshall at the Mercer Legal Ethics and Professionalism Competition where she was a semi-finalist and won Best Respondent's Brief and at the Cardozo/BMI Entertainment and Communications Law Competition where she placed in the top three oralists. Courtney was recently nominated as a 2013 Member of the National Order of Scribes.

Prior to law school, Courtney attended Saint Louis University where she earned a B.A. in Communication. While there, she was a community relations intern for the St. Louis Blues.

**MARK EISEN** is an Associate at EDELSON PC, where he focuses on consumer class actions. Prior to joining the firm, Mark clerked for the Honorable Gary Allen Feess, United States District Court for the Central District of California.

Mark received his J.D., *magna cum laude*, from the Boston University School of Law. While in law school, he won the Homer Albers Prize Moot Court Competition, represented BU on the National Moot Court team, and was a note development editor on the BU International Law Journal. Mark's academic note, *Who's Running This Place? A Comparative Look at the Political Appointment System in the United States and Britain, and What the United States Can Learn*, was published in the International Law Journal in the spring of 2012. Most importantly, Mark was active with the Boston University School of Law Softball Team.

Prior to law school, Mark attended the University of Southern California where he earned a B.A., *magna cum laude*, in Political Science and Economics. While there, Mark was a teaching assistant to Professor Dan Schnur. Mark also traveled the country as part of the advance team for John McCain's 2008 presidential campaign.

**CHANDLER GIVENS** is an Associate at EDELSON PC, where his practice focuses on technology and privacy class actions. His lawsuits have centered on fraudulent software development, unlawful tracking of consumers through mobile devices and computers, illegal data retention, and data breach litigation.

Chandler leads a group of researchers in investigating complex technological fraud and privacy related violations. His team's research has lead to cases that have helped cause significant reforms to the utility software industry and resulted in tens of millions of dollars to U.S. consumers. On the privacy litigation front, Chandler plays an instrumental role in applying new technologies to federal and state statutes. His briefing of these issues has helped produce seminal rulings under statutes like the Stored Communications Act and establish data breach jurisprudence favorable to consumers.

A frequent speaker on emerging law and technology issues, Chandler has presented to legal panels and state bar associations on topics ranging from data privacy and security to complex litigation and social media. He has been featured on syndicated radio, quoted in major publications such as Reuters and PCWorld, and been an invited cyberlaw guest lecturer at his alma mater.

Chandler graduated from the University of Pittsburgh School of Law where he was a research assistant for Cyberlaw Professor Dr. Kevin Ashley, and a judicial extern for the Honorable David S. Cercone of the United States District Court for the Western District of Pennsylvania. He graduated cum laude from Virginia Polytechnic Institute and State University, with a B.S. in business information technology, with a focus on computer-based decision support systems. Chandler sits on the ABA committees for Information Security and e-Discovery.

Before joining the legal profession, Chandler worked as a systems analyst. He has also interned at the Virginia Attorney General's Office as well as the U.S. Department of Justice in Washington, D.C.

**ALICIA HWANG** is an Associate at EDELSON PC. Alicia practices in the area of consumer class action and general litigation.

Alicia received her J.D. from the Northwestern University School of Law in May 2012, where she was an articles editor for the Journal of Law and Social Policy. During law school, Alicia was a legal intern for the Chinese American Service League, served as president of the Asian Pacific American Law Student Association and the Student Animal Legal Defense Fund, and was Chair of the Student Services Committee. She also worked as a student in the Northwestern Entrepreneurship Law Clinic and Complex Civil Litigation and Investor Protection Clinic.

Prior to joining EDELSON PC, Alicia worked as an Executive Team Leader for the Target Corporation, as well as a public relations intern for a tourism-marketing agency in London.

Alicia graduated *magna cum laude* from the University of Southern California, earning her B.A. in Communication in 2007. She is a member of the Phi Beta Kappa honor society.

**NICK LARRY** is an Associate at EDELSON PC. Nick practices in the area of consumer class action and general litigation.

Nick received his J.D., *cum laude*, from Northwestern University School of Law, where he was a senior editor of the Northwestern University Journal of International Law and Business.

Nick attended Michigan State University, where he graduated with a B.A. in General Business Administration/Pre-law in 2008 and played on the school's rugby team.

**MEGAN LINDSEY** is an Associate at EDELSON PC. Megan practices in the area of consumer class action, focusing on complex class actions in the banking industry.

Prior to joining EDELSON PC, Megan worked for several years as a commercial loan underwriter and portfolio officer at Merrill Lynch, Pierce, Fenner & Smith. Megan also worked as an analyst in the troubled asset group at Bank of America, helping to monitor and restructure high-risk loans.

Megan received her J.D. from Chicago-Kent College of Law in May 2011. During law school Megan externed for the Honorable William Bauer in the United States Court of Appeals for the Seventh Circuit and served as Vice President-Evening Division of the Student Bar Association and Vice President of the Moot Court Honor Society. Megan also represented Chicago-Kent at the National First Amendment Moot Court Competition in Nashville, Tennessee and the National Cultural Heritage Law Moot Court Competition in Chicago, Illinois.

Megan graduated with High Honors from DePaul University in July 2005, earning her B.S. in Finance.

**DAVID I. MINDELL** is an Associate at EDELSON PC. David practices in the area of technology and privacy class actions.

David has worked on cases involving fraudulent software products, unlawful collection and retention of consumer data, and mobile-device privacy violations. David also serves as a business consultant to private companies at all stages of development, from start-up to exit.

Prior to joining EDELSON PC, David co-founded several technology companies that reached multi-million dollar valuations within 12 months of launch. David has advised or created strategic development and exit plans for a variety of other technology companies.

While in law school, David was a research assistant for University of Chicago Law School Kauffman and Bigelow Fellow, Matthew Tokson, and for the preeminent cyber-security professor, Hank Perritt at the Chicago-Kent College of Law. David's research included cyberattack and denial of service vulnerabilities of the Internet, intellectual property rights, and privacy issues.

David has given speeches related to his research to a wide-range of audiences.

**AMIR MISSAGHI** is an Associate at Edelson, where he focuses on technology and privacy class actions.

Amir received his J.D. from the Chicago-Kent College of Law, where he was a member of the Moot Court Honor Society and a teaching assistant in Property. Before law school, he attended the University of Minnesota, where he received his B.S. in Applied Economics. He then began working at a Fortune 50 company as a programmer and data analyst. During that time Amir started working on his graduate studies in Applied Economics where he focused on analyzing consumer choice in healthcare markets.

**JOHN OCHOA** is an associate at EDELSON PC, focusing his practice on protecting consumers with a special emphasis on plaintiffs' privacy class action litigation, including cases brought under the Telephone Consumer Protection Act. John prosecutes cases in both state and federal courts at the trial and appellate levels.

John has secured important court decisions protecting the rights of consumers, including *Elder v. Pacific Bell Telephone Co*, 205 Cal. App. 4th 841 (2012), where the California Court of Appeal held that consumers may pursue claims against telecommunications companies for placing unauthorized charges on consumers' telephone bills, a practice known as "cramming." John was also appointed class counsel in *Lee v. Stonebridge Life Insurance Co*, 289 F.R.D. 292 (N.D. Cal. 2013), a case where the defendants are alleged to have caused the transmission of unauthorized text messages to the cellular telephones of thousands of consumers.

He graduated *magna cum laude* from the John Marshall Law School in May 2010 and served as Managing Editor for the John Marshall Law Review. His student Comment, which examines bicycling and government tort immunity in Illinois, appears in Vol. 43, No. 1 of the John Marshall Law Review. While in law school, John externed with Judge Thomas Hoffman at the Illinois Appellate Court, and competed in the ABA National Appellate Advocacy Competition.

John is active in the Illinois legal community, and serves as Co-Chair of the Membership Committee on the Young Professionals Board of Illinois Legal Aid Online (ILAO). ILAO is a non-profit organization committed to using technology to increase access to free and pro bono legal services for underserved communities throughout Illinois.

He received his B.A. with Honors in Political Science from the University of Iowa in 2004.

**ROGER PERLSTADT** is an Associate at EDELSON PC, where he concentrates on appellate and complex litigation advocacy. Roger graduated from the University of Chicago Law School, where he was a member of the University of Chicago Law Review. After law school, he served as a clerk to the Honorable Elaine E. Bucklo of the United States District Court for the Northern District of Illinois.

Prior to joining the firm, Roger spent several years at a litigation boutique in Chicago where his practice included employment and housing discrimination claims, constitutional litigation, and general commercial matters. In 2011, he was named a Rising Star by Illinois Super Lawyers Magazine.

Roger also spent time as a Visiting Assistant Professor at the University of Florida Law School where he taught Arbitration, Conflict of Laws, and Employment Discrimination, and has published articles on the Federal Arbitration Act in various law reviews.

**EVE-LYNN RAPP** is an Associate at EDELSON PC. Eve-Lynn focuses her practice in the areas of consumer and technology class action litigation.

Prior to joining EDELSON PC, Eve-Lynn was involved in numerous class action cases in the areas of consumer and securities fraud, debt collection abuses and public interest litigation. Eve-Lynn has substantial experience in both state and federal courts, including successfully briefing issues in both the United States and Illinois Supreme Courts.

Eve-Lynn received her J.D. from Loyola University of Chicago-School of Law, graduating cum laude, with a Certificate in Trial Advocacy. During law school, Eve-Lynn was an Associate Editor of Loyola's International Law Review and externed as a "711" at both the Cook County State's Attorney's Office and for Cook County Commissioner Larry Suffredin. Eve-Lynn also clerked for both civil and criminal judges (Honorable Yvonne Lewis and Plummer Lott) in the Supreme Court of New York.

Eve-Lynn graduated from the University of Colorado, Boulder, with distinction and Phi Beta Kappa honors, receiving a B.A. in Political Science.

**BEN THOMASSEN** is an Associate at EDELSON PC. At the firm, Ben's practice centers on the prosecution of class actions cases that address federally protected privacy rights and issues of consumer fraud—several of which have established industry-changing precedent. Among other high profile cases, Ben recently played key roles in delivering the winning oral argument before the United States Court of Appeals for the Eleventh Circuit in *Curry v. AvMed*, 693 F.3d 1317 (11th Cir. 2012) (a data breach case that has, following the Eleventh Circuit's decision, garnered national attention both within and without the legal profession) and securing certification of a massive consumer class in *Dunstan v. comScore*, No. 11 C 5807, 2013 WL 1339262 (N.D. Ill. Apr. 2, 2013) (estimated by several sources as the largest privacy case ever certified on an adversarial basis).

Ben received his J.D., *magna cum laude*, from Chicago-Kent College of Law, where he also earned his certificate in Litigation and Alternative Dispute Resolution and was named Order of the Coif. At Chicago-Kent, Ben was Vice President of the Moot Court Honor Society and earned (a currently unbroken firm record of) seven CALI awards for receiving the highest grade in Appellate Advocacy, Business Organizations, Conflict of Laws, Family Law, Personal Income Tax, Property, and Torts.

Before settling into his legal career, Ben worked in and around the Chicago and Washington, D.C. areas in a number of capacities, including stints as a website designer/developer, a regular contributor to a monthly Capitol Hill newspaper, and a film projectionist and media technician (with many years experience) for commercial theatres, museums, and educational institutions. Ben received his Bachelor of Arts, *summa cum laude*, from St. Mary's College of Maryland and his Master of Arts from the University of Chicago.

# Exhibit B

Edelson PC
350 North LaSalle
Suite 1300
Chicago IL  60654
United States

INVOICE



Class Action Cases
@edelson.com @edelson.com

| Invoice #: | 555556D |
|---|---|
| Date: | September 16, 2014 |
| Amount Due USD: | $59,994.33 |

| Item | Description | Unit Cost ($) | Quantity | Price ($) |
|---|---|---|---|---|
| Expense | [Wigod v. Wells Fargo 08/18/14] Case Research: TransUnion | 123.30 | 1 | 123.30 |
| Expense | [Wigod v. Wells Fargo 06/26/14] Taxi & Parking, DIA Parking | 46.00 | 1 | 46.00 |
| Expense | [Wigod v. Wells Fargo 06/26/14] Taxi & Parking, Yellow Cab | 40.95 | 1 | 40.95 |
| Expense | [Wigod v. Wells Fargo 06/25/14] Taxi & Parking, King Cab Co | 49.00 | 1 | 49.00 |
| Expense | [Wigod v. Wells Fargo 06/24/14] Flight: Steven Woodrow. Chicago to Denver | 397.00 | 1 | 397.00 |
| Expense | [Wigod v. Wells Fargo 06/24/14] Flight: Steven Woodrow. Dallas to Chicago | 402.00 | 1 | 402.00 |
| Expense | [Wigod v. Wells Fargo 06/20/14] Hotel: Steven Woodrow | 279.34 | 1 | 279.34 |
| Expense | [Wigod v. Wells Fargo 06/20/14] Taxi & Parking, Choice Taxi | 36.75 | 1 | 36.75 |
| Expense | [Wigod v. Wells Fargo 06/19/14] Taxi & Parking, DIA Parking | 41.00 | 1 | 41.00 |
| Expense | [Wigod v. Wells Fargo 06/18/14] Copies/Binding/Production, Verity Group | 40.76 | 1 | 40.76 |
| Expense | [Wigod v. Wells Fargo 06/16/14] Flight: Steven Woodrow. Denver to Chicago, Chicago to Denver | 597.00 | 1 | 597.00 |
| Expense | [Wigod v. Wells Fargo 05/29/14] Restaurants/Dining, Starbacks: Tea and snack at airport | 13.97 | 1 | 13.97 |
| Expense | [Wigod v. Wells Fargo 05/29/14] Taxi & Parking, Royal 3 CCC Taxi: Taxi to airport | 45.83 | 1 | 45.83 |
| Expense | [Wigod v. Wells Fargo 05/29/14] Taxi & Parking, Yellow Cab: Taxi to office before status hearing | 8.00 | 1 | 8.00 |
| Expense | [Wigod v. Wells Fargo 05/29/14] Taxi & Parking, DIA Parking: Parking at airport | 46.00 | 1 | 46.00 |
| Expense | [Wigod v. Wells Fargo 05/29/14] Restaurants/Dining, Argo Tea: Tea with opposing counsel | 4.44 | 1 | 4.44 |
| Expense | [Wigod v. Wells Fargo 05/28/14] Hotel: Megan Lindsey | 237.44 | 1 | 237.44 |
| Expense | [Wigod v. Wells Fargo 05/28/14] Hotel: Steve Woodrow | 237.55 | 1 | 237.55 |
| Expense | [Wigod v. Wells Fargo 05/28/14] Taxi & Parking, Flash Cab: Taxi to hotel before status hearing | 52.81 | 1 | 52.81 |
| Expense | [Wigod v. Wells Fargo 05/28/14] Restaurants/Dining, Mission Yogurt: Lunch at airport | 14.20 | 1 | 14.20 |

| | | | | |
|---|---|---|---|---|
| Expense | [Wigod v. Wells Fargo 05/21/14] Flight: United. Megan Lindsey. Denver to Chicago. | 414.00 | 1 | 414.00 |
| Expense | [Wigod v. Wells Fargo 05/21/14] Flight: American Airlines. Steven Woodrow and Megan Lindsey. Chicago to Denver. | 989.86 | 1 | 989.86 |
| Expense | [Wigod v. Wells Fargo 05/21/14] Flight: Southwest. Steven Woodrow. Denver to Chicago. | 193.50 | 1 | 193.50 |
| Expense | [Wigod v. Wells Fargo 03/30/14] Mediation, JAMS | 1,540.00 | 1 | 1,540.00 |
| Expense | [Wigod v. Wells Fargo 03/28/14] Mediation: Jams, Inc. | 481.25 | 1 | 481.25 |
| Expense | [Wigod v. Wells Fargo 03/28/14] Mediation: Jams, Inc. | 96.25 | 1 | 96.25 |
| Expense | [Wigod v. Wells Fargo 03/27/14] Hotel: Steven Woodrow | 277.60 | 1 | 277.60 |
| Expense | [Wigod v. Wells Fargo 03/26/14] Travel, United Airlines: Snack on plane home from mediation. | 3.99 | 1 | 3.99 |
| Expense | [Wigod v. Wells Fargo 03/25/14] Flight: Megan Lindsey. Chicago to Denver change | 75.00 | 1 | 75.00 |
| Expense | [Wigod v. Wells Fargo 03/25/14] Taxi & Parking, Northwest Management: Taxi from mediation. | 8.85 | 1 | 8.85 |
| Expense | [Wigod v. Wells Fargo 03/25/14] Hotel/Lodging/Accommodation, Palomar Hotel: Dinner at hotel. | 32.14 | 1 | 32.14 |
| Expense | [Wigod v. Wells Fargo 03/25/14] Hotel/Lodging/Accommodation, Starbacks: Drink at airport. | 8.73 | 1 | 8.73 |
| Expense | [Wigod v. Wells Fargo 03/25/14] Taxi & Parking, DIA Parking: Parking at airport. | 46.00 | 1 | 46.00 |
| Expense | [Wigod v. Wells Fargo 03/25/14] Taxi & Parking, Taxi: Taxi to airport. | 52.85 | 1 | 52.85 |
| Expense | [Wigod v. Wells Fargo 03/25/14] Taxi & Parking, Taxi: Taxi to office from airport. | 50.65 | 1 | 50.65 |
| Expense | [Wigod v. Wells Fargo 03/25/14] Flight: Jay Edelson. Chicago to Salt Lake | 580.00 | 1 | 580.00 |
| Expense | [Wigod v. Wells Fargo 03/25/14] Hotel: Megan Lindsey | 185.07 | 1 | 185.07 |
| Expense | [Wigod v. Wells Fargo 03/24/14] Restaurants/Dining, Rock Bottom | 12.06 | 1 | 12.06 |
| Expense | [Wigod v. Wells Fargo 03/24/14] Taxi & Parking, Taxi: Taxi to hotel. | 7.45 | 1 | 7.45 |
| Expense | [Wigod v. Wells Fargo 03/24/14] Hotel/Lodging/Accommodation, Woody Creek: Lunch from Airport. | 8.91 | 1 | 8.91 |
| Expense | [Wigod v. Wells Fargo 03/24/14] Travel, Caribou: Tea and water at airport. | 4.51 | 1 | 4.51 |
| Expense | [Wigod v. Wells Fargo 03/20/14] Flight: Jay Edelson. Flight change. Chicago to Salt Lake | 200.00 | 1 | 200.00 |
| Expense | [Wigod v. Wells Fargo 03/20/14] Travel, American Airlines: Flight for Jay from Salt Lake City to Chicago | 798.00 | 1 | 798.00 |
| Expense | [Wigod v. Wells Fargo 03/11/14] Flight: Steve Woodrow. Denver to Chicago, Chicago to Denver | 343.00 | 1 | 343.00 |
| Expense | [Wigod v. Wells Fargo 03/05/14] Flight: Megan Lindsey. Denver to Chicago, Chicago to Denver | 800.00 | 1 | 800.00 |
| Expense | [Wigod v. Wells Fargo 02/24/14] Mediation: JAMS | 2,904.25 | 1 | 2,904.25 |
| Expense | [Wigod v. Wells Fargo 11/01/13] Hotel: Steven Woodrow | 500.48 | 1 | 500.48 |
| Expense | [Wigod v. Wells Fargo 11/01/13] Hotel: Megan Lindsey | 250.24 | 1 | 250.24 |
| Expense | [Wigod v. Wells Fargo 10/31/13] Flight: Megan Lindsey. Chicago to Denver | 404.91 | 1 | 404.91 |

| | | | | |
|---|---|---|---|---|
| Expense | [Wigod v. Wells Fargo 10/31/13] Taxi & Parking, DIA Parking: Parking at DIA for mediation | 46.00 | 1 | 46.00 |
| Expense | [Wigod v. Wells Fargo 10/31/13] Restaurants/Dining, Starbucks: Snack at airport after mediation | 6.19 | 1 | 6.19 |
| Expense | [Wigod v. Wells Fargo 10/31/13] Taxi & Parking, Taxicab | 45.65 | 1 | 45.65 |
| Expense | [Wigod v. Wells Fargo 10/31/13] Taxi & Parking, DIA Parking | 46.00 | 1 | 46.00 |
| Expense | [Wigod v. Wells Fargo 10/30/13] Restaurants/Dining, Palomar Hotel: Room service while working at hotel | 25.82 | 1 | 25.82 |
| Expense | [Wigod v. Wells Fargo 10/30/13] Restaurants/Dining, Star of Siam: Dinner night before mediation | 14.86 | 1 | 14.86 |
| Expense | [Wigod v. Wells Fargo 10/30/13] Taxi & Parking, Sun Taxi: Taxi to Airport after Mediation | 52.65 | 1 | 52.65 |
| Expense | [Wigod v. Wells Fargo 10/30/13] Taxi & Parking, Ventra: Train to Chicago for mediation | 5.00 | 1 | 5.00 |
| Expense | [Wigod v. Wells Fargo 10/30/13] Restaurants/Dining, DIA B2 Connections: Water / snack at airport prior to mediation | 4.20 | 1 | 4.20 |
| Expense | [Wigod v. Wells Fargo 10/16/13] Flight: Steven Woodrow. Denver to Chicago, Chicago to Denver. | 304.80 | 1 | 304.80 |
| Expense | [Wigod v. Wells Fargo 10/16/13] Flight: Megan Lindsey. Denver to Chicago, Chicago to Denver | 398.80 | 1 | 398.80 |
| Expense | [Wigod v. Wells Fargo 09/20/13] Mediation: JAMS. | 270.02 | 1 | 270.02 |
| Expense | [Wigod v. Wells Fargo 08/13/13] Mediation: JAMS, Inc. | 6,500.00 | 1 | 6,500.00 |
| Expense | [Wigod v. Wells Fargo 07/20/13] Meals & Entertainment, United Airlines | 8.59 | 1 | 8.59 |
| Expense | [Wigod v. Wells Fargo 07/20/13] Taxi & Parking, Yellow Cab | 38.25 | 1 | 38.25 |
| Expense | [Wigod v. Wells Fargo 07/19/13] Hotel: Steven Woodrow | 495.84 | 1 | 495.84 |
| Expense | [Wigod v. Wells Fargo 07/19/13] Hotel: Megan Lindsey | 500.48 | 1 | 500.48 |
| Expense | [Wigod v. Wells Fargo 07/19/13] Parking, DIA Parking: Parking at airport | 58.00 | 1 | 58.00 |
| Expense | [Wigod v. Wells Fargo 07/19/13] Food, Starbucks: Breakfast at airport | 2.76 | 1 | 2.76 |
| Expense | [Wigod v. Wells Fargo 07/19/13] Food, Brioche Doree: Breakfast at airport | 9.20 | 1 | 9.20 |
| Expense | [Wigod v. Wells Fargo 07/19/13] Taxi, Taxi: Cab from hotel to airport | 47.00 | 1 | 47.00 |
| Expense | [Wigod v. Wells Fargo 07/18/13] Taxi, Taxi: Cab to mediation | 8.95 | 1 | 8.95 |
| Expense | [Wigod v. Wells Fargo 07/17/13] Taxi & Parking, Taxi | 34.31 | 1 | 34.31 |
| Expense | [Wigod v. Wells Fargo 07/17/13] Food, Peak Newsstands: Food at airport. | 3.68 | 1 | 3.68 |
| Expense | [Wigod v. Wells Fargo 07/17/13] Cab, Yellow Cab: Cab from Airport | 50.00 | 1 | 50.00 |
| Expense | [Wigod v. Wells Fargo 07/16/13] Case Research: Frankenfeld Associates Interactive Inc. | 10,000.00 | 1 | 10,000.00 |
| Expense | [Wigod v. Wells Fargo 06/28/13] Mediation: JAMS | 369.93 | 1 | 369.93 |
| Expense | [Wigod v. Wells Fargo 06/25/13] Copies/Binding/Production: Anaconda Printing | 131.19 | 1 | 131.19 |
| Expense | [Wigod v. Wells Fargo 06/20/13] Mediation: JAMS | 5,175.00 | 1 | 5,175.00 |
| Expense | [Wigod v. Wells Fargo 06/07/13] Hotel: Steven Woodrow | 250.24 | 1 | 250.24 |

| | | | | |
|---|---|---|---|---|
| Expense | [Wigod v. Wells Fargo 06/06/13] Flight: Steven Woodrow- Denver to Chicago, Chicago to Denver | 308.80 | 1 | 308.80 |
| Expense | [Wigod v. Wells Fargo 06/05/13] Flight: Megan Lindsey. Denver to Chicago, Chicago to Denver. | 347.90 | 1 | 347.90 |
| Expense | [Wigod v. Wells Fargo 06/03/13] Flight: Steven Woodrow. Denver to Chicago, Chicago to Denver | 757.80 | 1 | 757.80 |
| Expense | [Wigod v. Wells Fargo 05/20/13] Service of Process: Boughton Protective Services | 185.00 | 1 | 185.00 |
| Expense | [Wigod v. Wells Fargo 05/10/13] Service of Process: Boughton Protective Services. Service of Promontory Financial Group | 185.00 | 1 | 185.00 |
| Expense | [Wigod v. Wells Fargo 05/04/13] Flight: Megan Lindsey. Denver to Chicago | 290.40 | 1 | 290.40 |
| Expense | [Wigod v. Wells Fargo 05/04/13] Flight: Megan Lindsey. Chicago to Denver | 459.90 | 1 | 459.90 |
| Expense | [Wigod v. Wells Fargo 04/24/13] Flight: Steven Woodrow and Megan Lindsey. Denver to Charlotte, Charlotte to Denver. Flight change | 200.00 | 1 | 200.00 |
| Expense | [Wigod v. Wells Fargo 04/08/13] Transcript: Esquire Corporate Solutions. Deposition of Daniel Finlinson, Sandra Finlinson | 994.32 | 1 | 994.32 |
| Expense | [Wigod v. Wells Fargo 04/03/13] Flight: Steven Woodrow and Megan Lindsey. Boston to Denver. | 369.80 | 1 | 369.80 |
| Expense | [Wigod v. Wells Fargo 04/03/13] Flight: Steven Woodrow and Megan Lindsey. Denver to Boston. | 200.00 | 1 | 200.00 |
| Expense | [Wigod v. Wells Fargo 03/28/13] Printing: Anaconda Printing | 846.33 | 1 | 846.33 |
| Expense | [Wigod v. Wells Fargo 03/28/13] Transcript: Sweeney Court Reporting Services. Deposition of Mark Deskus | 1,876.70 | 1 | 1,876.70 |
| Expense | [Wigod v. Wells Fargo 03/27/13] Service of Process: Paper Boys. Service of subpoena and witness fees to Josh Stillwell | 209.12 | 1 | 209.12 |
| Expense | [Wigod v. Wells Fargo 03/22/13] Hotel: Megan Lindsey | 267.73 | 1 | 267.73 |
| Expense | [Wigod v. Wells Fargo 03/22/13] Deposition: Catering fee at Westin Indianapolis for Dan and Sandra Finlinson | 130.00 | 1 | 130.00 |
| Expense | [Wigod v. Wells Fargo 03/22/13] Taxi & Parking, Taxi: Taxi from Airport day before Dep | 42.00 | 1 | 42.00 |
| Expense | [Wigod v. Wells Fargo 03/22/13] Restaurants/Dining, Harry & Izzy's: Dinner at airport after Dep | 15.08 | 1 | 15.08 |
| Expense | [Wigod v. Wells Fargo 03/22/13] Taxi & Parking, DIA Parking: Parking at airport for dep | 46.00 | 1 | 46.00 |
| Expense | [Wigod v. Wells Fargo 03/21/13] Restaurants/Dining, Shulas Steak House: Lunch day of Dep Preparation | 19.17 | 1 | 19.17 |
| Expense | [Wigod v. Wells Fargo 03/21/13] Restaurants/Dining, TCBY: Breakfast at Airport day before Dep | 9.02 | 1 | 9.02 |
| Expense | [Wigod v. Wells Fargo 03/20/13] Research: Confidential Services, Inc. | 595.00 | 1 | 595.00 |
| Expense | [Wigod v. Wells Fargo 03/15/13] Flight: Megan Lindsey | 1,005.70 | 1 | 1,005.70 |
| Expense | [Wigod v. Wells Fargo 03/15/13] Transcript: Hearing on 2/26/13 | 62.40 | 1 | 62.40 |
| Expense | [Wigod v. Wells Fargo 03/14/13] Hotel/Lodging/Accommodation, renaissance hotel savery des moines: hotel room one night, including dinner | 317.68 | 1 | 317.68 |
| Expense | [Wigod v. Wells Fargo 03/14/13] Taxi & Parking: taxi from airport to hotel | 16.00 | 1 | 16.00 |

| | | | | |
|---|---|---|---|---|
| Expense | [Wigod v. Wells Fargo 03/14/13] Restaurants/Dining: lunch during deposition break | 8.00 | 1 | 8.00 |
| Expense | [Wigod v. Wells Fargo 03/13/13] Airfare, United Airlines | 25.00 | 1 | 25.00 |
| Expense | [Wigod v. Wells Fargo 03/13/13] Hotel/Lodging/Accommodation, renaissance hotel savery des moines | 286.58 | 1 | 286.58 |
| Expense | [Wigod v. Wells Fargo 03/13/13] Taxi & Parking, DIA Parking | 46.00 | 1 | 46.00 |
| Expense | [Wigod v. Wells Fargo 03/07/13] Office Expenses & Postage, Fedex: Copy and mail documents for Deskus deposition. | 116.74 | 1 | 116.74 |
| Expense | [Wigod v. Wells Fargo 03/01/13] Restaurants/Dining, Amalfi Hotel | 50.48 | 1 | 50.48 |
| Expense | [Wigod v. Wells Fargo 02/28/13] Flight: Steven Woodrow. Denver to Des Moines | 267.90 | 1 | 267.90 |
| Expense | [Wigod v. Wells Fargo 02/28/13] Flight: Alicia Hwang | 415.80 | 1 | 415.80 |
| Expense | [Wigod v. Wells Fargo 02/28/13] Flight: Steven Woodrow - Des Moines to Denver | 321.10 | 1 | 321.10 |
| Expense | [Wigod v. Wells Fargo 02/28/13] Restaurants/Dining, Palomar Hotel | 33.49 | 1 | 33.49 |
| Expense | [Wigod v. Wells Fargo 02/27/13] Service of Process: Boughton Protective Services. Service of subpoenas to IRS | 205.00 | 1 | 205.00 |
| Expense | [Wigod v. Wells Fargo 02/27/13] Taxi & Parking, Taxi | 34.85 | 1 | 34.85 |
| Expense | [Wigod v. Wells Fargo 02/26/13] Hotel: Steven Woodrow | 148.99 | 1 | 148.99 |
| Expense | [Wigod v. Wells Fargo 02/26/13] Hotel: Steven Woodrow | 187.05 | 1 | 187.05 |
| Expense | [Wigod v. Wells Fargo 02/26/13] Hotel: Steven Woodrow | 185.07 | 1 | 185.07 |
| Expense | [Wigod v. Wells Fargo 02/26/13] Taxi & Parking, Chicago Carriage | 9.06 | 1 | 9.06 |
| Expense | [Wigod v. Wells Fargo 02/25/13] Taxi & Parking, DIA Parking | 61.00 | 1 | 61.00 |
| Expense | [Wigod v. Wells Fargo 02/25/13] Taxi & Parking, Yellow Cab | 33.30 | 1 | 33.30 |
| Expense | [Wigod v. Wells Fargo 02/21/13] Copies/Binding/Production: Verity Group | 17.10 | 1 | 17.10 |
| Expense | [Wigod v. Wells Fargo 02/18/13] Flight: Steven Woodrow | 385.80 | 1 | 385.80 |
| Expense | [Wigod v. Wells Fargo 02/12/13] Service of Process: BPS-Boughton Protective Services. Service on Freddie Mac | 65.00 | 1 | 65.00 |
| Expense | [Wigod v. Wells Fargo 01/25/13] Taxi & Parking, DIA Parking | 38.00 | 1 | 38.00 |
| Expense | [Wigod v. Wells Fargo 01/25/13] Taxi & Parking, Yellow Cab | 9.45 | 1 | 9.45 |
| Expense | [Wigod v. Wells Fargo 01/22/13] Flight: Steven Woodrow | 571.80 | 1 | 571.80 |
| Expense | [Wigod v. Wells Fargo 01/22/13] Hotel: Steven Woodrow | 185.07 | 1 | 185.07 |
| Expense | [Wigod v. Wells Fargo 01/22/13] Taxi & Parking, Yellow Cab: taxi to/from airport | 36.00 | 1 | 36.00 |
| Expense | [Wigod v. Wells Fargo 01/22/13] Taxi & Parking, DIA Parking: airport parking | 46.00 | 1 | 46.00 |
| Expense | [Wigod v. Wells Fargo 01/21/13] Restaurants/Dining, Palomar Hotel: In room dining | 32.69 | 1 | 32.69 |
| Expense | [Wigod v. Wells Fargo 01/21/13] Taxi & Parking, Globe Taxi: Taxi to/from airport | 38.94 | 1 | 38.94 |
| Expense | [Wigod v. Wells Fargo 01/18/13] Flight: Steven Woodrow | 571.80 | 1 | 571.80 |
| Expense | [Wigod v. Wells Fargo 01/15/13] Hotel: Steven Woodrow | 185.07 | 1 | 185.07 |
| Expense | [Wigod v. Wells Fargo 01/15/13] Taxi & Parking, Sun Taxi: Taxi to/from airport | 32.46 | 1 | 32.46 |
| Expense | [Wigod v. Wells Fargo 01/15/13] Taxi & Parking, DIA Parking: Airport parking | 46.00 | 1 | 46.00 |

| | | | | |
|---|---|---|---|---|
| Expense | [Wigod v. Wells Fargo 01/14/13] Restaurants/Dining, Palomar Hotel: In room dining | 38.06 | 1 | 38.06 |
| Expense | [Wigod v. Wells Fargo 01/14/13] Taxi & Parking, Royal 3 CCC Taxi: Taxi to/from airport | 33.90 | 1 | 33.90 |
| Expense | [Wigod v. Wells Fargo 01/10/13] FedEx: Binding courtesy copy | 5.74 | 1 | 5.74 |
| Expense | [Wigod v. Wells Fargo 01/03/13] Flight: Steve Woodrow | 279.80 | 1 | 279.80 |
| Expense | [Wigod v. Wells Fargo 01/02/13] Consultation: Frankenfeld Associates Interactive | 2,000.00 | 1 | 2,000.00 |
| Expense | [Wigod v. Wells Fargo 01/02/13] FedEx: Binding for courtesy copies | 5.75 | 1 | 5.75 |
| Expense | [Wigod v. Wells Fargo 12/06/12] Printing, Sir Speedy Printing: Discovery Binders | 523.64 | 1 | 523.64 |
| Expense | [Wigod v. Wells Fargo 11/30/12] Copies/Binding/Production: 24 seven discovere | 41.12 | 1 | 41.12 |
| Expense | [Wigod v. Wells Fargo 10/04/12] Filing Fees: PHV Megan Lindsey | 50.00 | 1 | 50.00 |
| Expense | [Wigod v. Wells Fargo 09/19/12] Service of Process: LaSalle Process Servers - Fannie Mae and Freddie Mac subpoenas | 342.00 | 1 | 342.00 |
| Expense | [Wigod v. Wells Fargo 08/28/12] Subpoena: Fannie Mae and Freddie Mac | 80.00 | 1 | 80.00 |
| Expense | [Wigod v. Wells Fargo 07/29/12] Parking, DIA Parking: Airport Parking for Hearing on Motion for Bifurcation | 14.00 | 1 | 14.00 |
| Expense | [Wigod v. Wells Fargo 07/29/12] Flight, Frontier: Bag fee - hearing on Motion for Bifurcation | 20.00 | 1 | 20.00 |
| Expense | [Wigod v. Wells Fargo 07/25/12] Hotel, Amalfi Hotel: Hotel for Hearing on Motion for Bifurcation | 569.74 | 1 | 569.74 |
| Expense | [Wigod v. Wells Fargo 07/20/12] Taxi, Globe Taxi: Taxi ride for Hearing on Motion for Bifurcation | 53.10 | 1 | 53.10 |
| Expense | [Wigod v. Wells Fargo 07/20/12] Flight, American Airlines: Bag fee - Hearing on Motion for Bifurcation | 25.00 | 1 | 25.00 |
| Expense | [Wigod v. Wells Fargo 07/01/12] Flight, Frontier | 7.00 | 1 | 7.00 |
| Expense | [Wigod v. Wells Fargo 07/01/12] Hotel | 318.94 | 1 | 318.94 |
| Expense | [Wigod v. Wells Fargo 06/21/12] Hotel: Steven Woodrow | 262.90 | 1 | 262.90 |
| Expense | [Wigod v. Wells Fargo 06/14/12] FedEx | 13.33 | 1 | 13.33 |
| Expense | [Wigod v. Wells Fargo 06/12/12] Flight: Steve Woodrow | 466.60 | 1 | 466.60 |
| Expense | [Wigod v. Wells Fargo 06/06/12] FedEx | 22.16 | 1 | 22.16 |
| Expense | [Wigod v. Wells Fargo 05/17/12] Taxi/Train/Rental Car: Dia Parking Operations Denver CO | 56.00 | 1 | 56.00 |
| Expense | [Wigod v. Wells Fargo 05/14/12] Taxi/Train/Rental Car: Taxi transportation chicago | 42.00 | 1 | 42.00 |
| Expense | [Wigod v. Wells Fargo 04/20/12] Flight: For Steven Woodrow | 251.60 | 1 | 251.60 |
| Expense | [Wigod v. Wells Fargo 10/26/11] Hotel | 423.26 | 1 | 423.26 |
| Expense | [Wigod v. Wells Fargo 10/26/11] Flight: Baggage fee | 25.00 | 1 | 25.00 |
| Expense | [Wigod v. Wells Fargo 10/24/11] Flight: For Steven Woodrow | 141.70 | 1 | 141.70 |
| Expense | [Wigod v. Wells Fargo 10/24/11] Flight: Baggage Fee | 35.00 | 1 | 35.00 |
| Expense | [Wigod v. Wells Fargo 10/24/11] Taxi/Train/Rental Car: Three taxis | 157.25 | 1 | 157.25 |
| Expense | [Wigod v. Wells Fargo 04/15/10] Filing Fees: Complaint | 350.00 | 1 | 350.00 |
| | | **Subtotal:** | | **59,994.33** |

| | Total: | 59,994.33 |
| --- | --- | --- |
| | Amount Paid: | -0.00 |
| | Balance Due USD: | $59,994.33 |

This invoice was sent using FRESHBOOKS

**Expenses: Detail (Single Matter by Source) Adjustable**

**1/1/2005 - 2/15/2012**

| Source | Date | Estimate Item | Category | Note | Input | N/C | Billable | Invoiced |
|---|---|---|---|---|---|---|---|---|
| **Wigod v. Wells Fargo** | | | | | | | | |
| Nora Wintermute | 04/20/10 | | Fees:Processing | Process- Branch 4 Days, Summons and Complaint | $105.21 | no | $105.21 | |
| Nora Wintermute | 02/22/11 | | Fees:Filing/Legal | Appeal fee | $455.00 | no | $455.00 | |
| Thad Heckman | 08/11/11 | | General:Postage/Courrier | FedEx | $6.75 | no | $6.75 | |
| Thad Heckman | 10/19/11 | | General:Office Fee | 24 seven discovere copying and binding | $159.90 | no | $159.90 | |
| Thad Heckman | 09/02/11 | | General:Postage/Courrier | FedEx | $10.29 | no | $10.29 | |
| Thad Heckman | 08/11/11 | | Travel:Client-Related | Taxi Irina Slavina | $10.00 | no | $10.00 | |
| Thad Heckman | 09/17/11 | | General:Office Fee | 24 Seven Discovere | $235.20 | no | $235.20 | |
| **Wigod v. Wells Fargo** | | | | | **$982.35** | | **$982.35** | |
| **OVERALL TOTALS:** | | | | | **$982.35** | | **$982.35** | |